IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EBUDDY TECHNOLOGIES B.V., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-1501 (MN) (CJB) |
| | ) | |
| LINKEDIN CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT LINKEDIN CORPORATION'S OPENING BRIEF IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
<u>FOR FAILURE TO STATE A CLAIM</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
rsmith@morrisnichols.com

*Attorneys for Defendant LinkedIn Corporation*

OF COUNSEL:

Christopher Kao
Brock S. Weber
PILLSBURY WINTHROP SHAW PITTMAN LLP
Four Embarcadero Center, 22nd Floor
San Francisco, CA  94111-5998
(415) 983-1000

March 29, 2021

**TABLE OF CONTENTS**

Page

I.      NATURE AND STAGE OF THE PROCEEDING..............................................................1

II.     SUMMARY OF THE ARGUMENT .................................................................................1

III.    STATEMENT OF FACTS .................................................................................................3

        1.      The '395 Patent and '453 Patent (The Contact List Patents)..................................3

        2.      The '135 Patent and '179 Patent (The Event Notification Patents).......................4

IV.     LEGAL STANDARDS ......................................................................................................5

        A.      Patent-Eligible Subject Matter Under 35 U.S.C. § 101 ...........................................5

        B.      Motion To Dismiss For Failure To Satisfy 35 U.S.C. § 101 ...................................6

V.      ARGUMENT ......................................................................................................................7

        A.      The Patents-In-Suit Are Invalid Under Section 101 As A Matter Of Law.............7

                1.      *Alice* Step One: The Claims Are Directed To The Abstract Ideas Of
                        Aggregating Contact Lists And Event Notification.....................................7

                        a.      The Patent Claims are Abstract Because Aggregating Contact
                                Lists and Event Notification Are Fundamental Practices. ..............9

                        b.      The Patent Claims are Abstract Because They Are Directed To
                                A Functional Result, Not A Technological Improvement. ............12

                        c.      The Patent Claims are Abstract Because They Concern The
                                Basic Collection and Organization Of Information. .....................14

                2.      *Alice* Step Two: The Patent Claims Also Lack An Inventive Concept. ....15

                3.      All The Patent Claims Are Invalid Under *Alice*. ........................................18

                4.      No Questions Of Fact Preclude Dismissal Under Section 101.................19

VI.     CONCLUSION..................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
    882 F.3d 1121 (Fed. Cir. 2018) ................................................................................. 6

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
    728 F.3d 1336 (Fed. Cir. 2013) ............................................................................... 17

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
    838 F.3d 1253 (Fed. Cir. 2016) ......................................................................... 14, 18

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    573 U.S. 208 (2014) ................................................................................... *passim*

*Apple, Inc. v. Ameranth, Inc.*,
    842 F.3d 1229 (Fed. Cir. 2016) ........................................................................... 1, 11

*Ass'n of Molecular Pathology v. Myriad Genetics, Inc.*,
    133 S. Ct. 2107 (2013) ............................................................................................. 5

*Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*,
    915 F.3d 743 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 855 (2020) ........................... 2, 7, 16, 19

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018) ..................................................................... 6, 19, 20

*Bilski v. Kappos*,
    561 U.S. 593 (2010) ................................................................................................. 6

*Boom! Payments, Inc. v. Stripe, Inc.*,
    No. 19-cv-590-VC, 2019 WL 6605314 (N.D. Cal. Nov. 19, 2019) ........................ 14

*CG Tech. Dev., LLC v. FanDuel, Inc.*,
    442 F. Supp. 3d 840 (D. Del. 2020) ....................................................................... 17

*Chamberlain Group, Inc. v. Techtronic Industries Co.*,
    935 F.3d 1341 (Fed. Cir. 2019) ............................................................................... 20

*ChargePoint, Inc. v. SemaConnect, Inc.*,
    920 F.3d 759 (Fed. Cir. 2019) ..................................................................... 6, 12, 19

*Citrix Sys., Inc. v. Avi Networks, Inc.*,
    363 F. Supp. 3d 511 (D. Del. 2019) ......................................................... 2, 7, 19

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014) ..................................................................... 6, 14, 16, 18

*Credit Acceptance Corp. v. Westlake Servs.*,
    859 F.3d 1044 (Fed. Cir. 2017) ................................................................ 11

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) ........................................................ *passim*

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
    955 F.3d 1317 (Fed. Cir. 2020) .......................................................... 8, 16

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
    839 F.3d 1089 (Fed. Cir. 2016) ............................................ 2, 11, 12, 15

*Intellectual Ventures I LLC v. Erie Indemnity Co.*,
    850 F.3d 1315 (Fed. Cir. 2017) ................................................................ 6

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016) ............................................... 6, 7, 9, 17

*Internet Patents Corp. v. Active Network, Inc.*,
    790 F.3d 1343 (Fed. Cir. 2015) .......................................................... 6, 13

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*,
    876 F.3d 1372 (Fed. Cir. 2017) .............................................................. 12

*IPA Technologies, Inc. v. Amazon.com, Inc.*,
    352 F. Supp. 3d 335 (D. Del. 2019) ...................................................... 19

*Mortg. Grader, Inc. v. First Choice Loan Servs., Inc.*,
    811 F.3d 1314 (Fed. Cir. 2016) .............................................................. 16

*OIP Tech. Inc. v. Amazon.com, Inc.*,
    788 F.3d 1359 (Fed. Cir. 2015) ................................................................ 7

