IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EBUDDY TECHNOLOGIES B.V., § § | |
| Plaintiff, § § § | C.A. No. 20-cv-1501-MN-CJB |
| v. § § | |
| LINKEDIN CORPORATION § § | JURY TRIAL DEMANDED |
| Defendant. § § | |

**STIPULATION AND [PROPOSED] ORDER GOVERNING THE DISCOVERY OF ELECTRONICALLY STORED INFORMATION ("ESI")**

After conferring on these matters, the parties hereby propose to the Court the following stipulated order ("Stipulated Order") for the production of electronically stored information ("ESI").

IT IS HEREBY ORDERED that:

**1. Scope**

1.1. The procedures and protocols set forth in this Stipulated Order shall govern the production of responsive documents between the parties in this action. Any practice or procedure set forth herein may be varied only by further written agreement of the parties.

1.2. The parties must continue to disclose, to the extent they have not already done so, the information required by the Court's Scheduling Order (D.I. 33) and the "Delaware Default Standard for Discovery, Including Discovery of Electronically Stored Information ('ESI')" ("Delaware Default Standard for Discovery"). However, in the event of a dispute between the Delaware Default Standard for Discovery and this Stipulated Order, the terms of this Stipulated Order control.

1.3. Nothing in this Discovery Order shall alter the Parties' obligations to preserve

and/or produce source code. However, to the extent applicable, this Stipulated Order is not intended to govern any protections or restrictions related to the production, receipt, or maintenance of source code. The parties' forthcoming proposed protective order will address the process for producing and reviewing source code in this case.

1.4. **Preservation of Discoverable Information.** A party has a common law obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody or control.

1.4.1 Absent a showing of good cause by the requesting party, the parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data; provided, however, that the parties shall preserve the non-duplicative discoverable information currently in their possession, custody or control.

1.4.2 Absent a showing of good cause by the requesting party, the categories of ESI identified in Schedule A attached hereto need not be preserved.

**2. Privilege**

2.1. The parties are to confer on the nature and scope of privilege logs for the case, including whether categories of information may be excluded from any logging requirements and whether alternatives to document-by-document logs can be exchanged.

2.2. Subject to any agreement made pursuant to Section 2.1, the parties agree to furnish logs that comply with Fed. R. Civ. P. 26(b)(5) and any other legal requirements for all documents withheld or redacted on the basis of privilege, attorney work product, or similar doctrines. Privilege logs may be produced on a rolling basis or after all productions are substantially complete, but no later than January 17, 2022.

2.3. The parties are not required to include information generated after the filing of the

original complaint in this action in any exchanged privilege logs, except as it relates to a disclosed opinion of counsel on which a party is relying to support a defense to allegations of indirect infringement or willful infringement in this action.

2.4. With respect to information generated prior to the filing of this case and that was generated and/or communicated for purposes of this case between a party and its litigation counsel in this case, the parties are not required to include any such information in any exchanged privilege logs.

2.5. Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B), and such activities and/or related information do not need to be included on any exchanged privilege logs.

## 3. Initial Disclosures

3.1. By July 9, 2021, each party shall disclose the following:

3.1.1. **Custodians**. Up to seven (7) custodians most likely to have discoverable information in their possession, custody or control, from the most likely to the least likely. The custodians shall be identified by name, title, role in the instant dispute, and the subject matter of the information in their possession, custody or control.

3.1.2. **Non-custodial data sources**.[1] A list of the non-custodial data sources, to the extent such source(s) exist and are reasonably accessible, that are most likely to contain non-duplicative discoverable information and production consideration, from the most likely to the least likely.

3.1.3. **Notice.** To the extent they are aware, the parties shall identify any issues

---

[1] That is, a system or container that stores ESI, but over which an individual custodian does not organize, manage or maintain the ESI in the system or container (*e.g.*, enterprise system or database).

relating to:

   3.1.3.1. Any ESI (by type, date, custodian, electronic system or other criteria) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(C)(i).

   3.1.3.2. Third-party discovery under Fed. R. Civ. P. 45 and otherwise, including the timing and sequencing of such discovery.

   3.1.3.3. Production of information subject to privacy protections, including information that may need to be produced from outside of the United States and subject to foreign laws.

