IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EBUDDY TECHNOLOGIES B.V., ) <br>  ) <br> Plaintiff, ) <br>  ) <br> v. ) <br>  ) <br> LINKEDIN CORPORATION, ) <br>  ) <br> Defendant. ) | C.A. No. 20-1501 (MN) (CJB) |

**LINKEDIN CORPORATION'S LETTER REQUEST TO RENEW ITS
<u>MOTION TO STAY</u>**

OF COUNSEL:

Christopher Kao
Brock S. Weber
PILLSBURY WINTHROP SHAW PITTMAN LLP
Four Embarcadero Center, 22nd Floor
San Francisco, CA  94111-5998
(415) 983-1000

September 10, 2021

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
rsmith@morrisnichols.com

*Attorneys for Defendant*

Dear Judge Burke:

Pursuant to the Court's Order of April 26, 2021, Defendant LinkedIn Corporation ("LinkedIn") respectfully requests to renew its motion to stay filed on April 13, 2021 (D.I. 23-24) that sought to stay this action pending resolution of LinkedIn's motion to dismiss under 35 U.S.C. § 101 (D.I. 17-18), which is potentially case dispositive. The Court's Order invited LinkedIn to re-raise the issue of a stay with a one-page letter if the case progressed "closer past summer" and to the "invalidity contention stage" without a ruling on the Section 101 motion, which is the situation now. Ex. 1, Transcript Order of April 26, 2021, at 35:3-36:6.

In denying LinkedIn's original motion to stay, the Court found that the "status of the case" and "undue prejudice" factors favored a stay, but that the "simplification" factor did not, such that the Court was in "equipoise in terms of the strength of both sides' view." *Id*. at 27:12-23, 30:19-21, 34:21-23. As the circumstances are different now, the Court should enter a short stay until resolution of the Section 101 motion.

Specifically, with respect to undue prejudice, the Court estimated that it could resolve the pending 101 motion "sometime in summer, maybe even end of summer, maybe even early fall." *See id*. 28:14-23. As a result, the Court concluded that even if it ultimately decides the 101 motion in LinkedIn's favor, "it won't be as if a tremendous amount of work has been done and lost" in the period between April 2021 and the estimated decision date. *Id*. at 36:6-18. The undue prejudice factor therefore only "slightly" favored a stay. *Id*. at 30:13-18.

However, this calculus is now materially different, and this factor strongly favors a stay. If a short stay is entered now, Plaintiff will be subject to much less delay than in April 2021 under the Court's timeline for a 101 decision. On the other hand, now that Plaintiff recently served its infringement contentions on August 30 (D.I. 54), LinkedIn must prepare invalidity contentions for over 40 asserted claims across four patents-in-suit in about one month, by October 15 (D.I. 33). As the Court found, the "invalidity contention stage" is "a particularly time and resource intensive stage for defendant." Ex. 1, Tr. at 35:10-15. Because the Court expected to rule on LinkedIn's 101 motion before the costly invalidity contention stage, the Court instructed LinkedIn, if that were not the case, to "indicate its desire to re-raise the stay issue with the Court by simply filing just a short one-page letter indicating to the Court that that's it's view and at that point if the [C]ourt thinks it's well taken, the Court can set a further briefing schedule." *Id*. at 35:15-36:6.

Accordingly, LinkedIn respectfully requests that the Court enter a short stay pending resolution of its dispositive 101 motion based on the original briefing and oral argument on this issue (D.I. 23, 24, 27, 29, Ex. 1) and this letter brief, to which LinkedIn proposes that Plaintiff be given three days to respond with a corresponding one-page letter. LinkedIn understands that Plaintiff still opposes a stay.

Respectfully,

*/s/ Rodger D. Smith II*

Rodger D. Smith II (#3778)

cc: All Counsel of Record (via electronic mail)

# EXHIBIT 1

## Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

EBUDDY TECHNOLOGIES B.V.,  )
         )
  Plaintiff,  ) C.A. No. 20-1501-MN-CJB
         )
v.         )
         )
LINKEDIN CORPORATION, )
         )
  Defendant.  )

Monday, April 26, 2021
2:00 p.m.

844 King Street
Wilmington, Delaware

BEFORE: THE HONORABLE CHRISTOPHER J. BURKE
United States District Court Judge

APPEARANCES:

  FARNAN LLP
  BY: JOSEPH FARNAN, ESQ.

    -and-

  EDMONDS & SCHLATHER PLLC
  BY: STEPHEN F. SCHLATHER, ESQ.

    Counsel for the Plaintiff

Hawkins Reporting Service
112 Burning Tree Road - Dover, Delaware 19904
(302) 658-6697  FAX (302) 658-8418

## Page 2

1  APPEARANCES CONTINUED:

3  MORRIS, NICHOLS, ARSHT & TUNNELL, LLP
 BY: RODGER DALLERY SMITH, ESQ.

  -and-

5  PILLSBURY, WINTHROP, SHAW, PITTMAN, LLP
 BY: CHRISTOPHER KAO, ESQ.
6  BY: BROCK S. WEBER, ESQ.
 BY: ANTHONY F. VITTORIA, ESQ.

  Counsel for the Defendant

Hawkins Reporting Service
112 Burning Tree Road - Dover, Delaware 19904
(302) 658-6697  FAX (302) 658-8418

## Page 3

1  THE COURT: Good afternoon,
2  everyone. It's Judge Burke here. Apologize for
3  being late again to the parties. I had two
4  teleconferences before yours and the last one
5  ended a bit longer, so apologize for keeping you
6  waiting. Let's go on the record and for the
7  record I'll say that we're here this afternoon
8  telephonically for a case management conference
9  and to address a motion to stay in a matter
10 captioned eBuddy Technologies B.V. versus
11 LinkedIng Corporation, civil action
12 20-1501-MN-CJB here in our court. Before we go
13 further, let's have counsel for each side who is
14 on the line identify themselves for the record.
15 We'll start with counsel for plaintiff's side
16 and we'll begin there with Delaware counsel.
17        MR. FARNAN: Good afternoon, Your
18 Honor. Joseph Farnan from Farnan LLP and with
19 me is Stephen Schlather from Edmonds & Schlather
20 in Houston, Texas. And with Your Honor's
21 permission, Mr. Schlather will be doing the
22 argument today.
23        THE COURT: Good afternoon to you
24 both. And we'll do the same for counsel on the

Hawkins Reporting Service
112 Burning Tree Road - Dover, Delaware 19904
(302) 658-6697  FAX (302) 658-8418

## Page 4

1  defendant's side and again we'll begin there
2  with Delaware Counsel.
3        MR. SMITH: Good afternoon, Your
4  Honor. It's Rodger Smith of Morris Nichols for
5  defendant LinkedIn. I'm joined this afternoon
6  by my co-counsel from Pillsbury Winthrop,
7  Christopher Kao and Brock Weber. And with Your
8  Honor's permission, Mr. Kao will be addressing
9  the Court.
10       THE COURT: All right. Thank you
11 and good afternoon to you all as well. Counsel,
12 just by way of background here, as the parties
13 know, the case is referred to me by the district
14 judge to resolve all matters up to and including
15 discovery related matters, so to the extent
16 those arise in the case, I'll be deciding them
17 in the first instance and that's why I'm here
18 with you at our case management conference as
19 well. I also note that the parties and I
20 appreciate, have met and conferred provided me
21 with a proposed schedule in the case and the
22 schedule itself doesn't have any disputes in it;
23 that is, the parties, as I understand it, agree
24 if the schedule is going to issue, there's no

Hawkins Reporting Service
112 Burning Tree Road - Dover, Delaware 19904
(302) 658-6697  FAX (302) 658-8418

5

1  disputes as to the relevant dates and deadlines,
2  but there is obviously a dispute about whether a
3  schedule should enter in light of the motion to
4  stay that's been filed in the case at DI number
5  23 which we're going to talk about in just a
6  second. To the extent I do order that a
7  schedule should be entered, then what I will do
8  is ask plaintiff's counsel on behalf of all
9  sides to provide me with a revised proposed
10 scheduling order that takes into account any
11 additional information that we need to include
12 besides what's been provided already by the
13 parties and to resubmit on the docket by no
14 later than close of business on Friday this
15 week. And obviously that will depend on what is
16 the result of the motion to stay, which we'll
17 take up briefly. And the only other thing I
18 would say, to the extent the Court does enter
19 the schedule, the parties I know have asked for
20 a 7-day trial in the case and we would be
21 holding that number of days on Judge Noreika's
22 calendar, but I always just remind parties
23 that's certainly without prejudice to the
24 district judge that as the case gets closer to

6

1  trial to set an agreed upon amount of trial
2  hours for each side to present their case and
3  the judge obviously has the discretion to take a
4  particular number of hours that might amount to
5  less than or more than seven days once the judge
6  is getting into the pretrial schedule. One
7  other thing I would just note with regard to the
8  proposed schedule is there's a section regarding
9  alternative dispute resolution or ADR and I
10 would say that I don't know whether or not I
11 will be the magistrate judge who is assigned to
12 this case to address ADR, but after a schedule
13 is entered at whatever time that happens, the
14 magistrate judge will be assigned on the docket
15 and that judge, whether it's me or otherwise,
16 will then likely issue an order that will give
17 the parties guidance with regard to how they
18 should address ADR with the Court. So just add
19 those notes about a schedule again, whenever
20 that schedule is entered in the case.
21           All right. As I noted up top,
22 there is a dispute about whether I should enter
23 a schedule at all in the case, which I'll hear
24 briefly from the parties now on in light of the

7

1  101 motion to dismiss that was filed by
2  defendant's side. And so I'm happy to hear the
3  sides' arguments with regard to that knowing
4  that I have reviewed their letters that they
5  submitted both in support of and in opposition
6  to the motion to stay. So let me just give
7  briefly each side the chance to just add
8  anything they wish to add there. I'll turn
9  first to plaintiff's side, Mr. Schlather, you're
10 going to be speaking on behalf of the plaintiff?
11           MR. SCHLATHER: That's correct,
12 Your Honor. Thank you.
13           THE COURT: So I guess let me just
14 throw out a couple of quick questions for you
15 and I'll certainly give you a chance to add
16 anything else that you wish to add. On undue
17 prejudice it looks like it's probably not
18 disputed the parties aren't direct competitors,
19 but the other side raised another issue which
20 was they say you waited quite a while after you
21 issued the respective patents to sue them. And
22 I think in response you say something like well,
23 that's -- that's speculative. And I guess
24 speculative in terms of how long you waited to

8

1  sue after you had a view that they might be
2  infringing your patents. So I just wanted to
3  ask, is there anything more you want to say
4  about that, about how long you waited after you
5  did know that they infringe your patents or why
6  it is that the amount of time from the issuance
7  of patents to when you sued shouldn't be a
8  concern for me?
9            MR. SCHLATHER: Well, I would say
10 that what LinkedIn has said is that eBuddy
11 delayed eight years from the date that its
12 patent issued until it filed the present lawsuit
13 and then I guess that's a different issue than
14 whether eBuddy waited after it learned of
15 LinkedIn's infringement. Those are two wholly
16 separate issues and I would say that any delay
17 between when eBuddy learned of LinkedIn's
18 infringement or when it formed a belief that
19 LinkedIn was infringing its patent is
20 substantially less than the eight years since
21 the patents issued. EBuddy just simply did not
22 have an opinion one way or the other at that
23 point. I was not involved in the case,
24 obviously, when these patents issued or well

