**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

EBUDDY TECHNOLOGIES B.V.,       )
                                )
              Plaintiff,        )
                                )
       v.                       )       Civil Action No. 20-1501-RGA-CJB
                                )
LINKEDIN CORPORATION,           )
                                )
              Defendant.        )

<u>**REPORT AND RECOMMENDATION**</u>

In this patent action filed by Plaintiff eBuddy Technologies B.V. ("Plaintiff") against

Defendant LinkedIn Corporation ("Defendant"), presently pending before the Court is

Defendant's motion to dismiss, filed pursuant to Federal Rule of Civil Procedure 12(b)(6) (the

"Motion"). (D.I. 17) For the reasons set forth below, the Court recommends that the Motion be

DENIED.

**I.      BACKGROUND**

**A.      Factual Background**

In the operative First Amended Complaint ("FAC"), Plaintiff accuses Defendant's

LinkedIn Application system of infringing at least claims 1 and 7 of United States Patent No.

8,510,395 (the "'395 patent"), at least claim 1 of United States Patent No. 9,584,453 (the "'453

patent"), at least claim 1 of United States Patent No. 8,230,135 (the "'135 patent") and at least

claim 1 of United States Patent No. 8,402,179 (the "'179 patent"). (D.I. 14 at ¶¶ 164-236)

Further relevant facts related to resolution of the Motion will be set out as needed in Section III.

**B.      Procedural Background**

Plaintiff filed its original Complaint on November 6, 2020.  (D.I. 1)  On March 4, 2021,

United States District Judge Maryellen Noreika referred the case to the Court to hear and resolve

all pre-trial matters up to and including expert discovery matters.  (Docket Item, March 4, 2021)[1]

The instant Motion was filed on March 29, 2021, (D.I. 17), and briefing was completed

on May 10, 2021, (D.I. 35).  The Court heard oral argument on the Motion on October 15, 2021.

(*See* Transcript of October 15, 2021 Hearing, or "Tr.")

## II.    LEGAL STANDARD

When presented with a Rule 12(b)(6) motion to dismiss for failure to state a claim, a

court conducts a two-part analysis.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir.

2009).  First, the court separates the factual and legal elements of a claim, accepting all of the

complaint's well-pleaded facts as true, but disregarding any legal conclusions.  *Id.* at 210-11.

Second, the court determines whether the facts alleged in the complaint are sufficient to show

that the plaintiff has a "'plausible claim for relief.'"  *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556

U.S. 662, 679 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  *Iqbal*, 556 U.S. at 678.  In assessing the plausibility of a claim, the court

must "'accept all factual allegations as true, construe the complaint in the light most favorable to

the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff

may be entitled to relief.'"  *Fowler*, 578 F.3d at 210 (quoting *Phillips v. Cnty. of Allegheny*, 515

F.3d 224, 233 (3d Cir. 2008)).

---

[1]    The case was later reassigned to United States District Judge Richard G.
Andrews.  (Docket Item, September 29, 2021)

Here, though, Defendant is using the Motion to assert an affirmative defense—i.e., that the asserted patents are subject matter ineligible under 35 U.S.C. § 101 ("Section 101"). "In that scenario, dismissal is permitted only if the well-pleaded allegations in the [c]omplaint, construed in the light most favorable to the plaintiff, suffice to establish the defense." *M2M Sols. LLC v. Amazon.com, Inc*., Civil Action No. 17-202-LPS-CJB, 2017 WL 6294874, at *2 (D. Del. Dec. 11, 2017) (citing cases).

## III.   DISCUSSION

With its Motion, Defendant argues that the FAC should be dismissed because all four patents-in-suit fail to claim patent-eligible subject matter pursuant to Section 101.  The parties addressed the arguments for eligibility of the '395 patent and the '453 patent together, as the two patents are part of the same patent family and share a common specification.  (D.I. 26 at 3 n.2; Tr. at 6)  Defendant refers to these two patents as the "Contact List Patents" and the Court will also do so here, solely for efficiency's sake.  The parties additionally addressed the arguments for eligibility of the '135 patent and the '179 patent together, as the two are also part of the same patent family and share a common specification.  (*Id.*)  Defendant refers to these two patents as the "Event Notification Patents"; the Court will too, again, simply to save time.[2]

Below, after making reference to the relevant legal standards, the Court will first analyze the Motion as to the Contact List Patents.  Then it will take up the Motion as it relates to the Event Notification Patents.

### A.   Legal Standard

---

[2]      In adopting these shorthand names for the respective sets of patents, the Court is not meaning to make any statement about what the patents are directed to; it is solely doing so for convenience.  (Tr. at 42)

As was noted above, the instant Rule 12(b)(6) Motion is premised on the assertion that the patent claims-in-suit are directed to patent-ineligible subject matter.  The Court has often set out the relevant legal standards for review of such a motion, including in *Genedics, LLC v. Meta Co.*, Civil Action No. 17-1062-CJB, 2018 WL 3991474, at *2-5 (D. Del. Aug. 21, 2018).  It hereby incorporates by reference its discussion in *Genedics* of these relevant legal standards, and it will follow this legal guidance in assessing the Motion.