*RecogniCorp, LLC v. Nintendo Co.*,
    855 F.3d 1322 (Fed. Cir. 2017) .............................................................. 16

*SAP Am., Inc. v. Investpic, LLC*,
    898 F. 3d 1161 (Fed. Cir. 2018) ......................................................... 6, 15

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017) ......................................................... 6, 12

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) .................................................................. 6

*University of Florida Research Foundation, Inc. v. General Electric Co.*,
    916 F.3d 1363 (Fed. Cir. 2019) .............................................................. 10

*Voter Verified, Inc. v. Election Systems & Software LLC*,
     887 F.3d 1376 (Fed. Cir. 2018) ................................................................. 9

*West View Research, LLC v. Audi AG*,
     685 F. App'x 923 (Fed. Cir. Apr. 19, 2017) ............................................ 15

*WhitServe LLC v. Donuts, Inc.*,
     390 F. Supp. 3d 571 (D. Del. 2019) ........................................................ 19

**Statutes**

35 U.S.C. § 101 ............................................................................................. 1, 5, 6

## I.      NATURE AND STAGE OF THE PROCEEDING

Plaintiff eBuddy Technologies B.V. ("eBuddy" or "Plaintiff") filed this lawsuit on November 6, 2020, alleging that Defendant LinkedIn Corporation ("LinkedIn") infringes four patents:  U.S. Patent Nos. 8,510,395 (the "'395 Patent"); 9,584,453 (the "'453 Patent"); 8,230,135 (the "'135 Patent"); and 8,402,179 (the "'179 Patent").  D.I. 1.  Because all claims of the asserted patents are invalid for reciting unpatentable abstract ideas, LinkedIn moved to dismiss Plaintiff's original complaint on January 21, 2021.  D.I. 9-10.  In response, Plaintiff filed a First Amended Complaint ("FAC"), which attaches and relies on an expert declaration to attempt to salvage its patents.  D.I. 14 (citing Ex. 5, D.I. 14-5).  These expert opinions, however, do not and cannot change the content and claims of the asserted patents themselves, which are each patent-ineligible under 35 U.S.C. § 101.  Accordingly, LinkedIn respectfully moves to dismiss the FAC.

## II.     SUMMARY OF THE ARGUMENT

The '395 and '453 Patents (the "Contact List Patents") recite nothing more than the abstract idea of aggregating contact lists.  The '135 and '179 Patents (the "Event Notification Patents") purport to claim the abstract idea of notifying a user of an event in the title of a display.  However, aggregating contact lists and providing event notifications are not patentable inventions, even if performed using computer technology.  Whether it is aggregating contact lists across different departments within a company or a university, or providing notices of an event in the title of a published advertisement, the concepts embodied by the claims of the patents-in-suit are precisely the type of fundamental human activity that is ineligible for patent protection under Section 101.  *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 220-21 (2014).  In fact, the Federal Circuit has specifically held that both computerized content aggregation and event notification are ineligible for patenting under Section 101.  *See, e.g., Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1240-43 (Fed. Cir. 2016) (affirming the ineligibility of three patents that concern

aggregating content from one menu of items into another menu of items); *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1091-92 (Fed. Cir. 2016) (affirming Rule 12(b)(6) order dismissing as ineligible claims for "determin[ing] if an event has occurred" and "providing notification if the event has occurred").

The new allegations in the FAC cannot save the asserted patent claims.  To the contrary, the FAC concedes that aggregating contact lists and providing event notifications in the title of a display were conventional at the time the patents were filed.  *See, e.g.*, FAC at ¶ 51 (Contact List Patents), ¶ 101 (Event Notification Patents).  The purported improvements discussed in the FAC are classic "apply it on a computer" allegations that are insufficient to pass muster under Section 101 as a matter of law.  *See, e.g.*, *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016) (rejecting invocation of "computers and networks that are not even arguably inventive" as sufficient to save claims from ineligibility).  The FAC also alleges that the patents-in-suit disclose specific technical implementation details and recite specialized computer components, but it is indisputable that the <u>patent claims</u> do not recite any technical implementation details whatsoever, and that the specifications state that the claims can be implemented on "any known or convenient" (*i.e.*, generic) device.  '395 Patent at 2:65-3:59.  The allegations of "inventiveness" in the FAC are therefore properly disregarded in the Section 101 analysis because they contradict the claim language and specifications.  *See, e.g.*, *Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*, 915 F.3d 743, 755-56 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 855 (2020) (ruling that the district court properly dismissed the complaint because plaintiff's "expert declaration made allegations inconsistent with the [patent-in-suit]," as the "technical allegations" were not "recited in the claims").  Indeed, similar attempts by plaintiffs to rescue patent claims by belatedly submitting expert declarations have been summarily rejected as blatant gamesmanship that does not change the court's analysis.  *See, e.g.*, *id*.; *Citrix Sys., Inc. v. Avi Networks, Inc*., 363

F. Supp. 3d 511, 520 (D. Del. 2019) (dismissing amended complaint "which, notably, was filed after [plaintiff] had reviewed [defendant's] motion to dismiss the original complaint based on § 101" and similarly relied on a lengthy expert declaration).

Because the <u>claims</u> of the Contact List Patents and Event Notification Patents are facially invalid under Section 101, the FAC should be dismissed with prejudice.