**4. Initial Discovery in Patent Litigation**

 4.1. **Scope**. Initial discovery will be governed by the Scheduling Order (D.I. 33) entered in this action.[2]  Absent a showing of good cause, follow-up discovery shall be limited to a term of six (6) years before the filing of the original complaint, except that discovery related to asserted prior art or the conception and reduction to practice of the inventions claimed in any patent-in-suit shall not be so limited.

 4.2. **Production Requests and Search Methodology**.  General requests for production under Federal Rules of Civil Procedure 34 and 45 may include requests for the production of ESI.

   4.2.1. The requesting party may request the searching and production of ESI from up to seven (7) individuals identified in a party's disclosures pursuant to Section 3.1.1 or other individuals identified by the requesting party through any other means, including discovery, according to the methodology set forth herein.  Regardless of the number of individuals whose custodial documents are searched, the parties will cooperate to identify proper search terms and

---

[2] For the sake of clarity, this Section 4.1 does not limit or otherwise prohibit the ability of any party to serve discovery requests on another party at any time and/or in any manner permitted by the Federal Rules of Civil Procedure.

time frame (*e.g.*, date ranges), as set forth herein. At a minimum, the producing party shall search (i) the non-custodial data sources identified in accordance with paragraph 3.1.2 and (ii) emails and other ESI maintained by the custodians requested in accordance with this paragraph 4.2.1 (e.g., up to seven (7) individuals identified in a party's disclosures pursuant to Section 3.1.1).

    4.2.2. To the extent a producing party elects to use search terms to locate ESI that may contain potentially responsive documents for the individuals specifically identified by the requesting party under Section 4.2.1, it shall disclose the search terms to the requesting party. The requesting party may propose up to ten (10) additional search terms to be run across all individuals identified pursuant to Section 4.2.1. To the extent a producing party elects to use search terms to locate ESI that may contain potentially responsive documents within any Non-Custodial Data Source identified under Section 3.1.2, the requesting party may propose up to ten (10) additional search terms for each such Non-Custodial Data Source. The search terms shall be narrowly tailored to particular issues, and to the extent necessary, the parties shall meet and confer to reach agreed-to search term lists and reasonable date restrictions. The producing party shall then timely apply the search terms and shall timely provide the requesting party with a set of resulting hit counts for each data source (custodial or non-custodial). The hit counts shall reflect, for each data source, the total number of documents, including all parents and attachments to documents (i.e., families), that hit on each search term for each such data source.

    4.2.3. The parties shall timely meet and confer in good faith to determine whether the parties can agree on all search terms to be used to ensure that any requested searching and production of ESI is reasonable, is narrowly tailored for specific and material issues in the case, does not impose an undue burden on the producing party, and is commensurate with the producing party's obligations under the Federal Rules. For example, and without limitation, in the event

that a particular search term selected by the requesting party is resulting in an excessive volume of ESI where that term appears, or numerous "false positives" (i.e., non-responsive and/or immaterial documents), the parties will meet and confer in an attempt to further narrow the search requests. Such narrowing may include further limiting date ranges or modifying the search terms. A search term that results in a hit count of 1,000 or more documents for a custodial data source, or 5,000 or more documents for a non-custodial data source (under the methodology set out in Section 4.2.2), shall presumptively be deemed to result in an excessive volume of ESI, such that narrowing under this Section shall be required. In no event, however, does any provision in this Order extend the deadline for responding to discovery requests served pursuant to the Federal Rules of Civil Procedure or the Rules or Orders of this Court.

    4.3. To the extent a producing party does not elect to use search terms to locate ESI that may contain documents responsive to any request for production for any custodian or Non-Custodial Data Source (whether or not specifically identified by the requesting party), the producing party is obligated to conduct a reasonably diligent search for such ESI. Nothing in this Order shall require a producing Party to utilize any particular collection protocol for any particular population of ESI or entire ESI data source. For avoidance of doubt, targeted collection without the use of search terms may be used to collect potentially relevant documents from an ESI data source.

**5. Format**. ESI and non-ESI shall be produced to the requesting party in the formats described in **Schedule B**. If particular documents warrant a different format, the parties will cooperate to arrange for a mutually acceptable production of such documents.

**6. Foreign language documents**. All documents shall be produced in their original language. In addition, if the producing party has a certified translation of a foreign-language document that

is being produced (whether or not the translation is prepared for purposes of litigation), the producing party shall produce both the original document and the certified translation. Nothing in this agreement shall require a producing party to prepare a translation, certified or otherwise, for foreign language documents that are produced in discovery.