9

1  maybe it's not obvious, but I wasn't.  Once we
2  started our investigation, we proceeded with
3  reasonable diligence to confirm our allegation
4  of infringement and those are set forth in some
5  significant detail in our complaint and
6  proceeded to get this case on file.  So, you
7  know, with regard to LinkedIn's speculation,
8  it's simply that.  They made no allegations to
9  when they started using the accused
10 functionality in their systems and they made no
11 allegations of when eBuddy became aware of that
12 functionality and then how long there was --
13 what delay, if any, there was after that.
14           THE COURT:  Is there anything you
15 wanted to say about that, along the lines of
16 actually I think plaintiff became aware of this,
17 I thought it was likely around here, this time
18 and sure, we did wait for X number of months or
19 years after that, but that was because of why?
20 I know you said what they haven't alleged, but
21 anything you want to say affirmatively in that
22 regard?
23           MR. SCHLATHER:  Well, from -- no.
24 All I can say is once -- from I guess from my

10

1  perspective, when we became aware of our
2  client's, I guess, knowledge that LinkedIn was
3  using this contact aggregation and the bit
4  notification functionality, we then proceeded to
5  investigate those claims and, you know, filed
6  the present lawsuit relatively or at least
7  reasonably quickly thereafter and that was
8  within the last year.
9            THE COURT:  That all happened in
10 2020 sometime, is that right?
11           MR. SCHLATHER:  Yes, that's
12 correct.
13           THE COURT:  Okay.  All right.  And
14 other things you wish to add about the stay
15 related factors that either you didn't say in
16 your letters or that that you wanted to kind of
17 amplify?
18           MR. SCHLATHER:  Yes, Your Honor.
19 Thank you.  So with regard to the simplification
20 issue, there's just -- the case that LinkedIn
21 primarily relies on, which is the Cabo case,
22 this case is very different in at least two
23 significant respects from that case.  First,
24 that case involved just a single patent and

11

1  secondly, that case did not include an expert
2  declaration as this one does, supporting the
3  factual allegations that eBuddy has made in its
4  complaint.  And so in that regard, I think the
5  Court should look more closely at the Universal,
6  the IBM and the Toshiba cases where, for
7  instance, in IBM and Toshiba the court noted
8  that there were multiple patents at issue with
9  multiple claims.  Here there's four patents with
10 67 claims in total.  And in those cases the
11 Court reasoned that the likelihood that the
12 motion to dismiss would resolve all those
13 patents and all those claims was significantly
14 lower and in those cases it didn't justify
15 staying the case as a result.  Also, LinkedIn's
16 motion is substantially the same as its original
17 motion and doesn't substantively or meaningfully
18 address the factual allegations that eBuddy has
19 made in its amended complaint, including the
20 factual allegations that are supported by its
21 expert's 77 page declaration.
22           With regard to the stage of the
23 case, we cite in our response the Toshiba case
24 and in that case the Court had not yet entered a

12

1  scheduling order either, but denied the motion
2  to stay despite that.  And so that I think the
3  stage of the case and whether there is a
4  scheduling order in place is not dispositive on
5  that issue.  And similarly in IBM, the Court
6  held that the case should move forward even
7  though it was still at a relatively early case.
8  And notably that IBM case is one that's cited by
9  LinkedIn and there the Court reasoned that where
10 the amount of work that would need to be done in
11 the interim between when the motion to stay was
12 filed and when the underlying motion to dismiss
13 was resolved would be relatively small and the
14 same is true here, including if you look at the
15 agreed schedule, the only thing that is likely
16 to come up on the docket between now and when
17 the motion to dismiss is decided are the
18 parties' initial disclosures.  And in IBM that's
19 exactly what the Court ordered was that the
20 parties should proceed forward with their
21 initial disclosures while the motion to dismiss
22 was resolved.
23           THE COURT:  Likely for the other
24 side the biggest amount of work at play in the

13

1  early stage of the case is, you know, discovery
2  could get started and there could be efforts in
3  that regard, but invalidity contentions, which
4  it looks like here on the schedule are to be
5  produced on October of 15th this year, so
6  roughly about, you know, five and a half, six
7  months away, would probably be the biggest --
8  the biggest lift.  Would you agree with that Mr.
9  Schlather?
10           MR. SCHLATHER:  I think of the --
11 of the work that would reasonably be reached
12 before the motion to dismiss was decided,
13 invalidity contentions would likely be the
14 largest, the largest deadline on the defendant's
15 side.  Although I will note that in the IBM
16 case, again, the case proceeded through
17 invalidity contentions and, you know, even
18 though the motion to stay was filed at an early
19 stage in that case as well.
20           THE COURT:  Okay.  Anything more
21 you wish to add before I hear from your
22 colleague on the other side?
23           MR. SCHLATHER:  With regard to the
24 last factor, prejudice, LinkedIn is focused

14

1  primarily on the fact that the parties are not
2  competitors, but that single issue is not
3  dispositive.  Again, in the IBM case the parties
4  were not competitors and the Court allowed the
5  case to proceed.  Similarly in the Toshiba case
6  there's no indication that the parties were
7  competitors and in that case the Court denied a
8  motion to stay.  As we pointed out in our brief,
9  in the Cooper case, the courts in this district
10 have held that generally a showing of hardship
11 or inequity is needed to show that the balance
12 of factors favors a stay.  And here LinkedIn has
13 shown no hardship or inequity or in any way that
14 it would be prejudiced by moving forward,
15 including at least moving forward through
16 initial disclosures as this court has done in
17 other cases.
18           With regard to conservation of
19 judicial resources, Your Honor can look at the
20 agreed schedule that the parties have submitted.
21 There's really nothing on that schedule that
22 would reasonably be reached before the Court
23 resolves the motion to dismiss and so there's
24 really no judicial resources that would be

15

1  consumed.  And to the extent that the parties
2  had to spend any time or resources, they would
3  be related to likely just limited to the initial
4  disclosures as we just discussed.
5           THE COURT:  Okay.  All right.
6  Thank you, Mr. Schlather.  Let me turn to
7  counsel for defendant's side to hear their
8  response.  And Mr. Kao, I'll turn to you.
9           MR. KAO:  Thank you, Your Honor.
10 First, with respect to undue prejudice, I simply
11 don't think the plaintiff has made any case for
12 any prejudice that it would suffer in the event
13 of the stay.  I think the plaintiff concedes
14 that any delay can be compensated by, you know,
15 monetary damages should it prevail ultimately.
16 So I don't think a brief stay of the case at all
17 effects the plaintiff here.
18           With respect to its reasonable
19 diligence, you know, although this wasn't
20 briefed, as I don't think we were aware that
21 this was going to be the response from the
22 plaintiff, but the mobile app at issue,
23 LinkedIn's mobile app has been around and
24 available since 2008.  I don't -- because we

16

1  have not, you know, entered discovery yet, I
2  don't know when the specific features at issue
3  may or may not have been added to the app, but
4  certainly there's been plenty of time for the
5  plaintiff to do diligence with respect to
6  potential infringement, so I do think there's a
7  significant delay in filing the suit.  And
8  again, it's, you know, that just goes to the
9  point that there's no prejudice that the
10 plaintiff would suffer here by any stay.
11          In terms of the resources that
12 would be conserved by granting the stay here, I
13 do think not only are the invalidity
14 contentions, which Your Honor mentioned, a
15 significant undertaking for the defendant should
16 we have to do this while the motion to dismiss
17 is pending, in addition, we have to -- there is,
18 under the agreed schedule, the initial core
19 production of technical documents, which would
20 occur in July, along with, you know, initial
21 financial information.  So that even initial
22 discovery would require a significant effort on
23 the defendant's part to locate and produce the
24 core technical documents, and, you know,

17

1  relevant financial data.
2           THE COURT: Mr. Kao, anything you
3  want to say about what you think or understand,
4  you know -- I mean, what I know obviously it's a
5  matter of not only producing but also searching
6  for, but in some cases might be a fairly large
7  cache of information, in other cases they might
8  not be. Anything more you want to say about
9  what you think that's going to look like in this
10 case?
11          MR. KAO: So generally for
12 LinkedIn, it does require us to go through and,
13 you know, basically talk to the engineers who
14 have knowledge regarding the relevant features
15 and do a significant amount of searching through
16 their internal -- they call them wikis, but
17 there's essentially internal databases that
18 contain various features that are involved in
19 their software. So it is, I think, a not sort
20 of insignificant burden to do that, to conduct
21 all those interviews, search through their
22 internal documentation to get what we need. So
23 it's on the -- in some cases, you know, it's as
24 simple as just pulling a data sheet or that may

18

1  even be publicly available. This isn't that
2  type of case, because these are internal
3  software features that there's not something,
4  you know, readily available that we could just
5  turn over.
6           THE COURT: Right. Okay. Let me
7  let you continue.
8           MR. KAO: Sure. I think the other
9  point I wanted to address is that, you know the
10 plaintiff is relying on the IBM case. That is a
11 case where the Court actually granted the motion
12 to stay pending a similar 101 motion to dismiss
13 and deferred entry of the scheduling order. So
14 it's similar to what we're asking for here. I
15 think some dates were set in that case, but for
16 the most part the Court deferred entry of the
17 schedule. And I think it is -- it is warranted
18 here because, yes, although there are four
19 patents which the plaintiff mentioned, they're
20 from the same family. They're sort of two sets
21 of patents from the same family, but the
22 specification is largely the same. And the
23 arguments that we have made, with respect to
24 section 101 and the patentability of the

19

1  inventions claimed in these families are very
2  similar, so I think that this isn't a case where
3  you have multiple patents for multiple families
4  where there are different arguments being made.
5  Our motion to dismiss really is dispositive as
6  to all of these patents on the same theory,
7  based on, you know, patentability under section
8  101.
9           The last thing I will say is that
10 although the plaintiff relies on the fact that
11 it amended its complaint and attached an expert
12 declaration, a lengthy expert declaration to the
13 amended complaint, that is, as you will see, as
14 set forth in our motion to dismiss, the expert
15 witness cannot alter the substance of what is
16 actually set forth in the specification and the
17 claims of the asserted patents. And it is our
18 view as set forth in the motion to dismiss that
19 if the Court reviews the specification and the
20 asserted claims, that alone will demonstrate
21 that the patents are invalid under section 101.
22 And so all of this additional material from the
23 expert is at the end of day really irrelevant to
24 the motion.