**B.     The '395 Patent and the '453 Patent (the Contact List Patents)**

The '395 patent is entitled "Contact List Display System and Method" and the '453 patent is entitled "Contact List Aggregation and Display."  ('395 patent at 1; '453 patent at 1)[3] Generally speaking, they relate to systems and methods of contact list aggregation across computer networks.  Defendant asserts that claim 7 of the '395 patent ("claim 7") is representative of the asserted claims of these two patents, (D.I. 18 at 3); claim 7 recites the following:

> **7.**  A method comprising:
>
> joining a high level network;
>
> joining a first low level network associated with a first messaging service provider and a second low level network associated with a second messaging service provider;
>
> obtaining a first contact list associated with the first messaging service provider;
>
> obtaining a second contact list associated with the second messaging service provider;

---

[3]     All four patents-in-suit are attached as exhibits to the FAC.  (D.I. 14, exs. 1-4) Herein, the Court will cite to the patents by their patent number.  Unless otherwise noted, for the Contact List Patents, the Court will cite to the '395 patent's specification, and for the Event Notification Patents, it will cite to the '135 patent's specification.

> maintaining an aggregated contact that comprises the first contact list and the second contact list;
>
> logging into the high level network;
>
> displaying the aggregated contact list.

('395 patent, cols. 13:11-14:4)

In its briefing, when discussing the claims of the Contact List Patents, Plaintiff also referenced claim 7.  (D.I. 26 at 17)  However, Plaintiff also made substantive reference to claims 1 and 4 of the '395 patent ("claim 1" and "claim 4").  (*Id.* at 15-16 & nn.7-9; *see also* Tr. at 51)[4] As a result, below the Court will assess the eligibility of claims 1, 4 and 7 (together, the "representative claims").  *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). Claims 1 and 4, for their part, recite:

> **1.**   A system comprising:
>
> a network login engine;
>
> a network contacts database embodied in one or more non-transitory computer readable mediums;
>
> a web server coupled to the networks contacts database;
>
> a contact aggregation engine coupled to the network login engine and the network contacts database;
>
> wherein, in operation, the contact aggregation engine:
>
> controls the network login engine to login or facilitate login to a first network associated with a first messaging service provider and a second network associated with a second messaging service provider,

---

[4]    In footnotes in its answering brief, Plaintiff additionally made mention of claims 1 and 4 of the '453 patent, though it did so in a manner suggesting that the arguments for eligibility as to those claims were no different than they were as to claims 1 and 4 of the '395 patent.  (D.I. 26 at 16 nn.7-9)  Therefore, the Court will not separately address claims 1 and 4 of the '453 patent herein.

updates the networks contacts database with contact information obtained from the first messaging service provider and the second messaging service provider,

maintains an aggregated contact list that comprises a first contact list associated with the contact information from the first messaging service provider and a second contact list associated with the contact information from the second messaging service provider,

stores the aggregated contact list in a non-transitory computer readable medium at the web server, and

provides the aggregated contact list to a display device. . . .

**4.** The system of claim **1**, further comprising a user profile database, embodied in a non-transitory computer readable medium and coupled to the network login engine, where, in operation, the user profile database includes a user-specific information that the network login engine uses to login or facilitate login to the one or more networks.

('395 patent, cols. 12:36-58, 13:1-6).

### 1. *Alice*'s Step One

The Court first assesses *Alice*'s step one, which asks whether the claims at issue are "directed to" an abstract idea. What is an abstract idea? It can be (but is not necessarily limited to) a "preexisting, fundamental truth" that "exis[ts] in principle apart from any human action[,]" or a "method of organizing human activity" (such as a "longstanding commercial practice"). *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 220 (2014) (internal quotation marks and citations omitted); *see also DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256-57 (Fed. Cir. 2014). A claim to an abstract idea has been described by the United States Court of Appeals for the Federal Circuit as one directed to a "'disembodied' concept . . . a basic building block of human ingenuity, untethered from any real-world application." *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1286 (Fed. Cir. 2013) (Lourie, J., concurring) (citation

omitted).  Beyond that, the "abstract ideas" category has not been crisply defined, *see Alice*, 573 U.S. at 221 (declining to "labor to delimit the precise contours of the 'abstract ideas' category"), and the Supreme Court of the United States and the Federal Circuit have found it sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases, *see Enfish LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016).