## III.   STATEMENT OF FACTS

### 1.   The '395 Patent and '453 Patent (The Contact List Patents)

The two Contact List Patents share a specification and describe a "content aggregation engine" that maintains "an aggregated contact list" containing a person's contacts obtained from one or more "low level" messaging services, such as an instant messaging ("IM") program. *See* '395 Patent at Abstract, 1:65-2:13. The patents state in their "Background" section that popular IM services such as AOL Instant Messenger, Google Talk, and Yahoo! Messenger routinely allowed users to create contact lists by the time that the '395 Patent was filed in May 2010. *See id.* at 1:28-30. The purported invention claimed in the Contact List Patents is simply to aggregate these known contact lists to display a consolidated list. *See id.* at 1:61-2:25.

The patents state that this method for aggregating contact lists can be implemented with generic computer components—*e.g.*, any "known or convenient network," "any known or convenient server," any "known or convenient IM network," and "clients" that "may include any known or convenient device, including by way of example but not limitation, a Web browser, mobile client, PDA, game console, [or] TV box." *Id.* at 2:65-3:59.

Instead of reciting a technical solution to a technical problem, the Contact List Patents merely claim the fundamental concept of aggregating contact lists using only results-oriented, functional language, as shown below in representative Claim 7 of the '395 Patent

(functions directed to aggregating a contact list in ==yellow== and generic computer components in ==blue==):

> 7.  A method comprising:
>
>> joining a ==high level network==;
>>
>> joining a first ==low level network== associated with a first messaging service provider and a second ==low level network== associated with a second messaging service provider;
>>
>> obtaining a first contact list associated with the first messaging service provider;
>>
>> obtaining a second contact list associated with the second messaging service provider;
>>
>> maintaining an aggregated contact that comprises the first contact list and the second contact list;
>>
>> logging into the ==high level network==;
>>
>> displaying the aggregated contact list.

### 2.  The '135 Patent and '179 Patent (The Event Notification Patents)

The Event Notification Patents purport to claim a new way to present known "status indicators," or event notifications, to users.  The patents acknowledge that known IM programs already had the "ability to set a status message" for other users to see, which is "analogous to the [outgoing] message on a telephone answering machine."  '135 Patent at 1:28-39.  The Event Notification Patents attempt to claim a "technique for user notification [that] involves modifying a title associated with a process to include information about an event."  *Id*. at Abstract, 1:62-64.  In other words, the patents claim the basic idea of putting event notifications in a "<u>title</u>" field of a display.  As with the Contact List Patents, the Event Notification Patents state that form of event notification can be implemented with generic computer components—*e.g.*, any "known or convenient network," "any known or convenient server," any "known or convenient IM network,"

and "clients" that "may include any known or convenient device, including by way of example but not limitation, a Web browser, mobile client, PDA, game console, [or] TV box." *Id.* at 2:61-3:54.

The claims of the Event Notification Patents are not technical and simply recite the concept of putting an event notification in an "alternative title" that a "process" can use. Claim 1 of the '135 Patent is representative:

> 1. A method comprising:
>
> receiving information of an event that calls for user notification;
>
> generating an event notification for the event;
>
> associating the event notification with at least one of the plurality of character strings in a title array that includes a plurality of character strings for provisioning for display in a titlebar or taskbar of a display device;
>
> providing the at least one of the plurality of character strings in the title array to a process executed by a processor;
>
> providing an alternative title based on the at least one of the plurality of character strings to the process;
>
> using the alternative title as a title in association with the process.

## IV.   LEGAL STANDARDS

### A.   Patent-Eligible Subject Matter Under 35 U.S.C. § 101

"[A]bstract ideas are not patentable" under Section 101. *Alice*, 537 U.S. at 216 (quoting *Ass'n of Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)). The Supreme Court's *Alice* decision sets forth a two-step test to determine whether a patent is invalid for claiming abstract ideas. *See id.* at 217-18.

At *Alice* step one, a court determines whether a claim's character as a whole is directed to an abstract idea. *See Elec. Power*, 830 F.3d at 1353. Courts have considered several factors when determining if claims are directed to an abstract idea: whether the claims cover a longstanding, fundamental practice implemented on a computer, *see Intellectual Ventures I LLC*

*v. Symantec Corp.*, 838 F.3d 1307, 1317-18 (Fed. Cir. 2016); whether the claims are purely functional in nature, *see Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337-38 (Fed. Cir. 2017); and whether the claims are directed to "collecting information, analyzing it, and displaying certain results of the collection and analysis," *SAP Am., Inc. v. Investpic, LLC*, 898 F. 3d 1161, 1167 (Fed. Cir. 2018).

If the claims are directed to an abstract idea, then the Court must proceed to *Alice* step two to determine whether the claims include an "inventive concept" that is "significantly more" than the abstract idea, "sufficient to transform the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 217-18. To avoid invalidation under this second step, the claims "must include additional features" that "must be more than well-understood, routine, conventional activity." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) (citations and internal quotation marks omitted); *Intellectual Ventures I LLC v. Erie Indemnity Co.*, 850 F.3d 1315, 1331 (Fed. Cir. 2017).