7. **Reproduction of third-party ESI**. Notwithstanding anything to the contrary herein, any party that produces documents produced to it by a third party, such as in response to a subpoena, may produce such documents in the format in which they were produced by the third party.

8. **Modification**. Unless specifically stated otherwise, the parties may jointly agree to modify this Stipulation without the Court's leave. Any such modification shall be in a writing signed by the parties or their respective counsel. If the parties cannot resolve their disagreements regarding a proposed modification, the parties reserve the right to seek relief from the Court.

9. **Federal or local rules**. Except as expressly stated, nothing in this Order affects the parties' discovery obligations under the Federal or Local Rules.

# SCHEDULE A

1. Systems no longer in use that cannot be accessed.

2. Information from handsets, mobile devices, personal digital assistants, and tablets.

3. Backup systems and/or tapes or hard drives no longer in use.

4. Automatically saved versions of documents and emails.

5. Mobile device activity logs.

6. Information created or copied during the routine, good-faith performance of processes for the deployment, maintenance, retirement, and disposition of computer equipment.

7. Deleted, slack, fragmented, or other data only accessible by forensics although full forensic images may be provided as warranted.

8. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

9. On-line access data such as temporary internet files, history, cache, cookies, and the like.

10. Data in metadata fields that are frequently updated automatically, such as last-opened dates.

11. Voice messages.

12. Instant messages and chats, including Slack messages.

13. Server, system, or network logs.

14. Dynamic fields in databases or log files not stored or retained in the usual course of business.

15. Data remaining from systems no longer in use that is unintelligible on the systems in use.

## SCHEDULE B

## PRODUCTION FORMAT AND METADATA

1. **Production Components.** Productions shall include single page TIFFs, Text Files, an ASCII delimited metadata file (.txt, .dat, or .csv) and an image load file that can be loaded into commercially acceptable production software (*e.g.*, Concordance). If a particular document warrants a different production format, the parties will cooperate ingood faith to arrange for a mutually acceptable production format.

2. **Image Load File** shall contain the following comma-delimited fields: BEGBATES, VOLUME, IMAGE FILE PATH, DOCUMENT BREAK, PAGE COUNT.

3. **Metadata Fields and Metadata File.** The parties are only obligated to provide the following metadata for all ESI produced, to the extent such metadata exists: Custodian, File Path, Email Subject, From, To, CC, BCC, Date Sent, Time Sent, Date Received, Time Received, Filename, Author, Date Created, Date Modified, MD5 Hash, File Extension, Control Number Begin, Control Number End, Attachment Range, Attachment Begin, and Attachment End (or the equivalent thereof). The parties are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: BEGBATES, ENDBATES, BEGATTACH, and ENDATTACH.

4. **TIFFs.** Documents that exist only in hard copy format shall be scanned and produced as TIFFs. Unless excepted below, documents that exist as ESI shall be converted and produced as TIFFs. Unless excepted below, single page Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. Original document

orientation should be maintained (i.e., portrait to portrait and landscape to landscape). TIFFs shall show all text and images that would be visible to a user of the original documents.

5. **Text Files.** A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename. A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents and OCR text files will be substituted instead of extracted text files for redacted documents. All documents shall be produced with a link in the TextLink field.

6. **Image Load Files / Data Load Files.** Image Load Files shall contain the following comma-delimited fields: BEGBATES, VOLUME, IMAGE FILE PATH, DOCUMENTBREAK, PAGE COUNT. Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaksin the Image Load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets. The Bates Numbers in the image loadfile must match the corresponding documents' beginning Bates numbers in the data loadfile. The total number of documents in a production should match the total number of records in the data load file. Load files shall not vary in format or structure within a production, or from one production to another.

7. **Bates Numbering.** All images must be assigned a unique Bates number that is sequentialwithin a given document and across the production sets.

8. **Confidentiality Designation.** Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order in this matter.

9. **Redaction Of Information.** If documents are produced containing redacted information, an electronic copy of the original, unredacted data shall be securely preserved in such a manner so as to preserve without modification, alteration or addition the content of such data including any metadata therein.