20

1           THE COURT: I guess two questions,
2  Mr. Kao. One is, and you alluded to it, in
3  addition to core technical documents, in the
4  earlier stage of the case, a heavy lift, usually
5  for defendants is the, you know, their last
6  initial disclosure, which is the invalidity
7  contentions. I understand you to be saying,
8  yes, in this case, no doubt like in many patent
9  cases, the work that is going to be required for
10 us at that stage is going to be significant too
11 and that's a part of the -- a decent chunk of
12 the work I'm talking about when I say that a lot
13 of effort will be at issue here for defendant's
14 side in the, you know, first, you know, six to
15 eight months of the case at issue, is that
16 right?
17          MR. KAO: That's correct, Your
18 Honor. The invalidity contentions are, as in
19 every patent case, a very significant
20 undertaking given the amount of work to identify
21 the prior art and to prepare the very detailed
22 claim charts that go into those.
23          THE COURT: The other thing I
24 would add, you know, certainly on my mind, so I

21

1 want to give you a chance to give me your view
2 of why it doesn't matter.  A lot of the cases
3 like IBM or Cabo to some degree, where in the
4 past I had stayed the entry of the schedule in
5 light of a 101 motion, you know, you know, post
6 Alice, which has quite a lot of years since then
7 and the reality is the landscape has changed
8 with regard to 101, you know, five years ago in
9 terms of, you know, what a 101 motion might have
10 looked like, would result in if you just looked
11 at kind of the data points from other matters,
12 you know, if you didn't get into the specifics
13 of the actual motion in the instant case, but
14 you know, the number of those motions that were
15 getting granted and were getting granted, you
16 know, as to all claims, you know, whether in our
17 court or otherwise, you know, pretty
18 substantial.  Since like a lot has happened,
19 it's been a number of years, you've had
20 Burkheimer, you just have the reality that, you
21 know, on the ground, that and again like any
22 particular case can be different, but in general
23 on average I think anyone would be hard pressed
24 to say the number of 101 motions getting granted

22

1 as to -- certainly as to all patents or nearly
2 all, is much less than it was, you know, two,
3 four, five, six years ago, et cetera.  So from a
4 simplification perspective, isn't the reality we
5 are looking at a somewhat different state of
6 affairs just in terms of how likely it is that
7 any one section 101 motion to dismiss is truly
8 likely to be case dispositive at the pleading
9 stage?
10         MR. KAO:  Yes, Your Honor.  I
11 agree that the, I think the percentage, if you
12 want to look at it that way, of 101 motions
13 being granted at the 12(b)(6) stage has altered
14 and is lower now than I think it was at the, you
15 know, in the immediate aftermath of the Alice
16 decision.  That being said, I do think, however,
17 this district has granted many 12(b)(6) motions
18 based on section 101 at the pleading stage.  I
19 have been involved in a few in the last couple
20 of years and I think if Your Honor looks at the
21 track record, I think other judges in the
22 district have granted such motions.  So although
23 I think from a ratio perspective it may be, you
24 know, there may be less of a chance that the

23

1 motion would be granted in its entirety, at the
2 12(b)(6) stage, I think as I said, this court is
3 still doing it, and doing it regularly.  And for
4 that reason, I do think a stay makes sense here.
5 And obviously in particular we believe that this
6 is one of those cases where the case should be
7 dismissed at the 12(b)(6) stage, but you know,
8 even if you look at percentages, I do think
9 there's still a fair number of percentage of
10 such motions being granted in this district and
11 the Court should take that into account.
12         THE COURT:  Okay.  Mr. Kao,
13 anything further you wanted to add with regard
14 to issues that we haven't discussed?
15         MR. KAO:  No, Your Honor.
16         THE COURT:  Okay.  And I guess
17 I'll just briefly see if plaintiff's counsel has
18 anything more they wish to say in rebuttal on
19 this issue and I'll give Mr. Kao the same
20 ability, but Mr. Schlather, anything further by
21 way of rebuttal you wish to add?
22         MR. SCHLATHER:  Yes, Your Honor.
23 Thank you.  Just quickly.  With regard to the
24 patents at issue, I'm not sure that I heard a

24

1 clear kind of explanation of how those are
2 comprised, so there are four patents.  They fall
3 into two separate patent families.  Each patent
4 family has a common specification, but it's --
5 but all four patents do not share the same
6 specification.  That wasn't clear to me at least
7 from Mr. Kao's statement, so I wanted to clarify
8 that.
9         And then with regard to the IBM
10 case, as Your Honor knows, the Court didn't
11 enter a full schedule, but did allow the case to
12 proceed through initial disclosures.  And so at
13 a minimum, the Court should consider the same
14 structure, framework in this case to keep the
15 case moving forward even if a full schedule is
16 not entered.
17         THE COURT:  Okay.  And Mr. Kao,
18 maybe you can remind me, you know, I have looked
19 at the briefs with regard to the 101 motion,
20 although certainly not in the detail that I'm
21 going to, you know, when we get to the actual
22 resolution of that motion, but my thinking was,
23 you know, obviously four patents in suit here
24 and they certainly bear relation, but my memory

25

1  was, and maybe you can help add anything you
2  wish to add on the record here, that in terms of
3  kind of representation of claims, et cetera, it
4  wasn't as clean as yes, we're talking about four
5  patents, but it's all clear that there's kind of
6  one representative claim amongst all four.
7  There did seem to be at least some
8  patent-specific back and forth between the
9  parties in the briefing and I just wanted to
10  know if you wanted to add anything more to how
11  similar or distinct the 101 issues are going to
12  be on a patent by patent basis.
13          MR. KAO:  Sure.  I think the way
14  to look at it is the four patents are ultimately
15  from the same family, but the plaintiff is
16  correct, that they do break down into two
17  groups.  So the specifications are similar, but
18  there are differences between the two groups of
19  patents.  So I think the way we have presented
20  it in our motion, I think the way to look at it
21  is really of the four patents they sort of break
22  down into two and two, that are, you know, those
23  two groups are slightly different, but there are
24  representative claims with respect to I think

26

1  each of the two groups.
2          THE COURT:  Right.  If I'm
3  remembering right, like with regard to the two
4  groups, it was asserted by you and the plaintiff
5  may dispute this, but that claim 7 of the '395
6  was representative of two of the four patents
7  and then claim 1 of the '135 was representative
8  of the other two?
9          MR. KAO:  Yes, I believe that is
10  correct.
11          THE COURT:  Okay.  So maybe fair
12  to say that yes, it's four patents, but Judge,
13  our view is that doesn't mean you're going to
14  have to go through four entirely separate and
15  independent analysis for those patents with
16  regard to 101.  On the other hand, probably
17  would acknowledge, but you probably will have to
18  do some separate analysis with at least, if
19  we're correct with regard to at least set number
20  1 and set number 2, is that probably fair to
21  say?
22          MR. KAO:  That's correct, Your
23  Honor.
24          THE COURT:  And I'm not saying

27

1  plaintiff agrees with this, they may dispute it,
2  but okay, this is all helpful.  I appreciate the
3  parties' arguments.  Let me go ahead and give
4  you my decision here.  Look, it's always a
5  challenge to figure out how to deal with section
6  101 motions which are, you know, maybe the rare
7  motion in a patent case that gets filed at the
8  pleading stage that could be potentially
9  dispositive depending on how things go and
10  obviously the court over time has taken some
11  different approaches.
12          And so with regard to the facts on
13  the record here, let me tell you how I'm going
14  to decide the issue and the Court's order will
15  be reflected in today's transcript of our case
16  management conference.  And that is, obviously
17  with regard to the stay question, I look at the
18  three stay related factors, which summarized are
19  simplification, status of the case, and undue
20  prejudice.  I acknowledge that with regard to
21  the last two of those, that is status of the
22  case and undue prejudice, the defendant has the
23  better of them.  With regard to the stage of the
24  case, it's clearly early in the case.  Can't get

28

1  much earlier.  And obviously the later the case
2  goes the more work and time and effort the Court
3  and the parties put into litigating it, the less
4  and less a stay tends to make sense for reasons
5  I have described in lots of different opinions.
6  Here we're at the very very outset, so certainly
7  that factor favors a stay, favors defendant's
8  motion.
9          With regard to the undue prejudice
10  factor, I won't say it's all one side.  I mean,
11  defendants are right that the delay in and of
12  itself is typically not seen as enough of a
13  reason on its own for this factor to go the
14  plaintiffs way.  That said, it's not like the
15  delay is irrelevant in the calculus either.  And
16  if this case were stayed until the Court
17  resolved this 101 motion, would there be delay?
18  Yeah, there would be.  In my best guess, based
19  on the amount of motions I have before me, and
20  where this one falls, is that this 101 motion is
21  likely not going to be decided until sometime in
22  the summer, maybe even end of summer, maybe even
23  early fall.  And so if the case were stayed
24  until I'm able to resolve it, it's going to take

29

some time. And if it were to end up getting resolved in a way where the motion was denied in all or in part, the plaintiff's ability to move forward with the litigation is going to be compromised. There's going to be some decent delay. The case was filed back in November of 2020 and, you know, it could well be, you know, close to a year after that date until the case gets fired up again. And of course that just means going through the process of setting a schedule, but by the time you get a scheduled entered, by the time you get started even with those initial stages, we'll be well beyond that before anything really meaningful happens in the case. So, you know, delay itself isn't enough of a reason for this third factor to go the plaintiff's way, but it's an issue here for sure.

Now, that said, I certainly take the defendant's point and it weighs in their favor that by all accounts we're not talking about a situation where the parties are direct competitors such that a stay could have outside consequences beyond the delay on the ability to

30

seek monetary redress. And I don't know what to make of the amount of time between when the patents were issued here and when the case was filed. Plaintiff's counsel says that it wasn't clear to plaintiffs until very, very recently in 2020 that the infringing technology was being utilized by LinkedIn. I don't know whether that's true or not. It does seem like there's been some delay for sure in terms of when the patents were issued versus when the case was filed. Hard to know how much of that delay should be held against the plaintiffs or not. At a minimum, though, because this is not a direct competitor situation, you know, the third factor would probably at least falls slightly in favor of the defendant's side, even though, as I noted, real delay here, could put on the plaintiff.

But on the other hand, is the simplification factor actually I think favors the plaintiff's case. I want to emphasize in saying that, I'm saying that without any, any prejudice to the actual merits of this actual motion filed by the defendant. It could well be

31

that once the Court goes through that motion and the briefing, can ultimately determine in the end of the day the motion is well taken and all the patents should be found ineligible, but that's not what I'm doing here in a motion to stay. As I've said in prior opinions, I don't believe the stay calculus requires the Court or its even advisable for the Court to go through the motion and try to make some sort of prediction as to how it's going to rule on the actual argument. I think what is really asked of the Court by way of simplification factor is to take the data points that the Court is aware of writ large with regard to simplification separate and apart from the actual content of the pending motion that is alleged to be the simplifier and to try to figure out, on balance, does the suggestion that if the case were stayed this will simplify things makes sense? I actually don't think it does in light of all that I know. Obviously, again, if I end up deciding that the motion is well taken as to all four patents, then yeah, it would be tremendously simplified, this case would go away

32

unless of course the district court disagrees with me.

As I noted in cases like Cabo, I have to consider all the outcomes here that could result in light of a stay. And there's obviously the outcome that the motion could be rejected in its entirety. There's also the outcome, because we're dealing with four patents with at least some different arguments as to 101 here, that some patents may survive even if others didn't. And so for that reason alone, I think, you know, the idea that, you know, four patents case, all four patents are likely to be found ineligible may be a little bit of an uphill climb for the defendant. I say that's even more the case, though, in light of the Court's experience. I don't really think the district's experience writ large and probably the nation's experience in terms of judiciary 101 motions at the pleading stage over the last year or two as compared to the early stages post Alice. I don't think you could deny that in recent years, particularly post Burkheimer, the reality is that fewer motions to dismiss are

33

being granted in their entirety, especially in cases involving multiple patents just as a statistical matter. I know in my own cases for sure. Although it is possible for me to rule that a motion to dismiss on 101 grounds is well taken at the pleading stage. I did it recently in a case. The reality is that the last 10 such 101 motions at the pleading stage, the large, large majority of those ultimately resulted in a decision not to find the patents ineligible at least at that stage. Often it's because there's a potential fact issue and the decision is that the motion should be or could be re-filed at the summary judgment stage. Indeed Judge Noreika, who is the district judge in this case, recently in a case called Commvault in which there was a large number of patents at issue and asserted claims at issue and yet a motion to dismiss was filed on 101 ground as to all have those patents and claims, pretty summarily rejected the motion in essence saying the resources at issue were better spent at the summary judgment stage. I'm not saying that'll be my opinion here, I'm saying the reality is we're in a much different