Defendant argues that the representative claims of the Contact List Patents are directed to the abstract idea of "aggregating contact lists[.]"  (D.I. 18 at 3, 7)  Is "aggregating contact lists" an abstract idea?  It seems undisputed that it is.  In that regard, Defendant notes that "aggregating contact lists" is "an age-old human endeavor" that is practiced, for example, when:  (1) different departments at an institution maintain their own separate contact lists in different forms; and then (2) an administrator tasked with creating an institution-wide contact list "reformat[s]" those separate lists by "creating a common format" for the institution-wide list.  (*Id.* at 9; Tr. at 9-10); *cf. Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1385 (Fed. Cir. 2018) (concluding that a concept amounted to an abstract idea where "[h]umans have performed this fundamental activity . . . for hundreds of years").  And Plaintiff did not contest that "aggregating contact lists" is an abstract idea.  (Tr. at 45)

Plaintiff does, however, argue that the claims are not actually "directed to" this abstract idea.[5]  (*Id.*; *see also* Plaintiff's Hearing Presentation, Slide 11)  Instead, it asserts that Defendant "overgeneralizes the claims" at too high a level of abstraction.  (D.I. 26 at 10)

---

[5]        In *Alice*'s first step, the "'directed to' inquiry applies a stage-one filter to claims, considered in light of the specification, based on whether 'their *character as a whole*'" or their "focus" is directed to excluded subject matter.  *Enfish*, 822 F.3d at 1335-36 (quoting *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)) (emphasis added).

So *are* the representative claims actually "directed to" the concept of "aggregating contact lists"?  They do seem to be focused on that broad idea (at least as applied to the instant messaging service context).[6]  Those claims all appear to be written in a way that highlights the importance of such aggregation, and they all seem to naturally build toward the aggregation step. Put differently, the wording of independent claims 1 and 7 seem to be largely about:  (1) obtaining a first contact list associated with a first instant messaging provider; (2) obtaining a second contact list associated with a second instant messaging provider; (3) "maintain[ing]" an aggregated contact list that comprises both the first and second contact lists (and, relatedly, displaying that aggregated contact list).  (Tr. at 20)  Moreover, the claims do not seem to be directed to any *more specific way* of aggregating the contacts at issue, as they do not describe the details of the aggregation process at all.

The Court next consults the common specification.[7]  In that regard, it is worth noting that these patents do not provide a lot of explanation about the particular problem that they are meant

---

[6]      The Court acknowledges that, given the Contact List Patents' focus on instant messaging services in particular, it seems somewhat facile to say that the claims are directed simply to the concept of "aggregating contact lists" without also giving some nod to the instant messaging service context.  But even if the concept were framed as "aggregating contact lists of instant messaging services," that would still amount to an abstract idea.  And the remainder of the analysis below would not meaningfully change.  (Tr. at 13-15)

[7]      In order to determine what a patent claim is really "directed to" at step one, the Federal Circuit has encouraged district courts to consider the content of the patent's specification.  *Cf. Enfish*, 822 F.3d at 1337 (indicating that it is appropriate to look to a patent's specification to determine whether a claim of the patent is "directed to" a particular concept, and that if a claim contains a particular element that is described by the patent's specification as what the "present invention comprises[,]" this suggests that the claim may be directed to that element or concept) (internal quotation marks and citation omitted); *Internet Patents Corp.*, 790 F.3d at 1348 (same, and noting that if a concept is described in the patent as being "the innovation over the prior art" or the "essential, most important aspect" of the patented invention, that suggests that the claim is directed to that concept) (internal quotation marks and citation omitted).

to solve.  In the "Background" section of the specification, the patents do explain that in the relevant time period, there were many popular instant messaging services on the public Internet, and that most of those services included contact lists—i.e., information about whether people on one's list of contacts were currently online and available to chat.  ('395 patent, col. 1:25-45) Then, in the "Summary" section, the specification explains that exemplary embodiments of the inventions relate to a "technique *for contact list aggregation* across a plurality of different networks[, which] involves logging into low level networks through a high level network[.]" (*Id*., col. 1:61-63 (emphasis added))[8]  The specification further explains that:

> In operation, the system logs into one or more of the low level networks (or facilitates login for a user).  The network contacts database may include some information about contacts associated with the networks from, by way of example but not limitation, previous logins or data explicitly entered by a user.  To the extent that the data in the network contacts database is not current, the contact aggregation engine updates the networks contacts database contact information, then provides an aggregated contact list including the contact information to a display device.  A method according to the technique may include logging into a high level network and displaying contacts from the one or more low level networks in an aggregated contact list.  The method may further involve logging into the one or more low level networks.