## B.    Motion To Dismiss For Failure To Satisfy 35 U.S.C. § 101

Patent eligibility under Section 101 is a "threshold test" that should be answered early in a case. *See Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Whether a claim recites patent-eligible matter under Section 101 is a question of law, which may involve underlying facts. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018); *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

In cases where patent claims are plainly directed to an abstract idea on their face, it is proper to determine patent validity under Section 101 at the pleading stage, and the Federal Circuit has repeatedly upheld such decisions. *See, e.g., ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 773-75 (Fed. Cir. 2019) (affirming dismissal under Rule 12(b)(6)); *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348-49 (Fed. Cir. 2015); *Content Extraction &*

*Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014); *OIP Tech. Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362-63 (Fed. Cir. 2015).  As such, allegations in a complaint or expert declaration cannot create factual disputes regarding claim language where none exist.  *See, e.g.*, *Athena Diagnostics*, 915 F.3d at 755-56; *Citrix Sys.*, 363 F. Supp. 3d at 520.

## V.  ARGUMENT

### A.  The Patents-In-Suit Are Invalid Under Section 101 As A Matter Of Law

The claims of the four patents-in-suit are invalid under Section 101, as a matter of law, because they are directed to the abstract ideas of <u>aggregating contact lists</u> (the '395 and '453 Patents) and <u>event notification</u> (the '135 and '179 Patents).  These concepts are "long-prevalent practice[s] for people" and are therefore abstract.  *Symantec Corp.*, 838 F.3d at 1314.  The claims merely recite performing these basic human activities on computing devices that are described in the patents as generic and conventional.  Accordingly, the claims lack additional, non-routine, and unconventional elements that "transform the nature of [them] into a patent-eligible application."  *Alice*, 573 U.S. at 217.

#### 1.  *Alice* Step One: The Claims Are Directed To The Abstract Ideas Of Aggregating Contact Lists And Event Notification

The first step of the *Alice* framework asks whether the claims are "directed to" an abstract idea.  *Alice*, 573 U.S. at 219.  This step examines the "focus" of the claims or their "character as a whole" to determine whether they are abstract.  *Elec. Power*, 830 F.3d at 1353-54.

<u>**Contact List Patents**</u>

All claims of the Contact List Patents are directed to the abstract concept of <u>aggregating contact lists</u>.  That this is the focus of the claims is confirmed in the claim language itself, as well as in the shared specification of the Contact List Patents.  Specifically, the '395 Patent discloses a method for aggregating contact lists from one set of generic networks to display

in another generic network, as shown in the highlighted version of Claim 7, above, which "exemplifie[s]" the claimed invention, as admitted in the FAC (at ¶ 68).  Thus, the "character as a whole" of the claims is the aggregation of contact lists using generic computer components across known IM services.  *See Elec. Power*, 830 F.3d at 1353-54; *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd*., 955 F.3d 1317, 1326-27 (Fed. Cir. 2020).

The specification of the Contact List Patents likewise confirms that aggregating contact lists is the focus of the claimed invention.  For one, the patents' titles expressly state their focus: "Contact List Display System and Method" ('395 Patent) and "Contact List Aggregation and Display" ('453 Patent).  The "Summary" of the claimed invention is a "technique for contact list aggregation across a plurality of different networks."  '395 Patent at 1:61-62.

### Event Notification Patents

For similar reasons, all claims of the Event Notification Patents are directed to the abstract concept of <u>event notification</u>.  For instance, as shown in the highlighted version above, Claim 1 of the '135 Patent discloses a method for (1) "receiving information of an event that calls for user notification"; (2) "generating an event notification for the event"; (3) "associating the event notification" with a "title array" for "display"; (4) "providing" this event-based title as an "alternative title" to a "process"; and (5) "using" the event-based title with the process.'135 Patent, Cl. 1.  In other words, the claims recite providing an event notification in a title of a display, which can be used as an alternative to a non-event-based title.  A typical non-event title could be "The New York Times" and the event-based alternative title would be "Breaking News: Dow Reaches Record High."  The patents include very basic examples, as well, such as in Figure 3D that provides the alternative notification of "New Message" for the title  of a conventional web browser window (as shown here, the text is barely legible in the original).

The specification of the Event Notification Patents also confirms that event notification is the focus of the claimed invention. This is plainly stated in the shared titles: "Event Notification System and Method." And the "Summary" of the claimed invention is a "technique for user notification" about "an event that calls for user notification." '135 Patent at 1:62-64.

Because the patents-in-suit are directed to the abstract ideas of aggregating contact lists and event notification, the claims fail *Alice* step one for at least three independent reasons.

        a.      <u>The Patent Claims are Abstract Because Aggregating Contact Lists and Event Notification Are Fundamental Practices</u>

Courts have consistently held that claims drawn to longstanding or fundamental human activity are directed to an abstract idea. *See Alice*, 573 U.S. at 219 (intermediated settlement is an abstract idea because it is a long prevalent, fundamental practice); *Voter Verified, Inc. v. Election Systems & Software LLC*, 887 F.3d 1376, 1385 (Fed. Cir. 2018) (affirming grant of motion to dismiss under Section 101 for a patent concerning a voting system because "[h]umans have performed this fundamental activity . . . for hundreds of years"); *Symantec*, 838 F.3d at 1314 & n.5 (collecting fundamental activities considered abstract ideas).

Here, the concept of aggregating contact lists is an age-old human endeavor and can be found in innumerable examples of activities in day-to-day life. For example, large companies or universities have maintained contact lists for employees / faculty within given departments (*i.e.*, the "low level networks") that are aggregated and displayed at the company-wide or university-wide level (*i.e.*, the "high level network"). The lower-level departments may maintain contact lists in different forms, such that the company-wide directory may need to reformat them for an aggregated list. In other words, creating a common format for aggregating disparate contact lists is an abstract endeavor long practiced in the real world.