10. **Native File Production.** Spreadsheets (e.g., MS Excel, Google Sheets) and delimited textfiles (*e.g.* comma-separated value files) shall ordinarily be produced in either their native format or MS Excel. TIFF images need not be produced unless the files have been redacted, in which instance such files shall be produced in TIFF with OCR Text Files. If substantial reason exists to request production of file types other than those specifically set forth above, in native format, a party may request such production and provide an explanation of the need for native file review, which request shall not unreasonably be denied. Similarly, a party may elect to produce a document in native format at the party's reasonable discretion. Any native files that are produced shall be produced with a link in the NativeLink field, along with extracted text and applicable metadata fields set forth in Schedule B. A TIFF placeholder indicating that the document was provided in native format should accompany the database record. If a file has been redacted, TIFF images and OCR text of the redacted document will suffice in lieu of a native file and extracted text.

11. **Proprietary Files.** To the extent a response to discovery requires production of ESI accessible only through proprietary software, the parties should continue to preserve eachversion of such information. The parties shall meet and confer to finalize the appropriate production

format.

12.     **Production Media.** Documents shall be encrypted and produced through electronic means, such as secure file sharing methods (*e.g.* FTP), or on CD, DVD, flash drive or external hard drive ("Production Media"). Each piece of Production Media shall identify a production number corresponding to the production volume (*e.g.* "VOL001"). Each piece of Production Media shall also identify: (1) the producing party's name; (2) the production date; (3) the Bates Number range of the materials contained on the ProductionMedia. Nothing in this Order will preclude or impair any and all protections provided to the parties by any Protective Order(s) agreed and entered into by the parties. Any data produced by the producing party must be protected in transit, in use, and at rest by all in receipt of such data. Parties will use best efforts to avoid the unnecessary copying or transmittal of produced documents. Any copies made of produced data must be kept on media or hardware employing whole-disk or folder level encryption or otherwise securedon information systems and networks in a manner consistent with the best practices for data protection. If questions arise, Parties will meet and confer to ensure security concerns are addressed prior to the exchange of any documents.

13.     **Databases and Other Structured Data.** The parties shall meet and confer regarding theproduction format and scope of data contained in databases in order to ensure that any information produced is reasonably usable by the receiving party and that its production does not impose an undue burden on the producing party, by, for example, requiring development of reports and/or software code to extract the information. To avoid doubt, information will be considered reasonably usable when produced in CSV format, tab- delimited text format, Microsoft Excel format, or Microsoft Access format. To the extent a party is constrained from producing responsive ESI because software necessary to view the ESI is hardware-dependent, the parties

4

shall meetand confer to reach an agreement on alternative methods to enable the requesting party toview the ESI.

| | |
|---|---|
| Dated: June 24, 2021 | Respectfully Submitted, |
| MORRIS, NICHOLS, ARSHT & TUNNELL LLP | FARNAN LLP |
| /s/ Rodger D. Smith II | /s/ Michael J. Farnan |
| Jack B. Blumenfeld (Bar No. 1014) | Brian E. Farnan (Bar No. 4089) |
| Rodger D. Smith II (Bar No. 3778) | Michael J. Farnan (Bar No. 5165) |
| 1201 North Market Street | 919 Market St., 12th Floor |
| P.O. Box 1347 | Wilmington, DE 19801 |
| Wilmington, DE 19899 | Telephone: (302) 777-0300 |
| (302) 658-9200 | Fax: (302) 777-0301 |
| jblumenfeld@morrisnichols.com | bfarnan@farnanlaw.com |
| rsmith@morrisnichols.com | mfarnan@farnanlaw.com |
| Christopher Kao (admitted *pro hac vice*) | Stephen F. Schlather (admitted *pro hac vice*) |
| Brock S. Weber (admitted *pro hac vice*) | EDMONDS & SCHLATHER PLLC |
| PILLSBURY WINTHROP SHAW PITTMAN LLP | 2501 Saltus Street |
| Four Embarcadero Center, 22nd Floor | Houston, Texas 77003 |
| San Francisco, CA 94111-5998 | Phone: (713) 364-2371 |
| (415) 983-1000 | Fax: (713) 224-6651 |
| christopher.kao@pillsburylaw.com | sschlather@ip-lit.com |
| brock.weber@pillsburylaw.com | |
| | *Attorneys for Plaintiff* |
| *Attorneys for Defendant* | |

IT IS SO ORDERED, this _____ day of June, 2021.

_____
The Honorable Christopher J. Burke