34

place than we were years ago in terms of likely outcomes of motion to dismiss on 101 grounds at the pleading stage and at a different stage I was at when I decided those issues, for example, in the IBM case. Just on average with the facts of record, the most likely average outcome here is that the motion is not likely to be entirely successful. Again, I emphasize has nothing to do with the actual merits of this motion. I'm just saying in general. If that is the likely outcome just based on the statistics and the Court's experience, then, you know, again, how much would the case be simplified to have a case that's been stayed for quite a long time where discovery hasn't even gotten fired up, all with regard to a case that's ultimately going to need to move forward probably, even if ultimately at summary judgment the patents are found to be ineligible, so I think the simplification factor here actually favors the plaintif's side.
    When I tie all this together, I think really I'm kind of in equipoise in terms of the strength of both sides' views. And so because I'm not convinced at this stage in light

35

of where we are that the motion -- that the defendant's position is stronger than the plaintiff's, I'm going to deny the motion and I'm going to enter a scheduled in the case. I will say, that another reason that I'm doing that is because I do think it's likely, that even though as I said it will take some months to resolve this motion just in terms of where it falls on the list and all the motions ahead of it, I do think it's likely that I will be able to resolve it before we get to or too close to the invalidity contention stage. I know from experience that that is the stage that is a particularly time and resource intensive stage for defendant. But if it happens that as we get closer and closer past summer and into fall and I still haven't resolved the 101 motion, I hope that's not the case and expect it won't be, and we're getting closer to that and the defendant believes that it now, in light of the work that's been done and all that it faces with regard to completing invalidity contentions, thinks that it can make a stronger case with regard to the stay factor, it can certainly

36

indicate its desire to re-raise the stay issue with the Court by simply filing just a short one-page letter indicating to the Court that that's it's view and at that point if the court thinks it's well taken, the Court can set a further briefing schedule. In the interval, I'm not saying no work will occur. I know core technical document production is some work the defendants will have to do. I know that the discovery process will get ramped up, discovery requests will be made, parties will start to look into what it means to respond to those, but my view that in the few months between now and as we get into the summer, so much will not have happened that even if I ultimately end up deciding the defendant's motion in its favor, it won't be as if a tremendous amount of work has been done and lost.
    And so for all those reasons I'm going to deny the motion to stay and enter a schedule in the case at this stage. Having said that, the parties, as I noted, provided me with a proposed schedule. There's just a couple of dates that I need to fill in with dates from

37

1  myself or Judge Noreika's calendar and I do have
2  those here.  And so let me just let the parties
3  know of them and then as I said, I'll ask
4  plaintiff's counsel on behalf of all sides to
5  submit a revised proposed scheduling order by no
6  later than close of business on Friday of this
7  week that includes these dates as well.  And
8  they are first, with regard to the Markman
9  hearing in the case, we'll schedule that hearing
10 before me on March 16th of 2022.  That's March
11 16th of 2022 at 11 o'clock a.m.  eastern.  March
12 16th, 2022 at 11 a.m.  And the pretrial
13 conference will be on June 5th, 2023.  That's
14 June 5th, 2023, at 4:30 p.m. before Judge
15 Noreika.  And the trial will be set to begin on
16 June 12th, 2023 in Judge Noreika's courtroom.
17 And so we'll just ask plaintiff's counsel to
18 include those dates in the revised proposed
19 scheduling order.  And when I see that order,
20 I'll sign and enter it and the case will be on
21 its way.
22          With that said, I do also, in the
23 case management conferences, let the parties let
24 me know if there's any other issue, not one that

Hawkins Reporting Service
112 Burning Tree Road - Dover, Delaware 19904
(302) 658-6697  FAX (302) 658-8418

38

1  relates to the entry of a schedule or scheduling
2  order disputes, but some other issue about the
3  case where they say, Judge, I just want to give
4  you a heads up that this issue might come up or
5  it's something a little unusual, just want to
6  make the Court aware of it.  Happy to give you
7  the chance to let me know that.  Not that do
8  have to have such an issue, but if you do, I'm
9  happy to hear it.  So let me just turn to
10 plaintiff's counsel.  Is there anything
11 plaintiff's counsel wishes to add with regard to
12 that issue?
13          MR. SCHLATHER:  No, Your Honor.
14 Thank you.
15          THE COURT:  Okay.  I'll give the
16 same chance to defendant's counsel.
17          MR. KAO:  No, Your Honor.
18          THE COURT:  All right.  As I said,
19 I know there's a motion to dismiss pending and
20 I'll get to it as soon as I can.  With all that
21 said, I wish everybody a good day and good week
22 and obviously continued health and safety and
23 the Court will end our teleconference today and
24 we'll go off the record.  Thank you, everybody.

Hawkins Reporting Service
112 Burning Tree Road - Dover, Delaware 19904
(302) 658-6697  FAX (302) 658-8418

39

1  Bye bye.
2          (End at 3 p.m.)

Hawkins Reporting Service
112 Burning Tree Road - Dover, Delaware 19904
(302) 658-6697  FAX (302) 658-8418

40

1  State of Delaware)
                   )
2  New Castle County)

5       CERTIFICATE OF REPORTER

7       I, Stacy M. Ingram, Certified Court Reporter
8  and Notary Public, do hereby certify that the
9  foregoing record, Pages 1 to 40 inclusive, is a true
10 and accurate transcript of my stenographic notes
11 taken on April 26, 2021, in the above-captioned
12 matter.

14      IN WITNESS WHEREOF, I have hereunto set my
15 hand and seal this 26th day of April 2021, at
16 Wilmington.

19      _/s/ Stacy M. Ingram_
20      Stacy M. Ingram, CCR

Hawkins Reporting Service
112 Burning Tree Road - Dover, Delaware 19904
(302) 658-6697  FAX (302) 658-8418

# Index

| **'** | **4** | 18:9<br>**addressing** [1] - 4:8 | 40:15<br>**argument** [2] - 3:22, | 31:2, 36:6<br>**briefly** [4] - 5:17, 6:24, |
|---|---|---|---|---|
| **'135** [1] - 26:7<br>**'395** [1] - 26:5 | **40** [1] - 40:9<br>**4:30** [1] - 37:14 | **ADR** [3] - 6:9, 6:12, 6:18<br>**advisable** [1] - 31:8<br>**affairs** [1] - 22:6 | 31:11<br>**arguments** [5] - 7:3, 18:23, 19:4, 27:3, 32:9 | 7:7, 23:17<br>**briefs** [1] - 24:19<br>**BROCK** [1] - 2:6<br>**Brock** [1] - 4:7 |
| **/** | **5** | **affirmatively** [1] - 9:21<br>**aftermath** [1] - 22:15 | **arise** [1] - 4:16<br>**ARSHT** [1] - 2:2 | **burden** [1] - 17:20<br>**BURKE** [1] - 1:14 |
| **/s** [1] - 40:19 | **5th** [2] - 37:13, 37:14 | **afternoon** [7] - 3:1, 3:7, 3:17, 3:23, 4:3, 4:5, 4:11 | **art** [1] - 20:21<br>**asserted** [4] - 19:17, 19:20, 26:4, 33:17 | **Burke** [1] - 3:2<br>**Burkheimer** [2] - 21:20, 32:23 |
| **1** | **6** | **aggregation** [1] - 10:3<br>**ago** [3] - 21:8, 22:3, 34:1 | **assigned** [2] - 6:11, 6:14<br>**attached** [1] - 19:11 | **business** [2] - 5:14, 37:6<br>**BY** [6] - 1:20, 1:23, 2:3, 2:5, 2:6, 2:6 |
| **1** [3] - 26:7, 26:20, 40:9<br>**10** [1] - 33:7 | **67** [1] - 11:10 | **agree** [3] - 4:23, 13:8, 22:11<br>**agreed** [4] - 6:1, 12:15, 14:20, 16:18 | **available** [3] - 15:24, 18:1, 18:4<br>**average** [3] - 21:23, 34:5, 34:6 | **bye** [2] - 39:1 |
| **101** [25] - 7:1, 18:12, 18:24, 19:8, 19:21, 21:5, 21:8, 21:9, 21:24, 22:7, 22:12, 22:18, 24:19, 25:11, 26:16, 27:6, 28:17, 28:20, 32:9, 32:20, 33:5, 33:8, 33:19, 34:2, 35:17 | **7**<br>**7** [1] - 26:5<br>**7-day** [1] - 5:20<br>**77** [1] - 11:21 | **agrees** [1] - 27:1<br>**ahead** [2] - 27:3, 35:9<br>**Alice** [3] - 21:6, 22:15, 32:22<br>**allegation** [1] - 9:3<br>**allegations** [5] - 9:8, 9:11, 11:3, 11:18, 11:20 | **aware** [6] - 9:11, 9:16, 10:1, 15:20, 31:13, 38:6<br>**B**<br>**B.V** [2] - 1:3, 3:10<br>**background** [1] - 4:12 | **C**<br>**C.A** [1] - 1:4<br>**Cabo** [3] - 10:21, 21:3, 32:3<br>**cache** [1] - 17:7<br>**calculus** [2] - 28:15, 31:7<br>**calendar** [2] - 5:22, 37:1 |
| **11** [2] - 37:11, 37:12<br>**12(b)(6** [4] - 22:13, 22:17, 23:2, 23:7<br>**12th** [1] - 37:16<br>**15th** [1] - 13:5<br>**16th** [3] - 37:10, 37:11, 37:12 | **8**<br>**844** [1] - 1:11<br>**A** | **alleged** [2] - 9:20, 31:16<br>**allow** [1] - 24:11<br>**allowed** [1] - 14:4<br>**alluded** [1] - 20:2<br>**alone** [2] - 19:20, 32:11 | **balance** [2] - 14:11, 31:17<br>**based** [4] - 19:7, 22:18, 28:18, 34:11<br>**basis** [1] - 25:12<br>**bear** [1] - 24:24 | **cannot** [1] - 19:15<br>**captioned** [2] - 3:10, 40:11<br>**case** [91] - 3:8, 4:13, 4:16, 4:18, 4:21, 5:4, 5:20, 5:24, 6:2, 6:12, 6:20, 6:23, |
| **2** | **a.m** [2] - 37:11, 37:12<br>**ability** [3] - 23:20, 29:3, 29:24<br>**able** [2] - 28:24, 35:10 | **alter** [1] - 19:15<br>**altered** [1] - 22:13<br>**alternative** [1] - 6:9<br>**amended** [3] - 11:19, 19:11, 19:13 | **became** [3] - 9:11, 9:16, 10:1<br>**BEFORE** [1] - 1:14<br>**begin** [3] - 3:16, 4:1, 37:15 | 8:23, 9:6, 10:20, 10:21, 10:22, 10:23, 10:24, 11:1, 11:15, 11:23, 11:24, 12:3, 12:6, 12:7, 12:8, |
| **2** [1] - 26:20<br>**20-1501-MN-CJB** [2] - 1:4, 3:12<br>**2008** [1] - 15:24<br>**2020** [3] - 10:10, 29:7, 30:6 | **above-captioned** [1] - 40:11<br>**account** [2] - 5:10, 23:11<br>**accounts** [1] - 29:21<br>**accurate** [1] - 40:10<br>**accused** [1] - 9:9 | **amount** [10] - 6:1, 6:4, 8:6, 12:10, 12:24, 17:15, 20:20, 28:19, 30:2, 36:17<br>**amplify** [1] - 10:17 | **behalf** [3] - 5:8, 7:10, 37:4<br>**belief** [1] - 8:18<br>**believes** [1] - 35:20<br>**best** [1] - 28:18<br>**better** [2] - 27:23, 33:22 | 13:1, 13:16, 13:19, 14:3, 14:5, 14:7, 14:9, 15:11, 15:16, 17:10, 18:2, 18:10, 18:11, 18:15, 19:2, 20:4, 20:8, 20:15, |
| **2021** [3] - 1:9, 40:11, 40:15<br>**2022** [3] - 37:10, 37:11, 37:12<br>**2023** [3] - 37:13, 37:14, 37:16 | **acknowledge** [2] - 26:17, 27:20<br>**action** [1] - 3:11<br>**actual** [7] - 21:13, 24:21, 30:23, 31:11, 31:15, 34:9 | **analysis** [2] - 26:15, 26:18<br>**ANTHONY** [1] - 2:6<br>**apart** [1] - 31:15<br>**apologize** [2] - 3:2, 3:5 | **between** [7] - 8:17, 12:11, 12:16, 25:8, 25:18, 30:2, 36:13<br>**beyond** [2] - 29:13, 29:24 | 20:19, 21:13, 21:22, 22:8, 23:6, 24:10, 24:11, 24:14, 24:15, 27:7, 27:15, 27:19, 27:22, 27:24, 28:1, |
| **23** [1] - 5:5<br>**26** [2] - 1:9, 40:11<br>**26th** [1] - 40:15<br>**2:00** [1] - 1:10 | **add** [14] - 6:18, 7:7, 7:8, 7:15, 7:16, 10:14, 13:21, 20:24, 23:13, 23:21, 25:1, 25:2, 25:10, 38:11<br>**added** [1] - 16:3 | **app** [3] - 15:22, 15:23, 16:3<br>**APPEARANCES** [2] - 1:17, 2:1<br>**appreciate** [2] - 4:20, 27:2 | **biggest** [3] - 12:24, 13:7, 13:8<br>**bit** [3] - 3:5, 10:3, 32:14<br>**break** [2] - 25:16, 25:21 | 28:16, 28:23, 29:6, 29:8, 29:15, 30:3, 30:10, 30:21, 31:18, 31:24, 32:13, 32:16, 33:7, 33:15, 33:16, |
| **3** | **addition** [2] - 16:17, 20:3<br>**additional** [2] - 5:11, 19:22<br>**address** [5] - 3:9, 6:12, 6:18, 11:18, | **approaches** [1] - 27:11<br>**April** [3] - 1:9, 40:11, | **brief** [2] - 14:8, 15:16<br>**briefed** [1] - 15:20<br>**briefing** [3] - 25:9, | 34:5, 34:13, 34:16, 35:4, 35:18, 35:23, 36:21, 37:9, 37:20, |
| **3** [1] - 39:2 | | | | |