(*Id*., cols. 1:67-2:15)  In reading this, it could be understood that the patent's focus is on the referenced "technique"—a technique that allows for "contact list aggregation across a plurality of networks."  In sum, this all sounds like the patent is focused on the abstract idea at issue.[9]

---

[8]       The patents' Abstracts read very similarly, and they too acknowledge that the patents are about a "technique for contact list aggregation across networks [that] involves logging into low level networks through a high level network."  ('395 patent at 1; '453 patent at 1)

[9]       Additionally, the titles of the patents ("Contact List Aggregation and Display" and "Contact List Display System and Method") do not describe a more narrow focus than what Defendant posits.  Instead, they suggest that aggregating contact lists (and displaying them,

Plaintiff argues to the contrary that "[w]hen viewed in their entirety, and in light of the specification, the claims are directed to specific, substantial improvements to messaging systems, including their effectiveness, functionality[] and utility."  (D.I. 26 at 10)   So what are the purported "substantial improvements to messaging systems" that Plaintiff is saying these claims are directed to?  In its briefing, Plaintiff points to three such areas of improvement, noting that:

    (1) "aggregation of contacts from a plurality of messaging systems was unavailable and/or was cumbersome" (i.e., because in order to create an aggregated contact list prior to the invention, a person would at best only have been able to manually copy or transfer contact files from one messaging service to another) and "prone to potential errors" (i.e., because prior art efforts that relied on manually inputting contacts resulted in various input errors);

    (2) prior art messaging systems "lacked the ability to maintain a[n] . . . aggregated contact list[] across or between multiple user devices and [were] subject to compatibility problems" (i.e., because contact lists were typically maintained in a proprietary format by each messaging service, such that a contact list from one service was not usable or accessible by another messaging service); and

    (3) the claims "improve the way messaging systems operate and handle data, including by allowing . . . the aggregated contact list to be consistently updated in real time across the user's devices, including from a network contacts database."

(D.I. 26 at 12-13 (section of Plaintiff's Answering Brief titled "The '395 and '453 Claims are Directed to Innovative Computer- and Network-Based Systems and Methods") (citing D.I. 14 at ¶¶ 38, 56))[10]  Yet Plaintiff's arguments here do not help it escape the patents' step one problem.

_____

which is probably inherent in the concept of aggregation), (Tr. at 19), is what the patents are about.

    [10]    In its answering brief, at the very end of the step one section regarding the Contact List Patents, Plaintiff made reference to claim 1's inclusion of a "contact aggregation engine[,]" a "network login engine[,]" a "web server/server" and a "networks contact database." (D.I. 26 at 14-15 (internal quotation marks omitted))  But Plaintiff did not explain therein what

Plaintiff's first "directed to" argument—that the claims are purportedly about taking a manual process for aggregating contact lists and making that process go faster or more efficiently via computerization—is not helpful to it.  (D.I. 14 at ¶¶ 35, 51; *id.*, ex. 5 at ¶ 44)  Even assuming that the claims do require this type of automation, (Tr. at 83), the Federal Circuit has explained that where a patent's claims simply seek to "automate [a manual] methodolog[y] to conserve human resources and minimize errors[,]" this demonstrates that the patent at issue is a "quintessential 'do it on a computer' patent[.]"  *Univ. of Fla. Research Found., Inc. v. General Elec. Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019).  In such a scenario, the insubstantial nature of the computerization element in the claims only underscores that the claims are really directed to the well-known, longstanding abstract idea itself (here, "aggregating contact lists").  *Id.*; *see also Orcinus Holdings, LLC v. Synchronoss Techs., Inc.*, 379 F. Supp. 3d 857, 878 (N.D. Cal. 2019) ("So long as the underlying process claimed in the patent can be performed manually by a human, that is enough to find that a patent is directed toward an abstract idea."); (Tr. at 63 (Plaintiff's counsel acknowledging that this aspect of the claimed invention is akin to a "do it on a computer" patent)).

Plaintiff's second "directed to" argument fares no better.  As it must at this stage, the Court assumes that what Plaintiff alleges in its FAC is true:  that prior art efforts typically ran into problems with aggregating contact lists across multiple user devices, since such lists were often maintained in a proprietary format by their associated messaging service and could not easily be consolidated for that reason.  But then the question becomes:  Do the representative claims here *require* that the first and second contact lists at issue have formats that are

---

these terms had to do with what claim 1 is directed to, and so the Court will not consider the argument further here.

*incompatible* with each other?  Plaintiff has not explained (and the Court cannot see) why they

necessarily do.[11]  On their face, the claims simply appear to require that the two contact lists

come from two different "messaging service provider[s]."  ('395 patent, cols. 12:49-55, 13:14-

20)  It would seem then that those respective contact lists could either be in compatible formats

or incompatible formats.  (Tr. at 79-82 (Defendant's counsel noting that the claims do not

reference the fact that the messaging service providers must use "different protocols"); Tr. at 90-

91 (Plaintiff's counsel seeming to acknowledge that the claims do not require that the respective

contact lists be in incompatible formats)); *see also ChargePoint, Inc. v. SemaConnect, Inc.*, 920

F.3d 759, 769 (Fed. Cir. 2019) ("Ultimately, [t]he § 101 inquiry must focus on the language of

the Asserted Claims themselves[.]") (internal quotation marks and citation omitted).