Providing notifications for events in the title of a display is similarly fundamental. For example, newspapers have served this purpose for hundreds of years. Among other things, they have provided written notices to the public of events provided in headlines, or titles, of the various articles—and the advertisements and flyers—contained within. These titles alternate based on current events—*i.e.*, alternative titles are a longstanding human endeavor.

The patents-in-suit merely recite these abstract ideas as a series of basic and generic steps applied in the context of a computer system. The Contact List Patents recite "obtaining" contact lists from low level networks, "maintaining an aggregated contact" list, and displaying it. '395 Patent, Cl. 7. The Event Notification Patents recite getting newsworthy information, "generating an event notification," and then displaying the event notification as a title in a display. '135 Patent, Cl. 1. However, these are merely routine steps that are the same as their real-world analogues, simply confined to a generic computer environment.

Indeed, the FAC admits that the "[m]aintenance of a <u>conventional</u> user's contact list(s), including maintenance of an <u>aggregated contact list</u> across multiple messaging services . . . was <u>typically a manual process</u>" and that, "at the time of the '395 and '453 inventions, it would have been <u>conventional</u> to copy a contact list, including an aggregated contact list file, from multiple messaging services." FAC at ¶¶ 35, 51 (emphasis added). Likewise, for the Event Notification Patents, the FAC concedes that there were "<u>conventional</u> methods for providing event notifications," such as by "[i]ncluding text in the titlebar or taskbar," which "was <u>known</u>." *Id.* at ¶¶ 100-101 (emphasis added).

It is well-established that claims are abstract when they simply automate conventional steps performed by humans. *See, e.g., University of Florida Research Foundation, Inc. v. General Electric Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019) (affirming motion to dismiss and holding that patent that merely "<u>automate[s] 'pen and paper'</u> methodologies to conserve

human resources and minimize errors" is "<u>a quintessential 'do it on a computer' patent</u>" that is patent ineligible as a matter of law) (emphasis added); *Credit Acceptance Corp. v. Westlake Servs*., 859 F.3d 1044, 1055 (Fed. Cir. 2017) (rejecting as ineligible claims that permitted "automation of previously manual processing of loan applications" because "the focus of the claims is not on [] an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools."). The claims of the patents-in-suit are also only directed to "fundamental economic practice[s] long prevalent in our system of commerce," as aggregating contact lists and event notification are even more foundational than "the concept of intermediated settlement" at issue in *Alice*. *See* 573 U.S. at 219. Thus, the claims are directed to an "abstract idea." *Id*.

Indeed, the Federal Circuit has upheld findings of ineligibility under Section 101 of more detailed claims directed to content aggregation and event notification than those at issue here. In the *Apple* decision, for instance, the Federal Circuit reviewed the eligibility of patent claims directed to "software that can generate a second menu [or list]" from a "first menu [or list] that has categories and items," in which the method is carried out with a "central processing unit," a "data storage device," and an "operating system including a graphical user interface." 842 F.3d at 1234. The Federal Circuit held that these types of patent claims "are directed to an abstract idea," because the concept of "generating a second menu [or list] from a first menu and sending the second menu to another location" is an "abstract idea." *Id*. at 1240. The Contact List Patents fare no better.

In *FairWarning*, the Federal Circuit affirmed the dismissal of patent claims directed to a computerized method for detecting improper access to sensitive information that involved generating rules for monitoring data, applying the rules "to determine if an event has occurred," and "providing notification if the event has occurred." 839 F.3d at 1092. The Federal Circuit held that these claims were directed to an abstract idea because they "merely implement an old practice

11

in a new environment," as "humans in analogous situations" have done this "for decades, if not centuries." *Id*. at 1094-95. The same is true here with respect to the Event Notification Patents. As in *FairWarning*, the patents simply attempt to claim the age-old human practice of notifying people about events in the titles of publications. *See id*. As such, the claims are abstract under step one of the *Alice* test. *See id*. at 1095.

Simply confining the fundamental practices of contact-list-aggregation and event notification to a generic computer environment—*e.g*., comprising one or more "networks," a "processor," a "display device," a "database," and a "server"—does not save them. *See, e.g., Alice*, 573 U.S. at 224-25 (finding that fundamental economic activity long performed by humans simply implemented on a computer does not confer patent eligibility); *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc*., 876 F.3d 1372, 1378 (Fed. Cir. 2017) (same).

      b.    <u>The Patent Claims are Abstract Because They Are Directed To A Functional Result, Not A Technological Improvement</u>

The claims of the patents-in-suit are also abstract for an independent reason because they do not recite any <u>improvements</u> to computer functionality. They are directed only to the functional <u>results</u> and describe the abstract process of aggregating contact lists and event notification, without specifying at all <u>how</u> the desired results are achieved. In other words, the recited "networks," "processor," and "devices," for example, are merely generic tools to carry out the described functions. Claims written in <u>result-based functional language</u>, reciting no particular way of performing a function, are patent ineligible. *See ChargePoint*, 920 F.3d at 769-70 (ruling claims abstract when "drafted in such a result-oriented way that they amount[] to encompassing the 'principle in the abstract' no matter <u>how</u> implemented") (citation omitted and emphasis added); *Two-Way Media*, 874 F.3d at 1337-38 (finding a claim abstract because it "requires the functional

12

results of 'converting,' 'routing,' 'controlling,' 'monitoring,' and 'accumulating records,' but does not sufficiently describe <u>how</u> to achieve these results in a non-abstract way") (emphasis added).