37:23, 38:3
**cases** [13] - 11:6, 11:10, 11:14, 14:17, 17:6, 17:7, 17:23, 20:9, 21:2, 23:6, 32:3, 33:2, 33:3
**Castle** [1] - 40:2
**CCR** [1] - 40:20
**certainly** [10] - 5:23, 7:15, 16:4, 20:24, 22:1, 24:20, 24:24, 28:6, 29:19, 35:24
**CERTIFICATE** [1] - 40:5
**Certified** [1] - 40:7
**certify** [1] - 40:8
**cetera** [2] - 22:3, 25:3
**challenge** [1] - 27:5
**chance** [6] - 7:7, 7:15, 21:1, 22:24, 38:7, 38:16
**changed** [1] - 21:7
**charts** [1] - 20:22
**Christopher** [1] - 4:7
**CHRISTOPHER** [2] - 1:14, 2:5
**chunk** [1] - 20:11
**cite** [1] - 11:23
**cited** [1] - 12:8
**civil** [1] - 3:11
**claim** [4] - 20:22, 25:6, 26:5, 26:7
**claimed** [1] - 19:1
**claims** [11] - 10:5, 11:9, 11:10, 11:13, 19:17, 19:20, 21:16, 25:3, 25:24, 33:18, 33:20
**clarify** [1] - 24:7
**clean** [1] - 25:4
**clear** [4] - 24:1, 24:6, 25:5, 30:5
**clearly** [1] - 27:24
**client's** [1] - 10:2
**climb** [1] - 32:15
**close** [4] - 5:14, 29:8, 35:11, 37:6
**closely** [1] - 11:5
**closer** [4] - 5:24, 35:16, 35:19
**co** [1] - 4:6
**co-counsel** [1] - 4:6
**colleague** [1] - 13:22
**common** [1] - 24:4
**Commvault** [1] - 33:16
**compared** [1] - 32:21
**compensated** [1] -

15:14
**competitor** [1] - 30:14
**competitors** [5] - 7:18, 14:2, 14:4, 14:7, 29:23
**complaint** [5] - 9:5, 11:4, 11:19, 19:11, 19:13
**completing** [1] - 35:22
**comprised** [1] - 24:2
**compromised** [1] - 29:5
**concedes** [1] - 15:13
**concern** [1] - 8:8
**conduct** [1] - 17:20
**conference** [4] - 3:8, 4:18, 27:16, 37:13
**conferences** [1] - 37:23
**conferred** [1] - 4:20
**confirm** [1] - 9:3
**consequences** [1] - 29:24
**conservation** [1] - 14:18
**conserved** [1] - 16:12
**consider** [2] - 24:13, 32:4
**consumed** [1] - 15:1
**contact** [1] - 10:3
**contain** [1] - 17:18
**content** [1] - 31:15
**contention** [1] - 35:12
**contentions** [7] - 13:3, 13:13, 13:17, 16:14, 20:7, 20:18, 35:22
**continue** [1] - 18:7
**continued** [1] - 38:22
**CONTINUED** [1] - 2:1
**convinced** [1] - 34:24
**Cooper** [1] - 14:9
**core** [4] - 16:18, 16:24, 20:3, 36:7
**CORPORATION** [1] - 1:6
**Corporation** [1] - 3:11
**correct** [7] - 7:11, 10:12, 20:17, 25:16, 26:10, 26:19, 26:22
**counsel** [15] - 3:13, 3:15, 3:16, 3:24, 4:6, 4:11, 5:8, 15:7, 23:17, 30:4, 37:4, 37:17, 38:10, 38:11, 38:16
**Counsel** [3] - 1:24,

2:7, 4:2
**County** [1] - 40:2
**couple** [3] - 7:14, 22:19, 36:23
**course** [2] - 29:9, 32:1
**court** [8] - 3:12, 11:7, 14:16, 21:17, 23:2, 27:10, 32:1, 36:4
**COURT** [23] - 1:1, 3:1, 3:23, 4:10, 7:13, 9:14, 10:9, 10:13, 12:23, 13:20, 15:5, 17:2, 18:6, 20:1, 20:23, 23:12, 23:16, 24:17, 26:2, 26:11, 26:24, 38:15, 38:18
**Court** [32] - 1:15, 4:9, 5:18, 6:18, 11:5, 11:11, 11:24, 12:5, 12:9, 12:19, 14:4, 14:7, 14:22, 18:11, 18:16, 19:19, 23:11, 24:10, 24:13, 28:2, 28:16, 31:1, 31:7, 31:8, 31:12, 31:13, 36:2, 36:3, 36:5, 38:6, 38:23, 40:7
**Court's** [3] - 27:14, 32:17, 34:12
**courtroom** [1] - 37:16
**courts** [1] - 14:9

**D**

**DALLERY** [1] - 2:3
**damages** [1] - 15:15
**data** [4] - 17:1, 17:24, 21:11, 31:13
**databases** [1] - 17:17
**date** [2] - 8:11, 29:8
**dates** [6] - 5:1, 18:15, 36:24, 37:7, 37:18
**days** [2] - 5:21, 6:5
**deadline** [1] - 13:14
**deadlines** [1] - 5:1
**deal** [1] - 27:5
**dealing** [1] - 32:8
**decent** [2] - 20:11, 29:5
**decide** [1] - 27:14
**decided** [4] - 12:17, 13:12, 28:21, 34:4
**deciding** [3] - 4:16, 31:22, 36:16
**decision** [4] - 22:16, 27:4, 33:10, 33:12
**declaration** [4] - 11:2, 11:21, 19:12

**Defendant** [2] - 1:7, 2:7
**defendant** [7] - 4:5, 16:15, 27:22, 30:24, 32:15, 35:15, 35:19
**defendant's** [12] - 4:1, 7:2, 13:14, 15:7, 16:23, 20:13, 28:7, 29:20, 30:16, 35:2, 36:16, 38:16
**defendants** [3] - 20:5, 28:11, 36:9
**deferred** [2] - 18:13, 18:16
**degree** [1] - 21:3
**DELAWARE** [1] - 1:1
**Delaware** [4] - 1:12, 3:16, 4:2, 40:1
**delay** [13] - 8:16, 9:13, 15:14, 16:7, 28:11, 28:15, 28:17, 29:6, 29:15, 29:24, 30:9, 30:11, 30:17
**delayed** [1] - 8:11
**demonstrate** [1] - 19:20
**denied** [3] - 12:1, 14:7, 29:2
**deny** [3] - 32:22, 35:3, 36:20
**described** [1] - 28:5
**desire** [1] - 36:1
**despite** [1] - 12:2
**detail** [2] - 9:5, 24:20
**detailed** [1] - 20:21
**determine** [1] - 31:2
**DI** [1] - 5:4
**differences** [1] - 25:18
**different** [11] - 8:13, 10:22, 19:4, 21:22, 22:5, 25:23, 27:11, 28:5, 32:9, 33:24, 34:3
**diligence** [3] - 9:3, 15:19, 16:5
**direct** [3] - 7:18, 29:22, 30:14
**disagrees** [1] - 32:1
**disclosure** [1] - 20:6
**disclosures** [5] - 12:18, 12:21, 14:16, 15:4, 24:12
**discovery** [7] - 4:15, 13:1, 16:1, 16:22, 34:15, 36:10
**discretion** [1] - 6:3
**discussed** [2] - 15:4, 23:14

**dismiss** [18] - 7:1, 11:12, 12:12, 12:17, 12:21, 13:12, 14:23, 16:16, 18:12, 19:5, 19:14, 19:18, 22:7, 32:24, 33:5, 33:18, 34:2, 38:19
**dismissed** [1] - 23:7
**dispositive** [5] - 12:4, 14:3, 19:5, 22:8, 27:9
**dispute** [5] - 5:2, 6:9, 6:22, 26:5, 27:1
**disputed** [1] - 7:18
**disputes** [3] - 4:22, 5:1, 38:2
**distinct** [1] - 25:11
**district** [8] - 4:13, 5:24, 14:9, 22:17, 22:22, 23:10, 32:1, 33:15
**DISTRICT** [2] - 1:1, 1:1
**District** [1] - 1:15
**district's** [1] - 32:18
**docket** [3] - 5:13, 6:14, 12:16
**document** [1] - 36:8
**documentation** [1] - 17:22
**documents** [3] - 16:19, 16:24, 20:3
**done** [4] - 12:10, 14:16, 35:21, 36:18
**doubt** [1] - 20:8
**down** [2] - 25:16, 25:22

**E**

**early** [6] - 12:7, 13:1, 13:18, 27:24, 28:23, 32:21
**eastern** [1] - 37:11
**EBUDDY** [1] - 1:3
**eBuddy** [8] - 3:10, 8:10, 8:14, 8:17, 8:21, 9:11, 11:3, 11:18
**EDMONDS** [1] - 1:22
**Edmonds** [1] - 3:19
**effects** [1] - 15:17
**effort** [3] - 16:22, 20:13, 28:2
**efforts** [1] - 13:2
**eight** [3] - 8:11, 8:20, 20:15
**either** [3] - 10:15,