---

[11]     In its answering brief, Plaintiff cursorily stated that the "parties clearly dispute claim construction and scope" of the claims; it included as an exhibit to its brief a list of claim terms that purportedly "require construction[.]"  (D.I. 26 at 9 & ex. 2)  Nowhere in its briefing or in the attached exhibit did Plaintiff propose a construction for any of these terms, nor did Plaintiff explain how such a construction would be at all relevant to the Section 101 inquiry. (*Id.*)  In general, this is not a good approach.  In defending against a Section 101 motion at the pleading stage, a patentee needs to make it clear in some way *how* claim construction would make a difference in the Court's eligibility analysis.  *See Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 991 n.1 (Fed. Cir. 2014) (holding that a patent claim was subject matter ineligible under Section 101 where the district court did not engage in claim construction, and where the plaintiff "d[id] not explain which terms require construction or how the analysis would change"); *Uniloc USA, Inc. v. E-MDS, Inc.*, CASE NO. 6:14-cv-00625-RWS, 2015 WL 10791906, at *3 (E.D. Tex. Aug. 19, 2015); *Tenaha Licensing LLC v. Tigerconnect, Inc.*, Civil Action No. 19-1400-LPS-SRF, 2020 WL 30426, at *8 n.5 (D. Del. Jan. 2, 2020); *see also* (D.I. 35 at 3; Tr. at 24).  Plaintiff certainly did not do that here regarding the terms "first contact list" and "second contact list" as they relate to the issue of "compatibility."

        With that said, and as will be discussed further below, there is one instance (regarding the meaning of "high level network" in claim 7) where the Plaintiff *did* sufficiently explain its claim construction position, such that the Court understood how that position might impact the Section 101 calculus.

For similar reasons, Plaintiff's third "directed to" argument also fails.  There is no requirement in the claims that the aggregated contact must "be consistently updated in real time" across the user's devices.

For the foregoing reasons, Defendant has demonstrated that the representative claims are directed to the abstract idea of "aggregating contact lists."

## 2.    *Alice*'s Step Two

If a claim *is* directed to an abstract idea, then step two of the *Alice* framework requires a court to assess "[w]hat else is there in the claims"; a court does so by considering "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application."  *Alice*, 573 U.S. at 217 (internal quotation marks and citation omitted).  The Supreme Court describes step two as a search for an "inventive concept"—"*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself."  *Id.* at 217-18 (internal quotation marks and citation omitted); *see also Berkheimer*, 881 F.3d at 1367.  The purpose of the "inventive concept" requirement is to "ensure that the claim is more than a drafting effort designed to monopolize the abstract idea."  *Alice*, 573 U.S. at 221 (internal quotation marks, citation, and brackets omitted).[12]

---

[12]      Neither "limiting the use of an abstract idea to a particular technological environment[,]" nor simply stating an abstract idea and adding the words "apply it with a computer[,]" will transform an abstract idea into a patent-eligible invention.  *Alice*, 573 U.S. at 223 (internal quotation marks and citations omitted).  And the additional elements within the claim, apart from the abstract idea itself, must involve more than "'well-understood, routine, conventional activit[ies]' previously known to the industry."  *Id.* at 225 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 73 (2012)); *see also Mayo*, 566 U.S. at 82 ("[S]imply appending conventional steps, specified at a high level of generality, to . . . abstract ideas cannot make those . . . ideas patentable.").

In exploring this step two question, the Court must be mindful that although a determination of patent eligibility under Section 101 is ultimately an issue of law, the determination may involve "disputes over underlying facts." *Berkheimer*, 881 F.3d at 1368. One such factual issue is "[w]hether [a claim element or claimed combination] is well-understood, routine, and conventional to a skilled artisan at the time of the patent[.]" *Id.* at 1369. Alleged improvements to the prior art described in a patent's specification and "captured in the claims" can "create a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities"—thus precluding either summary judgment, *id.*, or dismissal at the Rule 12 stage, *see BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).  Content that creates this type of factual dispute might also be found in a plaintiff's complaint, so long as the complaint's allegations in this regard are not "wholly divorced from the claims or the specification." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019).  Put differently, "[a]s long as what makes the claims inventive is recited by the claims, the specification need not expressly list all of the reasons *why* this claimed structure is unconventional." *Id.* (emphasis added).