The claims of the patents-in-suit clearly fall into this abstract category. The claim limitations in the Contact List Patents do not recite any particular, technical way of performing the recited generic functions, thus impermissibly preempting the entire function. For instance, the claims do not disclose any technical details regarding: (1) <u>how</u> data is received; (2) <u>how</u> networks are "join[ed]"; (3) <u>how</u> contact lists are "obtain[ed]"; (4) <u>how</u> "an aggregated contact [list]" is "maintain[ed]"; or (5) <u>how</u> to "display[] the aggregated contact list." *See* '395 Patent, Cl. 7. Similarly, the Event Notification Patents also do not disclose any implementation details whatsoever, including (1) <u>how</u> event information is "receiv[ed]" or event notifications are "generat[ed]"; (2) <u>how</u> "event notification[s]" are "associat[ed]" with a characters in a "title array"; (3) <u>how</u> title characters are "provid[ed]" to a process; or (4) <u>how</u> the event notification in the form of a title is used "in association with the process." *See* '135 Patent, Cl. 1. The claimed steps recite desired results without any meaningful implementation detail.

The FAC does not and cannot show otherwise. Although the FAC makes bare assertions that the claims of the patents-in-suit recite "specific" technical details, <u>it does not identify a single such limitation in the actual claim language</u>. *See, e.g*., FAC at ¶ 62 (Contact List Patents), ¶ 64 (same), ¶¶ 133-134 (Event Notification Patents). For example, the FAC baldly alleges that the claims disclose the "specific way contact aggregation is accomplished" (*id*. at ¶ 62), but the claims simply recite the result that "an aggregated contact [list]" is "maintain[ed]" without specifying any details whatsoever regarding <u>how</u> that is done. In other words, the claims simply recite desired, abstract results without any technical improvement or functionality. *See Internet Patents*, 790 F.3d at 1348 (holding that, where a claim "contains no restrictions on how the result is accomplished," the claim is abstract).

13

Accordingly, the patents-in-suit recite steps "that make use of technology, but they do not describe improvements to the processing technology itself.  Instead, they do little more than 'recite[] that the abstract idea[s] . . . will be implemented using the conventional components and functions generic to' computers."  *Boom! Payments, Inc. v. Stripe, Inc.*, No. 19-cv-590-VC, 2019 WL 6605314, Slip Op. at *1 (N.D. Cal. Nov. 19, 2019) (quoting *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1263 (Fed. Cir. 2016)).  Therefore, the claims of the Contact List Patents and Event Notification Patents are directed to an abstract idea under the first step of *Alice* for this independent reason as well.

c.   The Patent Claims are Abstract Because They Concern The Basic Collection and Organization Of Information

Last, the claims of the asserted patents are also independently patent-ineligible because they are directed to the intangible acts of acquiring and organizing information.  The Contact List Patents recite "obtaining" contact lists, "maintaining an aggregated contact" list, and displaying that list.  '395 Patent, Cl. 7.  The Event Notification Patents recite "receiving" event information, "generating an event notification for the event," "associating" the event notification with a title, "providing" this information to a process," and using the event notification.  '135 Patent, Cl. 1.  Courts have repeatedly found such data collection and processing steps to be directed to an abstract idea.  For example, in *Electric Power*, the Federal Circuit considered claims that pertained to collecting and analyzing information to monitor the overall vulnerability of a power grid.  830 F.3d at 1351-52.  The court concluded that, despite the narrow type of information collected, such information gathering and analysis was not patentable.  *Id.* at 1354.  Likewise, in *Content Extraction*, the Federal Circuit found that claims written to capture the process of analyzing a scan of a check to extract and store information were directed to the abstract idea of collecting, recognizing, and storing particular kinds of data.  776 F.3d at 1347.

14

Under this principle, the Federal Circuit has invalidated claims— including at the pleadings stage—that are similar to those here, which simply collect data, organize it, and display the results. *See, e.g.*, *FairWarning*, 839 F.3d at 1094 (affirming motion to dismiss and ruling that claims directed to "providing notification if [an] event has occurred" based on an analysis of data are abstract because they concern "collecting and analyzing information"); *West View Research, LLC v. Audi AG*, 685 F. App'x 923, 926 (Fed. Cir. Apr. 19, 2017).

The FAC alleges that the patents-in-suit disclose the "the specific information to be displayed and the data structure used to provide the information" (FAC at ¶¶ 133-134), but the fact that the patents-in-suit concern the collection and organization of "contact" and "event" information does not save the claims. Restrictions limiting the <u>kind</u> of information gathered are immaterial. *See Elec. Power Grp.*, 830 F. 3d at 1354 ("Accordingly, we have treated collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas."); *SAP*, 898 F.3d at 1168 (rejecting contention that collecting and analyzing information from a particular source can render the claimed process non-abstract). In short, patent claims must do more than collect, process, and output information to satisfy Section 101. Here, the claims of the patents-in-suit are directed only to manipulating information and fail step one of the *Alice* test for this reason as well.