12:1, 28:15
**emphasize** [2] - 30:21, 34:8
**End** [1] - 39:2
**end** [7] - 19:23, 28:22, 29:1, 31:3, 31:21, 36:15, 38:23
**ended** [1] - 3:5
**engineers** [1] - 17:13
**enter** [7] - 5:3, 5:18, 6:22, 24:11, 35:4, 36:20, 37:20
**entered** [7] - 5:7, 6:13, 6:20, 11:24, 16:1, 24:16, 29:12
**entirely** [2] - 26:14, 34:7
**entirety** [3] - 23:1, 32:7, 33:1
**entry** [4] - 18:13, 18:16, 21:4, 38:1
**equipoise** [1] - 34:22
**especially** [1] - 33:1
**ESQ** [6] - 1:20, 1:23, 2:3, 2:5, 2:6, 2:6
**essence** [1] - 33:21
**essentially** [1] - 17:17
**et** [2] - 22:3, 25:3
**event** [1] - 15:12
**exactly** [1] - 12:19
**example** [1] - 34:4
**expect** [1] - 35:18
**experience** [5] - 32:17, 32:18, 32:19, 34:12, 35:13
**expert** [5] - 11:1, 19:11, 19:12, 19:14, 19:23
**expert's** [1] - 11:21
**explanation** [1] - 24:1
**extent** [4] - 4:15, 5:6, 5:18, 15:1

**F**

**faces** [1] - 35:21
**fact** [3] - 14:1, 19:10, 33:12
**factor** [10] - 13:24, 28:7, 28:10, 28:13, 29:16, 30:15, 30:20, 31:12, 34:19, 35:24
**factors** [3] - 10:15, 14:12, 27:18
**facts** [2] - 27:12, 34:5
**factual** [3] - 11:3, 11:18, 11:20
**fair** [3] - 23:9, 26:11,
26:20
**fairly** [1] - 17:6
**fall** [3] - 24:2, 28:23, 35:16
**falls** [3] - 28:20, 30:15, 35:9
**families** [3] - 19:1, 19:3, 24:3
**family** [4] - 18:20, 18:21, 24:4, 25:15
**FARNAN** [3] - 1:20, 1:20, 3:17
**Farnan** [2] - 3:18
**favor** [3] - 29:21, 30:16, 36:16
**favors** [5] - 14:12, 28:7, 30:20, 34:20
**features** [4] - 16:2, 17:14, 17:18, 18:3
**few** [2] - 22:19, 36:13
**fewer** [1] - 32:24
**figure** [2] - 27:5, 31:17
**file** [1] - 9:6
**filed** [13] - 5:4, 7:1, 8:12, 10:5, 12:12, 13:18, 27:7, 29:6, 30:4, 30:11, 30:24, 33:13, 33:19
**filing** [2] - 16:7, 36:2
**fill** [1] - 36:24
**financial** [2] - 16:21, 17:1
**fired** [2] - 29:9, 34:15
**first** [6] - 4:17, 7:9, 10:23, 15:10, 20:14, 37:8
**five** [3] - 13:6, 21:8, 22:3
**focused** [1] - 13:24
**FOR** [1] - 1:1
**foregoing** [1] - 40:9
**formed** [1] - 8:18
**forth** [5] - 9:4, 19:14, 19:16, 19:18, 25:8
**forward** [7] - 12:6, 12:20, 14:14, 14:15, 24:15, 29:4, 34:17
**four** [17] - 11:9, 18:18, 22:3, 24:2, 24:5, 24:23, 25:4, 25:6, 25:14, 25:21, 26:6, 26:12, 26:14, 31:23, 32:8, 32:12, 32:13
**framework** [1] - 24:14
**Friday** [2] - 5:14, 37:6
**full** [2] - 24:11, 24:15
**functionality** [3] - 9:10, 9:12, 10:4

**G**

**general** [2] - 21:22, 34:10
**generally** [2] - 14:10, 17:11
**given** [1] - 20:20
**granted** [10] - 18:11, 21:15, 21:24, 22:13, 22:17, 22:22, 23:1, 23:10, 33:1
**granting** [1] - 16:12
**ground** [2] - 21:21, 33:19
**grounds** [2] - 33:5, 34:2
**groups** [5] - 25:17, 25:18, 25:23, 26:1, 26:4
**guess** [8] - 7:13, 7:23, 8:13, 9:24, 10:2, 20:1, 23:16, 28:18
**guidance** [1] - 6:17

**H**

**half** [1] - 13:6
**hand** [3] - 26:16, 30:19, 40:15
**happy** [3] - 7:2, 38:6, 38:9
**hard** [2] - 21:23, 30:11
**hardship** [2] - 14:10, 14:13
**heads** [1] - 38:4
**health** [1] - 38:22
**hear** [5] - 6:23, 7:2, 13:21, 15:7, 38:9
**heard** [1] - 23:24
**hearing** [2] - 37:9
**heavy** [1] - 20:4
**held** [3] - 12:6, 14:10, 30:12
**help** [1] - 25:1
**helpful** [1] - 27:2
**hereby** [1] - 40:8
**hereunto** [1] - 40:14
**holding** [1] - 5:21
**Honor** [16] - 3:18, 4:4, 7:12, 10:18, 14:19, 15:9, 16:14, 20:18, 22:10, 22:20, 23:15, 23:22, 24:10, 26:23, 38:13, 38:17
**Honor's** [2] - 3:20, 4:8
**HONORABLE** [1] - 1:14
**hope** [1] - 35:17
**hours** [2] - 6:2, 6:4
**Houston** [1] - 3:20

**I**

**IBM** [11] - 11:6, 11:7, 12:5, 12:8, 12:18, 13:15, 14:3, 18:10, 21:3, 24:9, 34:5
**idea** [1] - 32:12
**identify** [2] - 3:14, 20:20
**immediate** [1] - 22:15
**IN** [2] - 1:1, 40:14
**include** [3] - 5:11, 11:1, 37:18
**includes** [1] - 37:7
**including** [4] - 4:14, 11:19, 12:14, 14:15
**inclusive** [1] - 40:9
**indeed** [1] - 33:14
**independent** [1] - 26:15
**indicate** [1] - 36:1
**indicating** [1] - 36:3
**indication** [1] - 14:6
**ineligible** [4] - 31:4, 32:14, 33:10, 34:19
**inequity** [2] - 14:11, 14:13
**information** [3] - 5:11, 16:21, 17:7
**infringe** [1] - 8:5
**infringement** [4] - 8:15, 8:18, 9:4, 16:6
**infringing** [3] - 8:2, 8:19, 30:6
**Ingram** [3] - 40:7, 40:19, 40:20
**initial** [10] - 12:18, 12:21, 14:16, 15:3, 16:18, 16:20, 16:21, 20:6, 24:12, 29:13
**insignificant** [1] - 17:20
**instance** [2] - 4:17, 11:7
**instant** [1] - 21:13
**intensive** [1] - 35:14
**interim** [1] - 12:11
**internal** [4] - 17:16, 17:17, 17:22, 18:2
**interval** [1] - 36:6
**interviews** [1] - 17:21
**invalid** [1] - 19:21
**invalidity** [8] - 13:3, 13:13, 13:17, 16:13,
20:6, 20:18, 35:12, 35:22
**inventions** [1] - 19:1
**investigate** [1] - 10:5
**investigation** [1] - 9:2
**involved** [4] - 8:23, 10:24, 17:18, 22:19
**involving** [1] - 33:2
**irrelevant** [2] - 19:23, 28:15
**issuance** [1] - 8:6
**issue** [26] - 4:24, 6:16, 7:19, 8:13, 10:20, 11:8, 12:5, 14:2, 15:22, 16:2, 20:13, 20:15, 23:19, 23:24, 27:14, 29:17, 33:12, 33:17, 33:18, 33:21, 36:1, 37:24, 38:2, 38:4, 38:8, 38:12
**issued** [6] - 7:21, 8:12, 8:21, 8:24, 30:3, 30:10
**issues** [4] - 8:16, 23:14, 25:11, 34:4
**itself** [3] - 4:22, 28:12, 29:15

**J**

**joined** [1] - 4:5
**JOSEPH** [1] - 1:20
**Joseph** [1] - 3:18
**judge** [8] - 4:14, 5:24, 6:3, 6:5, 6:11, 6:14, 6:15, 33:15
**Judge** [9] - 1:15, 3:2, 5:21, 26:12, 33:14, 37:1, 37:14, 37:16, 38:3
**judges** [1] - 22:21
**judgment** [3] - 33:14, 33:22, 34:18
**judicial** [2] - 14:19, 14:24
**judiciary** [1] - 32:19
**July** [1] - 16:20
**June** [3] - 37:13, 37:14, 37:16
**justify** [1] - 11:14

**K**

**Kao** [8] - 4:7, 4:8, 15:8, 17:2, 20:2, 23:12, 23:19, 24:17
**KAO** [11] - 2:5, 15:9,

17:11, 18:8, 20:17, 22:10, 23:15, 25:13, 26:9, 26:22, 38:17
**Kao's** [1] - 24:7
**keep** [1] - 24:14
**keeping** [1] - 3:5
**kind** [6] - 10:16, 21:11, 24:1, 25:3, 25:5, 34:22
**King** [1] - 1:11
**knowing** [1] - 7:3
**knowledge** [2] - 10:2, 17:14
**knows** [1] - 24:10

### L

**landscape** [1] - 21:7
**large** [6] - 17:6, 31:14, 32:18, 33:8, 33:9, 33:17
**largely** [1] - 18:22
**largest** [2] - 13:14
**last** [9] - 3:4, 10:8, 13:24, 19:9, 20:5, 22:19, 27:21, 32:20, 33:7
**late** [1] - 3:3
**lawsuit** [2] - 8:12, 10:6
**learned** [2] - 8:14, 8:17
**least** [10] - 10:6, 10:22, 14:15, 24:6, 25:7, 26:18, 26:19, 30:15, 32:9, 33:11
**lengthy** [1] - 19:12
**less** [6] - 6:5, 8:20, 22:2, 22:24, 28:3, 28:4
**letter** [1] - 36:3
**letters** [2] - 7:4, 10:16
**lift** [2] - 13:8, 20:4
**light** [8] - 5:3, 6:24, 21:5, 31:20, 32:5, 32:16, 34:24, 35:20
**likelihood** [1] - 11:11
**likely** [16] - 6:16, 9:17, 12:15, 12:23, 13:13, 15:3, 22:6, 22:8, 28:21, 32:13, 34:1, 34:6, 34:7, 34:10, 35:6, 35:10
**limited** [1] - 15:3
**line** [1] - 3:14
**lines** [1] - 9:15
**LINKEDIN** [1] - 1:6
**LinkedIn** [10] - 4:5,
8:10, 8:19, 10:2, 10:20, 12:9, 13:24, 14:12, 17:12, 30:7
**LinkedIn's** [5] - 8:15, 8:17, 9:7, 11:15, 15:23
**LinkedIng** [1] - 3:11
**list** [1] - 35:9
**litigating** [1] - 28:3
**litigation** [1] - 29:4
**LLP** [4] - 1:20, 2:2, 2:5, 3:18
**locate** [1] - 16:23
**look** [11] - 11:5, 12:14, 14:19, 17:9, 22:12, 23:8, 25:14, 25:20, 27:4, 27:17, 36:12
**looked** [3] - 21:10, 24:18
**looking** [1] - 22:5
**looks** [3] - 7:17, 13:4, 22:20
**lost** [1] - 36:18
**lower** [2] - 11:14, 22:14