In explaining why the patents' claims include an inventive concept, Plaintiff focuses on a few different aspects of the representative claims at issue.  (D.I. 26 at 15-18)  Although these aspects may invoke elements that were known in the art, Plaintiff's argument is that, taken together, the claims involve the non-conventional and non-generic arrangement of known, conventional pieces.  (D.I. 26 at 7, 9 (citing *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016))

For example, Plaintiff points to the fact that in claim 1, the aggregated contact list is stored in a "network contacts database" that is coupled to a "non-transitory computer readable

medium at [a] web server" and that in claim 7, that list is stored and displayed at the "high level network[.]"  ('395 patent, col. 12:40-57; *id*., cols. 13:12-14:4)  In other words, the aggregated contact lists are stored in a separate location from local applications that house or provide access to the individual (i.e., first and second) contact lists.  In the FAC (which in turn often cites to an attached declaration of Plaintiff's expert, Dr. Rajeev Surati), Plaintiff further alleges that storing such aggregated contact lists in "a single network-based application and/or web service" amounted to "unconventional and inventive technological solutions to [] technical problems that existed at the time[.]"  (D.I. 14 at ¶ 77)[13]  By taking this approach, the FAC alleges that the Contact List Patents "reduce[d] the use of the user's computing device and resources thereon, including the use of the user's network traffic – which [] was highly limited at the time of the patented inventions, especially on mobile networks – because the user is not required to run multiple applications, including multiple local applications, or access multiple web services simultaneously."  (*Id*.; *see also id*. at ¶¶ 42, 46, 49, 88; D.I. 26 at 17; Plaintiff's Hearing Presentation, Slides 13-14, 16-17; Tr. at 53-54, 56-57 (Plaintiff's counsel arguing that "being able to use just a single connection to obtain all of this aggregated information from the high[-]level network was a technological solution to the problem that faced devices at that time which was there may not be bandwidth sufficient to maintain connection to a plurality of different networks at once"))  This aspect of the invention allegedly also "reduce[d] the workload of clients and the servers of each individual instant messaging service by providing for various tasks to be run and take place on the centralized intermediary server."  (D.I. 14 at ¶ 89; *see also* D.I. 26 at 17; Plaintiff's Hearing Presentation, Slide 15)

---

[13]      (*See also* D.I. 26 at 3 (Plaintiff noting that the "unconventional" approach as to these patents was going "against the conventional method of locally storing the information" and instead "stor[ing the contact lists] on a server for retrieval by the user"))

Plaintiff also points to the fact that in claim 4, the system recited therein includes a "user profile database" that is "coupled to the network login engine" and "includes [] user-specific information that the network login engine uses to login or facilitate login to the one or more [lower-level] networks." ('395 patent, col. 13:1-6)  In the FAC, the Plaintiff explains that the use of this "remote user profile database" was "unconventional and inventive" because it "permitted user-specific information . . . to be stored at the network or server to allow contact information to be retrieved and an up-to-date aggregate conflict list [] be maintained, without requiring the user to enter such information each time they use the system."  (D.I. 14 at ¶ 55; *see also* Plaintiff's Hearing Presentation, Slide 19)  The FAC notes that in "2006, the convention was to not store such information at the server for the server to use upon a single login, [] due to security limitations and privacy concerns[,]" and instead to "localize[] storage of such information[.]" (D.I. 14 at ¶ 55)

It appears to the Court that these purportedly unconventional aspects of the claims could make a difference in the eligibility analysis.  For example, the eligibility analysis is driven in significant part by "the concern . . . of pre-emption[,]" *Alice*, 573 U.S. at 216, which in turn compels a court to assess whether the claims at issue "attempt to preempt every application [or a great many applications]" of the abstract idea at issue, *DDR Holdings, LLC*, 773 F.3d at 1259. Here, the presence of the above-referenced limitations in claims 1, 4 and 7 could demonstrate that those claims wall off only a narrow subset of all inventions that "aggregat[e] contact lists" of instant messaging services.  Relatedly, further expert testimony about this subject (i.e., about the extent to which those claim limitations would or would not preempt the relevant field) appears critical to a final assessment of eligibility.  And so, this all augers in favor of denial of the Motion.

16

During oral argument, when asked why such an outcome would not be the correct one, Defendant's counsel had two responses.  Neither were persuasive.

First, Defendant's counsel argued that, at least as to claim 7, the claim does not require that the "high level network" on which the aggregated contacts lists are stored must be a non-local storage location (like a remote server).  (Tr. at 85 ("There is no distinction [in the claim] about whether any of these networks are stored locally or on a server."))  But whether that is so would likely turn on what is the appropriate claim construction for "high level network."  Plaintiff argues that when the term is construed, it will require that the aggregated contact lists be stored non-locally.  (Tr. at 92)  Based on the current record, the Court cannot say that Plaintiff's argument is implausible.  Thus, the Court will adopt Plaintiff's proposed construction (requiring non-local storage of the aggregated contact list on the "high level network") solely for purposes of resolving the Motion.  *See Content Extraction & Transmission LLC v. Wells Fargo Bank Nat. Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (reviewing an eligibility decision at the pleading stage and adopting a construction most favorable to the patentee (even one where there was some question as to the construction's merit), before going on to assess whether, even in light of that construction, the claims could survive an *Alice* analysis).[14]

Second, Defendant's counsel argued that even "if the Court were to assume the high level network is stored on a server and the low level networks are stored locally . . . there [is] no discussion of [the benefits of storage of the contact lists on a web server or a non-local high-level network] in the patents[.]"  (Tr. at 85)  Counsel further asserted that such a process "is still not unconventional" because "using . . . remote servers to do something that was otherwise