## 2.    *Alice* Step Two: The Patent Claims Also Lack An Inventive Concept

Because the claims of the asserted patents are directed to abstract ideas, they are invalid under *Alice* step two unless they embody an "inventive concept" that is "significantly more" than the abstract ideas. *Alice*, 573 U.S. at 217-18. That is not the case here, as the claimed components are well-known, routine, and conventional—as acknowledged in the patents themselves—which cannot supply an inventive concept. The allegations to the contrary in the

FAC do not change this, as they contradict the intrinsic evidence.  *See Athena Diagnostics*, 915 F.3d at 755-56.

"To save a patent at [*Alice*] step two, an inventive concept must be evident in the claims."  *RecogniCorp, LLC v. Nintendo Co*., 855 F.3d 1322, 1327 (Fed. Cir. 2017) (emphasis added); *see also Athena Diagnostics*, 915 F.3d at 755-56 (holding that alleged technical improvements that are not recited in the claims are immaterial); *Ericsson*, 955 F.3d at 1326-27 (rejecting patent owner's arguments that claims involve technological improvement and inventive concept because alleged improvements are "not recited in the claims at issue").  Thus, "[f]or the role of a computer in a computer-implemented invention to be deemed meaningful in the context of this analysis, it must involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'"  *Content Extraction*, 776 F.3d at 1347-48 (quoting *Alice*, 573 U.S. at 225); *see also Mortg. Grader, Inc. v. First Choice Loan Servs., Inc*., 811 F.3d 1314, 1324-25 (Fed. Cir. 2016) (holding that "generic computer components such as an 'interface,' 'network,' and 'database' . . . do not satisfy the inventive concept requirement").

There is no inventive concept embodied in the claim limitations of the asserted patents because the claim elements are well-known, routine, and generic components arranged in their conventional manner.  While the FAC asserts in a conclusory way that the "inventions claimed in the '395 and '453 Patents further represent specific improvements in the functionality and capabilities of computer networking, databases, and messaging services and networks" (FAC at ¶ 77), the FAC does not and cannot identify a single such improvement in the claim language.

This is hardly surprising, as the common portion of the patent specification for all of the asserted patents describes the claimed components as generic and "known," including the "networks" claimed in the Contact List Patents and the processor and display "devices" claimed in the Event Notification Patents.  These can all be implemented using:  any "known or convenient

network"; "any <u>known</u> or convenient server"; any "<u>known</u> or convenient IM network"; and "any <u>known</u> or convenient device." '395 Patent at 2:65-3:59; '135 Patent at 2:61-3:54 (emphasis added).

For the Event Notification Patents, the FAC further alleges that, while event notification systems that provided notifications in the title of display were conventional, "it was not conventional to provide event notifications, <u>including through the use of an array and including an alternative title</u>, in the titlebar or taskbar." FAC at ¶¶ 144, 146 (emphasis added). However, an array is just a table or list of character strings, as shown and described in the patents. *See, e.g.*, '135 Patent at Fig. 6 (element 618). This is <u>not</u> a technical improvement because arrays / tables are commonplace and abstract structures in real life, such as tables of contents and crossword puzzles. *See also CG Tech. Dev., LLC v. FanDuel, Inc.*, 442 F. Supp. 3d 840, 849 (D. Del. 2020) (granting motion to dismiss regarding claims reciting a "lookup table," which is merely an "array or matrix of data," because a "lookup table itself is not an inventive concept"). And providing an event notification as an alternative title for a display is a fundamental practice that is not rooted in computer technology, such as when a newspaper uses an alternative title of "Breaking News," as discussed above.

These admissions from the patents themselves and the FAC of what was known and conventional in the art "confirm[] that the implementation of the abstract idea is routine and conventional" and that the patent claims here fail step two of the *Alice* test as a matter of law. *Symantec*, 838 F.3d at 1318; *see also Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1338-39 (Fed. Cir. 2013) (holding patent-ineligible claims reciting much more specific implementation details and hardware components than those in patents-in-suit, including a "server," several specific "databases" to "stor[e]" the information, an "event processor," a "task engine," a "task assistant," and a "client component" that "transmits and receives data").

Likewise, the combination of elements in the claims also does not provide an inventive concept because the claimed features are "described and claimed generically rather than with the specificity necessary to show how those components provide a concrete solution to the problem addressed by the patent." *Affinity Labs*, 838 F.3d at 1271-72.  Here, the claims merely "state [the relevant] functions in general terms, without limiting them to technical means for performing the functions that are arguably an advance over conventional computer and network technology," as explained above, and thus do not claim a technical solution when considered in combination.  *Affinity Labs*, 838 F.3d at 1271 (quoting *Elec. Power Grp*., 830 F.3d at 1351).

### 3.    All The Patent Claims Are Invalid Under *Alice*.

The FAC acknowledges that Claim 7 of the '395 Patent and Claim 1 of the '135 Patent "exemplif[y]" the asserted patents.  *See* FAC at ¶¶ 68, 70, 136, 140.  Thus, the Court can analyze Claim 7 of the '395 Patent and Claim 1 of the '135 Patent as representative.  *See Content Extraction*, 776 F.3d at 1348 (invalidating 242 claims after analyzing two "representative claims" because the court can evaluate a representative claim when the other claims are "substantially similar and linked to the same abstract idea").  As shown in Appendix A attached hereto, the remaining independent claims of the Contact List Patents (Claim 1 of the '395 Patent, and Claims 1, 7, and 12 of the '453 Patent) recite the same basic set of steps as representative Claim 7 of the '395 Patent for aggregating contact lists—just in the various forms of a method, system, or set of computer instructions (with similar limitations highlighted in the same color in Appendix A)—and are therefore equally invalid under *Alice*.  *See Alice*, 573 U.S. at 226 ("[T]he system claims are no different from the method claims in substance.").  The same is true of the Event Notification Patents, as shown in Appendix A.