### M

**magistrate** [2] - 6:11, 6:14
**majority** [1] - 33:9
**management** [4] - 3:8, 4:18, 27:16, 37:23
**march** [1] - 37:11
**March** [2] - 37:10
**Markman** [1] - 37:8
**material** [1] - 19:22
**matter** [5] - 3:9, 17:5, 21:2, 33:3, 40:12
**matters** [3] - 4:14, 4:15, 21:11
**mean** [3] - 17:4, 26:13, 28:10
**meaningful** [1] - 29:14
**meaningfully** [1] - 11:17
**means** [2] - 29:10, 36:12
**memory** [1] - 24:24
**mentioned** [2] - 16:14, 18:19
**merits** [2] - 30:23, 34:9
**met** [1] - 4:20
**might** [6] - 6:4, 8:1, 17:6, 17:7, 21:9,
38:4
**mind** [1] - 20:24
**minimum** [2] - 24:13, 30:13
**mobile** [2] - 15:22, 15:23
**Monday** [1] - 1:9
**monetary** [2] - 15:15, 30:1
**months** [5] - 9:18, 13:7, 20:15, 35:7, 36:13
**MORRIS** [1] - 2:2
**Morris** [1] - 4:4
**most** [2] - 18:16, 34:6
**motion** [59] - 3:9, 5:3, 5:16, 7:1, 7:6, 11:12, 11:16, 11:17, 12:1, 12:11, 12:12, 12:17, 12:21, 13:12, 13:18, 14:8, 14:23, 16:16, 18:11, 18:12, 19:5, 19:14, 19:18, 19:24, 21:5, 21:9, 21:13, 22:7, 23:1, 24:19, 24:22, 25:20, 27:7, 28:8, 28:17, 28:20, 29:2, 30:24, 31:1, 31:3, 31:5, 31:9, 31:16, 31:22, 32:6, 33:5, 33:13, 33:18, 33:20, 34:2, 34:7, 34:9, 35:1, 35:3, 35:8, 35:17, 36:16, 36:20, 38:19
**motions** [12] - 21:14, 21:24, 22:12, 22:17, 22:22, 23:10, 27:6, 28:19, 32:20, 32:24, 33:8, 35:9
**move** [3] - 12:6, 29:3, 34:17
**moving** [3] - 14:14, 14:15, 24:15
**MR** [21] - 3:17, 4:3, 7:11, 8:9, 9:23, 10:11, 10:18, 13:10, 13:23, 15:9, 17:11, 18:8, 20:17, 22:10, 23:15, 23:22, 25:13, 26:9, 26:22, 38:13, 38:17
**multiple** [5] - 11:8, 11:9, 19:3, 33:2

### N

**nation's** [1] - 32:19
**nearly** [1] - 22:1
**need** [5] - 5:11, 12:10, 17:22, 34:16, 36:24
**needed** [1] - 14:11
**New** [1] - 40:2
**Nichols** [1] - 4:4
**NICHOLS** [1] - 2:2
**Noreika** [2] - 33:14, 37:15
**Noreika's** [3] - 5:21, 37:1, 37:16
**notably** [1] - 12:8
**Notary** [1] - 40:8
**note** [3] - 4:19, 6:7, 13:15
**noted** [5] - 6:21, 11:7, 30:17, 32:3, 36:22
**notes** [2] - 6:19, 40:10
**nothing** [2] - 14:21, 34:8
**notification** [1] - 10:4
**November** [1] - 29:6
**number** [11] - 5:4, 5:21, 6:4, 9:18, 21:14, 21:19, 21:24, 23:9, 26:19, 26:20, 33:17

### O

**o'clock** [1] - 37:11
**obvious** [1] - 9:1
**obviously** [13] - 5:2, 5:15, 6:3, 8:24, 17:4, 23:5, 24:23, 27:10, 27:16, 28:1, 31:21, 32:6, 38:22
**occur** [2] - 16:20, 36:7
**October** [1] - 13:5
**OF** [2] - 1:1, 40:5
**often** [1] - 33:11
**once** [4] - 6:5, 9:1, 9:24, 31:1
**one** [13] - 3:4, 6:6, 8:22, 11:2, 12:8, 20:2, 22:7, 23:6, 25:6, 28:10, 28:20, 36:3, 37:24
**one-page** [1] - 36:3
**opinion** [2] - 8:22, 33:23
**opinions** [2] - 28:5, 31:6
**opposition** [1] - 7:5
**order** [11] - 5:6, 5:10, 6:16, 12:1, 12:4, 18:13, 27:14, 37:5, 37:19, 38:2
**ordered** [1] - 12:19
**original** [1] - 11:16
**otherwise** [2] - 6:15, 21:17
**outcome** [4] - 32:6, 32:8, 34:6, 34:11
**outcomes** [2] - 32:4, 34:2
**outset** [1] - 28:6
**outside** [1] - 29:23
**own** [2] - 28:13, 33:3

### P

**p.m** [3] - 1:10, 37:14, 39:2
**page** [2] - 11:21, 36:3
**Pages** [1] - 40:9
**part** [4] - 16:23, 18:16, 20:11, 29:3
**particular** [3] - 6:4, 21:22, 23:5
**particularly** [2] - 32:23, 35:14
**parties** [23] - 3:3, 4:12, 4:19, 4:23, 5:13, 5:19, 5:22, 6:17, 6:24, 7:18, 12:20, 14:1, 14:3, 14:6, 14:20, 15:1, 25:9, 28:3, 29:22, 36:11, 36:22, 37:2, 37:23
**parties'** [2] - 12:18, 27:3
**past** [2] - 21:4, 35:16
**patent** [11] - 8:12, 8:19, 10:24, 20:8, 20:19, 24:3, 25:8, 25:12, 27:7
**patent-specific** [1] - 25:8
**patentability** [2] - 18:24, 19:7
**patents** [40] - 7:21, 8:2, 8:5, 8:7, 8:21, 8:24, 11:8, 11:9, 11:13, 18:19, 18:21, 19:3, 19:6, 19:17, 19:21, 22:1, 23:24, 24:2, 24:5, 24:23, 25:5, 25:14, 25:19, 25:21, 26:6, 26:12, 26:15, 30:3, 30:10, 31:4, 31:23, 32:8, 32:10, 32:13, 33:2, 33:10, 33:17, 33:19, 34:18

5

**pending** [4] - 16:17, 18:12, 31:16, 38:19
**percentage** [2] - 22:11, 23:9
**percentages** [1] - 23:8
**permission** [2] - 3:21, 4:8
**perspective** [3] - 10:1, 22:4, 22:23
**PILLSBURY** [1] - 2:5
**Pillsbury** [1] - 4:6
**PITTMAN** [1] - 2:5
**place** [2] - 12:4, 34:1
**plaintif's** [1] - 34:20
**Plaintiff** [2] - 1:4, 1:24
**plaintiff** [15] - 7:10, 9:16, 15:11, 15:13, 15:17, 15:22, 16:5, 16:10, 18:10, 18:19, 19:10, 25:15, 26:4, 27:1, 30:18
**plaintiff's** [13] - 3:15, 5:8, 7:9, 23:17, 29:3, 29:17, 30:4, 30:21, 35:3, 37:4, 37:17, 38:10, 38:11
**plaintiffs** [3] - 28:14, 30:5, 30:12
**play** [1] - 12:24
**pleading** [7] - 22:8, 22:18, 27:8, 32:20, 33:6, 33:8, 34:3
**plenty** [1] - 16:4
**PLLC** [1] - 1:22
**point** [5] - 8:23, 16:9, 18:9, 29:20, 36:4
**pointed** [1] - 14:8
**points** [2] - 21:11, 31:13
**position** [1] - 35:2
**possible** [1] - 33:4
**post** [3] - 21:5, 32:21, 32:23
**potential** [2] - 16:6, 33:12
**potentially** [1] - 27:8
**prediction** [1] - 31:10
**prejudice** [10] - 5:23, 7:17, 13:24, 15:10, 15:12, 16:9, 27:20, 27:22, 28:9, 30:23
**prejudiced** [1] - 14:14
**prepare** [1] - 20:21
**present** [3] - 6:2, 8:12, 10:6
**presented** [1] - 25:19
**pressed** [1] - 21:23
**pretrial** [2] - 6:6, 37:12
**pretty** [2] - 21:17, 33:20
**prevail** [1] - 15:15
**primarily** [2] - 10:21, 14:1
**proceed** [3] - 12:20, 14:5, 24:12
**proceeded** [4] - 9:2, 9:6, 10:4, 13:16
**process** [2] - 29:10, 36:10
**produce** [1] - 16:23
**produced** [1] - 13:5
**producing** [1] - 17:5
**production** [2] - 16:19, 36:8
**proposed** [6] - 4:21, 5:9, 6:8, 36:23, 37:5, 37:18
**provide** [1] - 5:9
**provided** [3] - 4:20, 5:12, 36:22
**Public** [1] - 40:8
**publicly** [1] - 18:1
**pulling** [1] - 17:24
**put** [2] - 28:3, 30:17

**Q**

**questions** [2] - 7:14, 20:1
**quick** [1] - 7:14
**quickly** [2] - 10:7, 23:23
**quite** [3] - 7:20, 21:6, 34:14

**R**

**raise** [1] - 36:1
**raised** [1] - 7:19
**ramped** [1] - 36:10
**rare** [1] - 27:6
**ratio** [1] - 22:23
**re** [2] - 33:13, 36:1
**re-filed** [1] - 33:13
**re-raise** [1] - 36:1
**reached** [2] - 13:11, 14:22
**readily** [1] - 18:4
**real** [1] - 30:17
**reality** [6] - 21:7, 21:20, 22:4, 32:24, 33:7, 33:24
**really** [9] - 14:21, 14:24, 19:5, 19:23, 25:21, 29:14, 31:11, 32:17, 34:22
**reason** [5] - 23:4, 28:13, 29:16, 32:11, 35:5
**reasonable** [2] - 9:3, 15:18
**reasonably** [3] - 10:7, 13:11, 14:22
**reasoned** [2] - 11:11, 12:9
**reasons** [2] - 28:4, 36:19
**rebuttal** [2] - 23:18, 23:21
**recent** [1] - 32:23
**recently** [3] - 30:5, 33:6, 33:15
**record** [9] - 3:6, 3:7, 3:14, 22:21, 25:2, 27:13, 34:6, 38:24, 40:9
**redress** [1] - 30:1
**referred** [1] - 4:13
**reflected** [1] - 27:15
**regard** [30] - 6:7, 6:17, 7:3, 9:7, 9:22, 10:19, 11:4, 11:22, 13:3, 13:23, 14:18, 21:8, 23:13, 23:23, 24:9, 24:19, 26:3, 26:16, 26:19, 27:12, 27:17, 27:20, 27:23, 28:9, 31:14, 34:16, 35:22, 35:24, 37:8, 38:11
**regarding** [2] - 6:8, 17:14
**regularly** [1] - 23:3
**rejected** [2] - 32:7, 33:20
**related** [4] - 4:15, 10:15, 15:3, 27:18
**relates** [1] - 38:1
**relation** [1] - 24:24
**relatively** [3] - 10:6, 12:7, 12:13
**relevant** [3] - 5:1, 17:1, 17:14
**relies** [2] - 10:21, 19:10
**relying** [1] - 18:10
**remembering** [1] - 26:3
**remind** [2] - 5:22, 24:18
**REPORTER** [1] - 40:5
**Reporter** [1] - 40:7
**representation** [1] - 25:3
**representative** [4] - 25:6, 25:24, 26:6, 26:7
**requests** [1] - 36:11
**require** [2] - 16:22, 17:12
**required** [1] - 20:9
**requires** [1] - 31:7
**resolution** [2] - 6:9, 24:22
**resolve** [5] - 4:14, 11:12, 28:24, 35:8, 35:11
**resolved** [5] - 12:13, 12:22, 28:17, 29:2, 35:17
**resolves** [1] - 14:23
**resource** [1] - 35:14
**resources** [5] - 14:19, 14:24, 15:2, 16:11, 33:21
**respect** [5] - 15:10, 15:18, 16:5, 18:23, 25:24
**respective** [1] - 7:21
**respects** [1] - 10:23
**respond** [1] - 36:12
**response** [4] - 7:22, 11:23, 15:8, 15:21
**resubmit** [1] - 5:13
**result** [4] - 5:16, 11:15, 21:10, 32:5
**resulted** [1] - 33:9
**reviewed** [1] - 7:4
**reviews** [1] - 19:19
**revised** [3] - 5:9, 37:5, 37:18
**Rodger** [1] - 4:4
**RODGER** [1] - 2:3
**roughly** [1] - 13:6
**rule** [2] - 31:10, 33:4