---

[14]     If the meaning of the term is still disputed by then, the Court will take it up at the *Markman* hearing in this case.

performed locally" is "not unconventional[.]"  (*Id*. at 85-86)  Defendant is correct that the patents do not explicitly tout the benefits of non-local storage for the aggregated contact lists.  Yet that is of no moment here, since Plaintiff's FAC does so in some detail.  In the FAC (and in an attached declaration from Dr. Surati), Plaintiff includes facts indicating:  (1) the non-conventional nature of this method of storing aggregated contact lists (as well as of the use of a user profile database) and (2) the related benefits.  The Court must presume the truth of those facts, and so this argument of Defendant's too must fail.  *Cellspin*, 927 F.3d at 1317.

Therefore, accepting all of Plaintiff's factual allegations as true, and construing the FAC in the light most favorable to Plaintiff, the Court cannot say that the Motion is well taken as to the Contact List Patents.  It thus recommends that the Motion be denied at step two as to those patents.

### C.     The '135 Patent and the '179 Patent (the Event Notification Patents)

The '135 patent and the '179 patent are both entitled "Event Notification System and Method."  ('135 patent at 1; '179 patent at 1)  Generally speaking, they relate to systems and methods that modify a title associated with a process, so as to include information about an event in that title.  Defendant asserts that claim 1 of the 135 patent ("claim 1") is representative, (D.I. 18 at 5); claim 1 recites the following:

> **1**.  A method comprising:
>
> receiving information of an event that calls for user notification;
>
> generating an event notification for the event;
>
> associating the event notification with at least one of the plurality of character strings in a title array that includes a plurality of character strings for provisioning for display in a titlebar or taskbar of a display device;

> providing the at least one of the plurality of character strings in the
> title array to a process executed by a processor;
>
> providing an alternative title based on the at least one of the
> plurality of character strings to the process;
>
> using the alternative title as a title in association with the process.

('135 patent, col. 12:42-56)

In light of the Court's decision below (recommending denial of the Motion), the Court need not focus on any claim other than claim 1. Put differently, in determining that the Court cannot now find claim 1 patent ineligible as a matter of law, the Court is necessarily also determining that it cannot find the remaining claims of the Event Notification Patents ineligible at the pleading stage.[15]

The Court's analysis here need not progress past *Alice*'s first step. With regard to this step, Defendant repeatedly asserts that claim 1 is directed to the concept of "event notification." (D.I. 18 at 8 (emphasis omitted); *see also* D.I. 35 at 1) Plaintiff does not dispute that "event notification" is an abstract idea; instead, Plaintiff argues that the claims are not "directed to" that idea, and instead are directed to "substantial improvements in event notification systems[.]"

---

[15]     In the parties' briefing and at oral argument, they had a dispute about whether the Court could assess eligibility as to certain claims of the Event Notification Patents that Plaintiff had not yet affirmatively asserted in the case (but as to which Plaintiff has reserved its right to assert at some later juncture in the case). (D.I. 26 at 1; D.I. 35 at 4-5; D.I. 65) In light of the Court's decision here, the Court need not address this issue.

Similarly, Plaintiff argued that claim 1 was not representative of all of the claims of the Event Notification Patents. More specifically, Plaintiff argued that claim 11 of both patents (which purportedly contain means-plus-function elements) included additional content that must be separately addressed. (D.I. 26 at 10) Again, because the Court herein concludes that the Motion is not well-taken as to claim 1, it need not address the arguments as to claim 11 of both patents.

(D.I. 26 at 18; *see also* Plaintiff's Hearing Presentation, Slide 23 ("[Defendant] overgeneralizes the claims, contenting they are merely directed to 'event notification.'"))

So what is claim 1 directed to?  The patents provide real guidance here.  The specification explains that for users of instant messaging services in the relevant time period, particularly if they were at work, the users "may not want to play a noise or have a popup window show up every time a message is received."  ('135 patent, col. 5:31-32)  Similarly, "a user who gets lots of messages may not want to hear the noise or see the popup windows because of the great frequency with which it occurs."  (*Id.*, col. 5:33-35)  The specification then explains that "[a]dvantageously, notification *can take place in a titlebar*, which is great for devices that have inferior notification functionality, and great for users who want a subtle notification."  (*Id.*, col. 5:35-38 (emphasis added))  The patents also note that some alternative web clients have "less control for alerts like flashing windows etc. from browsers" and that in such cases, "it may be particularly advantageous for a server to be able to provide a user with alerts for new messages or events *using the title bar, task bar, or other display area of a browser*."  (*Id.*, col. 5:56-62 (emphasis added))  Relatedly, the specification explains that the invention is meant to cover a "technique for user notification [that] involves *modifying a title* associated with a process to include information about an event that calls for user notification."  (*Id.*, col. 1:62-64 (emphasis added))

This focus—on providing a notification about an event *in the title bar/task bar of a computerized display*—is also emphasized in claim 1.  Claim 1 requires that an "event notification" relating to an event is generated, and that the event notification is associated with "at least one of the plurality of character strings in the title array" for "display *in a titlebar or taskbar of a display device*[.]"  (*Id.*, col. 12:43-52 (emphasis added))  It also states that "at least

one of the plurality of character strings" and "an alternative title based on at least one of the

plurality of character strings" are provided to a process (e.g., an instant messaging application or

browser), and that alternative title is used "as a title in association with the process." (*Id.*, col.