The dependent claims of the asserted patents are also directed to the same abstract ideas and are invalid for the same reasons as discussed above.  Moreover, the dependent claims

either recite token post-solution limitations or elements performed by computing elements that are "purely conventional," merely requiring "a generic computer to perform generic computer functions." *Alice*, 573 U.S. at 225. Specifically, the dependent claims recite generic limitations for: storing data (Claims 2 and 4 of the '395 and '453 Patents); accessing networks (Claims 3 and 8-11 of the '395 Patent, and Claims 3, 8-11, and 13-16 of the '453 Patent); reciting the generic "display device" or "networks" (Claims 5 and 6 of the '395 and '453 Patents); and generating, storing, processing, or using event notifications (Claims 2-10 and 13-20 of the '135 and '179 Patents). As such, the dependent claims are invalid when considered individually as well.

### 4.   No Questions Of Fact Preclude Dismissal Under Section 101

Section 101 motions are frequently, and correctly, decided as a matter of law. *See, e.g.*, *Citrix Sys.*, 363 F. Supp. 3d at 520 (granting motion to dismiss despite Plaintiff's expert declaration); *WhitServe LLC v. Donuts, Inc.*, 390 F. Supp. 3d 571, 577-80 (D. Del. 2019) (granting motion to dismiss). In fact, where, as here, "the claims and specification" confirm the lack of an inventive concept, dismissal under Rule 12(b)(6) is proper, regardless of allegations in the Complaint or purported extrinsic evidence to the contrary. *See ChargePoint*, 920 F.3d at 776 (affirming dismissal under Rule 12(b)(6)); *see also Athena Diagnostics*, 915 F.3d at 755-56 (affirming dismissal under Rule 12(b)(6) despite the "allegations in the expert declaration"). This Court has specifically rejected attempts by plaintiffs to allege facts regarding inventiveness where such allegations are not supported by (or are inconsistent with) the language of the patents themselves. *See Citrix Sys.*, 363 F. Supp. 3d at 520; *IPA Technologies, Inc. v. Amazon.com, Inc.*, 352 F. Supp. 3d 335, 350 (D. Del. 2019).

Although the Section 101 inquiry may occasionally involve "underlying issues of fact," *Berkheimer*, 881 F.3d at 1365, a plaintiff may not manufacture a factual dispute simply by pleading that "the claim limitations involve more than performance of well-understood, routine,

19

and conventional activities previously known to the industry," *id.* at 1367 (internal quotation marks and brackets omitted).  Under *Berkheimer*, a factual dispute about inventiveness may exist only where there are improvements detailed in the <u>specification</u> and <u>captured by the claims</u>.  *See* 881 F.3d at 1369.  Here, the specification and claims of the patents-in-suit do not support any allegations of inventiveness.  Although the FAC asserts that the patents-in-suit in fact concern specific technical improvements to computer technology (FAC at, *e.g.*, ¶¶ 75, 146), the FAC does not and cannot point to any specific technical implementation details recited in the claims, as discussed above, because there are none.

Plaintiff's attempt here to manufacture a factual dispute in the FAC regarding the inventiveness of the asserted patents (at ¶¶11-163) should therefore be disregarded.  No matter what "facts" the FAC alleges, it cannot amend the patents or alter the claims, which fail to disclose any technical improvements or anything remotely inventive.

Finally, besides bare recitations of claim language and conclusions of law, the FAC alleges that the patents-in-suit cannot be abstract because the recited computer components "are physical or tangible things."  FAC at ¶ 66 (Contact List Patents), ¶ 72 (same), ¶ 135 (Event Notification Patents), ¶ 140 (same).  It is well-established that these allegations cannot save the claims.  *See, e.g., Chamberlain Group, Inc. v. Techtronic Industries Co.*, 935 F.3d 1341, 1348-49 (Fed. Cir. 2019) (holding that "the mere physical nature of [patentee's] claim elements (e.g., controller, interface, and wireless data transmitter) is not enough to save the claims from abstractness").

## VI.    CONCLUSION

For the foregoing reasons, Defendant LinkedIn respectfully requests that the Court dismiss the FAC with prejudice.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

_____

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
rsmith@morrisnichols.com

*Attorneys for Defendant LinkedIn Corporation*

OF COUNSEL:

Christopher Kao
Brock S. Weber
PILLSBURY WINTHROP SHAW PITTMAN LLP
Four Embarcadero Center, 22nd Floor
San Francisco, CA  94111-5998
(415) 983-1000

March 29, 2021

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 29, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on March 29, 2021, upon the following in the manner indicated:

Brian E. Farnan, Esquire                                      *VIA ELECTRONIC MAIL*
Michael J. Farnan, Esquire
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Plaintiff*

Steve Schlather, Esquire                                      *VIA ELECTRONIC MAIL*
EDMONDS & SCHLATHER PLLC
2501 Saltus Street
Houston, TX  77003
*Attorneys for Plaintiff*

*/s/ Rodger D. Smith II*
_____
Rodger D. Smith II (#3778)