**S**

**safety** [1] - 38:22
**schedule** [27] - 4:21, 4:22, 4:24, 5:3, 5:7, 5:19, 6:6, 6:8, 6:12, 6:19, 6:20, 6:23, 12:15, 13:4, 14:20, 14:21, 16:18, 18:17, 21:4, 24:11, 24:15, 29:11, 36:6, 36:21, 36:23, 37:9, 38:1
**scheduled** [2] - 29:11, 35:4
**scheduling** [7] - 5:10, 12:1, 12:4, 18:13, 37:5, 37:19, 38:1
**SCHLATHER** [11] - 1:22, 1:23, 7:11, 8:9, 9:23, 10:11, 10:18, 13:10, 13:23, 23:22, 38:13
**Schlather** [7] - 3:19, 3:21, 7:9, 13:9, 15:6, 23:20
**seal** [1] - 40:15
**search** [1] - 17:21
**searching** [2] - 17:5, 17:15
**second** [1] - 5:6
**secondly** [1] - 11:1
**section** [7] - 6:8, 18:24, 19:7, 19:21, 22:7, 22:18, 27:5
**see** [3] - 19:13, 23:17, 37:19
**seek** [1] - 30:1
**seem** [2] - 25:7, 30:8
**sense** [3] - 23:4, 28:4, 31:19
**separate** [5] - 8:16, 24:3, 26:14, 26:18, 31:15
**set** [11] - 6:1, 9:4, 18:15, 19:14, 19:16, 19:18, 26:19, 26:20, 36:5, 37:15, 40:14
**sets** [1] - 18:20
**setting** [1] - 29:10
**seven** [1] - 6:5
**share** [1] - 24:5
**SHAW** [1] - 2:5
**sheet** [1] - 17:24
**short** [1] - 36:2
**show** [1] - 14:11
**showing** [1] - 14:10
**shown** [1] - 14:13
**side** [16] - 3:13, 3:15, 4:1, 6:2, 7:2, 7:7, 7:9, 7:19, 12:24, 13:15, 13:22, 15:7, 20:14, 28:10, 30:16, 34:20
**sides** [2] - 5:9, 37:4
**sides'** [2] - 7:3, 34:23
**sign** [1] - 37:20
**significant** [8] - 9:5, 10:23, 16:7, 16:15, 16:22, 17:15, 20:10, 20:19
**significantly** [1] - 11:13

Hawkins Reporting Service
112 Burning Tree Road - Dover, Delaware 19904
(302) 658-6697   FAX (302) 658-8418

15 of 16 sheets                    Page 5 to 5 of 6                    04/30/2021 03:21:44 PM

**similar** [5] - 18:12, 18:14, 19:2, 25:11, 25:17
**similarly** [2] - 12:5, 14:5
**simple** [1] - 17:24
**simplification** [7] - 10:19, 22:4, 27:19, 30:20, 31:12, 31:14, 34:19
**simplified** [2] - 31:24, 34:13
**simplifier** [1] - 31:17
**simplify** [1] - 31:19
**simply** [4] - 8:21, 9:8, 15:10, 36:2
**single** [2] - 10:24, 14:2
**situation** [2] - 29:22, 30:14
**six** [3] - 13:6, 20:14, 22:3
**slightly** [2] - 25:23, 30:15
**small** [1] - 12:13
**SMITH** [2] - 2:3, 4:3
**Smith** [1] - 4:4
**software** [2] - 17:19, 18:3
**sometime** [2] - 10:10, 28:21
**somewhat** [1] - 22:5
**soon** [1] - 38:20
**sort** [4] - 17:19, 18:20, 25:21, 31:9
**speaking** [1] - 7:10
**specific** [2] - 16:2, 25:8
**specification** [5] - 18:22, 19:16, 19:19, 24:4, 24:6
**specifications** [1] - 25:17
**specifics** [1] - 21:12
**speculation** [1] - 9:7
**speculative** [2] - 7:23, 7:24
**spend** [1] - 15:2
**spent** [1] - 33:22
**Stacy** [3] - 40:7, 40:19, 40:20
**stage** [26] - 11:22, 12:3, 13:1, 13:19, 20:4, 20:10, 22:9, 22:13, 22:18, 23:2, 23:7, 27:8, 27:23, 32:20, 33:6, 33:8, 33:11, 33:14, 33:22, 34:3, 34:24, 35:12, 35:13, 35:14, 36:21
**stages** [2] - 29:13, 32:21
**start** [2] - 3:15, 36:11
**started** [4] - 9:2, 9:9, 13:2, 29:12
**State** [1] - 40:1
**state** [1] - 22:5
**statement** [1] - 24:7
**STATES** [1] - 1:1
**States** [1] - 1:15
**statistical** [1] - 33:3
**statistics** [1] - 34:11
**status** [2] - 27:19, 27:21
**stay** [27] - 3:9, 5:4, 5:16, 7:6, 10:14, 12:2, 12:11, 13:18, 14:8, 14:12, 15:13, 15:16, 16:10, 16:12, 18:12, 23:4, 27:17, 27:18, 28:4, 28:7, 29:23, 31:6, 31:7, 32:5, 35:24, 36:1, 36:20
**stayed** [5] - 21:4, 28:16, 28:23, 31:18, 34:14
**staying** [1] - 11:15
**stenographic** [1] - 40:10
**Stephen** [1] - 3:19
**STEPHEN** [1] - 1:23
**still** [4] - 12:7, 23:3, 23:9, 35:17
**Street** [1] - 1:11
**strength** [1] - 34:23
**stronger** [2] - 35:2, 35:23
**structure** [1] - 24:14
**submit** [1] - 37:5
**submitted** [2] - 7:5, 14:20
**substance** [1] - 19:15
**substantial** [1] - 21:18
**substantially** [2] - 8:20, 11:16
**substantively** [1] - 11:17
**successful** [1] - 34:8
**sue** [2] - 7:21, 8:1
**sued** [1] - 8:7
**suffer** [2] - 15:12, 16:10
**suggestion** [1] - 31:18
**suit** [2] - 16:7, 24:23

**summarily** [1] - 33:20
**summarized** [1] - 27:18
**summary** [3] - 33:14, 33:22, 34:18
**summer** [4] - 28:22, 35:16, 36:14
**support** [1] - 7:5
**supported** [1] - 11:20
**supporting** [1] - 11:2
**survive** [1] - 32:10
**systems** [1] - 9:10

**T**

**technical** [4] - 16:19, 16:24, 20:3, 36:8
**TECHNOLOGIES** [1] - 1:3
**Technologies** [1] - 3:10
**technology** [1] - 30:6
**teleconference** [1] - 38:23
**teleconferences** [1] - 3:4
**telephonically** [1] - 3:8
**tends** [1] - 28:4
**terms** [10] - 7:24, 16:11, 21:9, 22:6, 25:2, 30:9, 32:19, 34:1, 34:22, 35:8
**Texas** [1] - 3:20
**that'll** [1] - 33:23
**THE** [25] - 1:1, 1:1, 1:14, 3:1, 3:23, 4:10, 7:13, 9:14, 10:9, 10:13, 12:23, 13:20, 15:5, 17:2, 18:6, 20:1, 20:23, 23:12, 23:16, 24:17, 26:2, 26:11, 26:24, 38:15, 38:18
**themselves** [1] - 3:14
**theory** [1] - 19:6
**thereafter** [1] - 10:7
**thinking** [1] - 24:22
**thinks** [2] - 35:23, 36:5
**third** [2] - 29:16, 30:14
**three** [1] - 27:18
**throw** [1] - 7:14
**tie** [1] - 34:21
**today** [2] - 3:22, 38:23
**today's** [1] - 27:15
**together** [1] - 34:21
**top** [1] - 6:21

**Toshiba** [4] - 11:6, 11:7, 11:23, 14:5
**total** [1] - 11:10
**track** [1] - 22:21
**transcript** [2] - 27:15, 40:10
**tremendous** [1] - 36:17
**tremendously** [1] - 31:24
**trial** [4] - 5:20, 6:1, 37:15
**true** [3] - 12:14, 30:8, 40:9
**truly** [1] - 22:7
**try** [2] - 31:9, 31:17
**TUNNELL** [1] - 2:2
**turn** [5] - 7:8, 15:6, 15:8, 18:5, 38:9
**two** [18] - 3:3, 8:15, 10:22, 18:20, 20:1, 22:2, 24:3, 25:16, 25:18, 25:22, 25:23, 26:1, 26:3, 26:6, 26:8, 27:21, 32:21
**type** [1] - 18:2
**typically** [1] - 28:12

**U**

**ultimately** [7] - 15:15, 25:14, 31:2, 33:9, 34:16, 34:17, 36:15
**under** [3] - 16:18, 19:7, 19:21
**underlying** [1] - 12:12
**undertaking** [2] - 16:15, 20:20
**undue** [5] - 7:16, 15:10, 27:19, 27:22, 28:9
**UNITED** [1] - 1:1
**United** [1] - 1:15
**Universal** [1] - 11:5
**unless** [1] - 32:1
**unusual** [1] - 38:5
**up** [12] - 4:14, 5:17, 6:21, 12:16, 29:1, 29:9, 31:21, 34:15, 36:10, 36:15, 38:4
**uphill** [1] - 32:15
**utilized** [1] - 30:7

**V**

**various** [1] - 17:18
**versus** [2] - 3:10, 30:10
**view** [6] - 8:1, 19:18, 21:1, 26:13, 36:4, 36:13
**views** [1] - 34:23
**VITTORIA** [1] - 2:6

**W**

**wait** [1] - 9:18
**waited** [4] - 7:20, 7:24, 8:4, 8:14
**waiting** [1] - 3:6
**warranted** [1] - 18:17
**Weber** [1] - 4:7
**WEBER** [1] - 2:6
**week** [3] - 5:15, 37:7, 38:21
**weighs** [1] - 29:20
**WHEREOF** [1] - 40:14
**wholly** [1] - 8:15
**wikis** [1] - 17:16
**Wilmington** [2] - 1:12, 40:16
**Winthrop** [1] - 4:6
**WINTHROP** [1] - 2:5
**wish** [8] - 7:8, 7:16, 10:14, 13:21, 23:18, 23:21, 25:2, 38:21
**wishes** [1] - 38:11
**witness** [1] - 19:15
**WITNESS** [1] - 40:14
**writ** [2] - 31:14, 32:18

**Y**

**year** [4] - 10:8, 13:5, 29:8, 32:21
**years** [10] - 8:11, 8:20, 9:19, 21:6, 21:8, 21:19, 22:3, 22:20, 32:23, 34:1