12:50-55)

      To set out the above is to demonstrate why Defendant's Motion should fail at step one.

The Supreme Court and the Federal Circuit have clearly warned that district courts must be

careful not to oversimplify the claims or the claimed invention at this step, since at some level,

all inventions are based on or touch on abstract ideas. *See Alice*, 573 U.S. at 217; *In re TLI*

*Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016). Yet this is what Defendant

has done here by asserting that the claim is directed to "event notification."[16] As the above-

---

[16]    In its opening brief, in six different instances, Defendant asserted that these claims
were directed to the concept of "event notification"—full stop. (D.I. 18 at i, 7, 8, 9, 11)
Defendant even underlined the words "event notification" at times, in order to drive home this
point. (*Id.* at 8) In its reply brief, Defendant again repeatedly referred to the abstract idea at
issue as "event notification[.]" (D.I. 35 at i, 12) That said, at one other point it its reply brief,
Defendant suggested that the abstract idea at issue might be something a bit more specific—i.e.,
when it wrote that its "formulation of the abstract idea" was "providing an event notification in a
title of a display, as an alternative to a non-event-based title (*i.e.*, displaying an alternative title or
text for event notification.)." (*Id.* at 12) Yet these two articulations of the purported abstract
idea are not the same thing. The former ("event notification") is clearly much broader than the
latter. In other words, in its opening brief, when it came time to directly assert what these claims
are purportedly directed to, Defendant made a conscious choice to frame that concept as "event
notification"—a concept that *does* sound very broad and abstract. It no doubt did so for a reason.
Having done so, it cannot make new arguments about the "directed to" step via its reply brief.
*See In re Horsehead Holding Corp. Secs. Litig.*, Civil Action No. 16-292-LPS-CJB, 2018 WL
4838234, at *17 (D. Del. Oct. 4, 2018) (citing cases).

    During oral argument, when Defendant's counsel again tried to frame the abstract idea as
something other than "event notification," the Court questioned counsel about the issue. (Tr. at
26-28) Defendant's counsel then confirmed that "event notification" or "notification of an
event" *was* the abstract concept that Defendant was arguing the claims were directed to. (*Id.* at
28) But counsel then went on to suggest that providing notification of an event in a titlebar or
taskbar in a computer-related display is nevertheless captured by the concept of "event
notification." (Tr. at 28-30) Of course that is true, but it underscores why Defendant's step one
argument is faulty. As noted above, the Court must not oversimplify a patent's claims in the

referenced portions of the patents demonstrate, what claim 1 is really directed to is not simply "event notification" writ large, but to a more particular way of notifying a computer user about an event—i.e., by placing that notification in a display title in a titlebar or a taskbar.  (D.I. 26 at 19 ("[T]he claims are not directed merely to a method of providing generic or conventional event notification to a user."))  *Where the event notification is placed* is really what the patent is all about—and it is the thing that is said to avoid some of the problems with prior art solutions (such as annoying noises or pop-up windows) that the patentee was trying to overcome.  And yet this key concept is not incorporated in Defendant's articulation of the abstract idea at all.

Because Defendant has not demonstrated that claim 1 is directed to the asserted abstract idea at issue, its Motion as to the Event Notification Patents fails at step one.

## IV.    CONCLUSION

For the foregoing reasons, the Court recommends that Defendant's Motion be DENIED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2).  The failure of a party to object to legal conclusions may result in the

---

Section 101 analysis.  And the concept of "event notification" is so broad that it could encapsulate myriad ways of alerting another to an event—including doing so verbally in a conversation, or via a handwritten note, or by taking out a newspaper advertisement, or by putting up a sign on a barn, or by placing an advertisement in Times Square—that are just fundamentally different concepts than what these particular patent claims are about (i.e., event notification occurring via alternation of a title in a taskbar or titlebar in a computer application). Defendant's position here is akin to saying that a patent claim describing the sending of a particular type of encrypted e-mail is a claim that is directed to the abstract idea of "communicating."  It is both literally correct as a matter of wordplay and yet, from a legal/Section 101 perspective, demonstrably incorrect.

In short, Defendant tried to go very broad here in articulating the abstract idea at issue.  It overshot.  And now it must live with the consequences of that decision.

loss of the right to *de novo* review in the district court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated:  November 29, 2021

*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE