# EXHIBIT A



## Arch Chemicals, Inc. v. Sherwin-Williams Company et al D.Del. 1:18-cv-02037-LPS

Summary    Docket Entries



Showing **1** docket entry; with General: Order re: Stay document tag .

Search documents and docket entry text

❓ Search Syntax Guide

▸ Filed On

▾ Document Tags

⊕ INCLUDE:

  General: Order re: Stay 1                                                ⊗

General

⊕ ⊖ Order 1

**Reset**                              Apply

**Order by**

earliest docket entry                                                      ⌄

**#48: Filed: 2019-11-05**

Order re: Stay | Order

⚲ Stay Pending PTAB ✔ ◀

ORAL ORDER: Having reviewed the parties' letter briefs and supporting materials relating to Defendants' motion for a stay pending resolution of two petitions for IPR (D.I. 33, 34, 36, 37), IT IS HEREBY ORDERED that Defendants' motion (D.I. 33) is GRANTED and the teleconference scheduled to address the motion is CANCELLED. While every motion for a stay must be evaluated based on the particular facts and circumstances with and in which it arises, and the Court must carefully exercise its discretion in each case, as a general matter the arguments for a stay pending institution and/or completion of an IPR have been strengthened by recent changes in the law: namely, institution must be on all or none of the claims on which IPR is sought (see SAS Inst., Inc. v. Iancu, 138 S. Ct. 1348, 1354-55 (2018)) and claim construction undertaken by the Patent Trial and Appeal Board ("PTAB") is now conducted according to the same legal standards this Court must apply (see 37 C.F.R. § 42.100(b)). In the instant case, the Court is persuaded that a stay is likely to simplify the issues, for reasons including that the petitions are directed to every claim asserted by Plaintiff and the Court will have the benefit of additional intrinsic evidence and the PTAB's view on claim construction (if review is instituted). More importantly, this case, although nearly a year old, is truly at a "nascent" stage (D.I. 34 at 2-3), as no discovery requests have been served; while a schedule has been entered, trial is scheduled to occur more than 20 months from now (June 14, 2021). There appears to be little likelihood of significant prejudice or tactical disadvantage to Plaintiff from a stay, as the parties are not direct competitors. Finally, an institution decision is due by February 2020, so if the PTAB denies institution on both petitions the stay will be of short duration. ORDERED by Judge Leonard P. Stark on 11/5/19. (ntl) (Entered: 11/05/2019)

**Terminated on 2020-02-11 after 1 year, 52 days**

# EXHIBIT B

| From: | Weber, Brock S. |
| --- | --- |
| To: | Steve Schlather |
| Cc: | Brian Farnan; Michael J. Farnan; John Edmonds; Madeline Lofton; Kao, Christopher; Smith, Rodger; Blumenfeld, Jack |
| Subject: | RE: eBuddy v. LinkedIn |
| Date: | Wednesday, January 26, 2022 6:24:04 PM |

Steve,

For ease of reference, I will address the two e-mails you sent yesterday evening in a consolidated response.

### Meet and Confer on LinkedIn's Motion to Stay

As an initial matter, neither of your two e-mails responded to our request made earlier in the day for your position on LinkedIn's planned motion to stay pending IPR. We take this to mean that the motion is opposed, and that eBuddy will not conduct a telephonic meet and confer with lead and local counsel. If that remains the case by this Friday, we will note as much in our motion and file it. Otherwise, please let us know when lead and local counsel can meet and confer on LinkedIn's motion to stay this week.

### LinkedIn's Production of Financial Information

The employee who has been putting together the financial information that we had previously agreed to produce unfortunately contracted COVID and has been out of the office as a result. Nevertheless, we expect to be able to be able to produce this information in the next couple of weeks. Sorry for the delay on this.

### LinkedIn's ESI Production and Depositions

As you will recall, when we estimated on December 10, 2021 that we could complete our production of ESI by the end of January, we had expected eBuddy to be reasonable and expeditious in agreeing to the search terms to be applied to narrow the more than 3,000,000 files that were collected for this effort (essentially all e-mails and electronic documents in the possession of the relevant custodians). In support of this, we proposed our search term list to you on December 13, 2021. You did not provide your proposed modifications and additions to this list (the required next step under the ESI Order) until December 20. We objected to the excessive number of proposed additions (per the ESI Order) the next day, on December 21. Subsequently, you did not respond with eBuddy's position regarding its excessive additions until December 29, during the holidays. In the interest of compromise, we agreed to test your original set of proposed additions on January 5, 2022, and then provided you with resulting hit counts on January 13, explaining that the hit counts were substantially excessive under the caps set in the ESI order (for one custodian, these additional search terms resulted in more than 300,000 hits). We therefore asked you to narrow your terms, as required under the ESI Order, and to work with us in this regard. You still have not responded to this January 13 email.

Because search terms must be established before the ESI review and production can continue, your delays and failure to respond have made it impossible for us to complete our ESI production for the four ESI custodians by the end of January. The sooner you narrow your additional search terms, or simply agree to proceed with the search terms we proposed originally on December 13, the sooner we can conduct our review of the documents and produce them to you. Given that we cannot even start this process right now, there is no way

that we can produce any of this ESI to you in time for depositions in February.

As a result, we suggest once again that we finish the ESI process first, and then schedule depositions once that is completed. Given that fact discovery does not close until July 2022, there is more than enough time for both sides to complete document and deposition discovery before then. Indeed, it makes no sense to conduct any depositions now while the parties are still briefing claim construction. There are four months after the currently-scheduled Markman hearing on March 16, 2022 to complete fact depositions.

If you nevertheless insist on proceeding with depositions in February notwithstanding the fact that you will not have any of the witnesses' documents, then we request that eBuddy enter into a stipulation that the witnesses are only going to sit for depositions once, and that you will not seek to depose them again later after their documents are produced. Please let us know your position on this.

### eBuddy's ESI Production

Discovery is not a one-way street. Despite all of the detail we have provided to you regarding the status of LinkedIn's ESI discovery, eBuddy has correspondingly failed to provide any updates at all on its ESI process.

LinkedIn sent its ESI requests to eBuddy in early November. You did not provide your proposed search term list for eBuddy's ESI until December 29, 2021, again during the holidays. We provided our proposed additions to your list on January 6, 2022. You still have not responded to this January 6 email, to indicate whether you will or have applied our terms, as required under the ESI Order, or to provide an estimate of when eBuddy will complete its ESI production.

Demanding that LinkedIn undertake all efforts to review and produce ESI from a collection of millions of records over the holidays and to produce our witnesses for deposition on a compressed schedule five months before the close of discovery—at the same time that eBuddy is dragging its feet in all respects with respect to its own discovery—is unreasonable. We again request that eBuddy proceed in a cooperative manner and in good faith to complete fact discovery in this case.

Best,

Brock

**Brock S. Weber** | Counsel
Pillsbury Winthrop Shaw Pittman LLP
Four Embarcadero Center, 22nd Floor | San Francisco, CA 94111-5998
t +1.415.983.1059
brock.weber@pillsburylaw.com | website bio

**From:** Steve Schlather <sschlather@ip-lit.com>
**Sent:** Tuesday, January 25, 2022 7:17 PM
**To:** Kao, Christopher <christopher.kao@pillsburylaw.com>; Weber, Brock S.
<brock.weber@pillsburylaw.com>; Smith, Rodger <RSmith@morrisnichols.com>; Blumenfeld, Jack
<JBlumenfeld@morrisnichols.com>
**Cc:** Brian Farnan <bfarnan@farnanlaw.com>; Michael J. Farnan <mfarnan@farnanlaw.com>; John

Edmonds <jedmonds@ip-lit.com>; Madeline Lofton <mloftin@ip-lit.com>
**Subject:** RE: eBuddy v. LinkedIn

Chris,

Following up on the email below, we need to get deposition dates in February for the four deponents.

Please let me know the availability of each witness by COB Friday.

Thanks,

**Steve Schlather**
**EDMONDS & SCHLATHER**
EDMONDS & SCHLATHER PLLC
2501 Saltus St.
Houston, Texas 77003
355 South Grand Avenue, Suite 2450
Los Angeles, California 90071
713.364.2371 (direct)
832.715.1092 (cell)
713.224.6651 (fax)
sschlather@ip-lit.com
www.ip-lit.com

**Houston, TX    Los Angeles, CA**

**From:** Steve Schlather
**Sent:** Monday, December 20, 2021 18:37
**To:** Kao, Christopher <christopher.kao@pillsburylaw.com>; Weber, Brock S.
<brock.weber@pillsburylaw.com>; Smith, Rodger <RSmith@morrisnichols.com>; Blumenfeld, Jack
<JBlumenfeld@morrisnichols.com>
**Cc:** Brian Farnan <bfarnan@farnanlaw.com>; Michael J. Farnan <mfarnan@farnanlaw.com>; John
Edmonds <jedmonds@ip-lit.com>; Madeline Lofton <mloftin@ip-lit.com>
**Subject:** RE: eBuddy v. LinkedIn

Chris,

The parties have been working in a cooperative manner in this case and I anticipate that we will continue to do so. In that regard and including based on your representation that LinkedIn will produce emails and other ESI by the end of January, we are presently amenable to pushing the deposition dates into the first half of February. Please provide dates in that timeframe no later than January 7th.

We have provided our list of additional terms for LinkedIn's ESI search and will be providing eBuddy's search terms shortly. Additionally, whether other courts permit email or ESI discovery based on the circumstances of other cases is not relevant in this case at least because this District and this Court have both made clear that email and ESI discovery are permitted as set forth in the Court's orders. While we can appreciate that obtaining and reviewing documents can be time consuming, this case also needs to move forward timely, including because there are significant deadlines at or in advance of the discovery deadline (*i.e.*, eBuddy cannot and will not push discovery until the July 7 discovery deadline).

With regard to the substance of LinkedIn's production, we have yet to receive any damages-related documents, despite LinkedIn's agreement to produce such information back in mid-November (which was in response to our letter of September 24). We also note again that LinkedIn's production of technical documents appears substantially deficient, including that it comprises only a small handful of documents even related to the event notification functionality.

eBuddy is also collecting and reviewing ESI information and, as stated in our email earlier today, we will be providing search terms shortly. In accordance with the Court's orders, including the Court's ESI order, we will promptly supplement eBuddy's production with any responsive, non-objectionable documents once we have completed the ESI review.

Best Regards,

**Steve Schlather**

**EDMONDS & SCHLATHER**

EDMONDS & SCHLATHER PLLC
2501 Saltus St.
Houston, Texas 77003
355 South Grand Avenue, Suite 2450
Los Angeles, California 90071
713.364.2371 (direct)
832.715.1092 (cell)
713.224.6651 (fax)
sschlather@ip-lit.com
www.ip-lit.com

**Houston, TX    Los Angeles, CA**

**From:** Kao, Christopher [mailto:christopher.kao@pillsburylaw.com]
**Sent:** Thursday, December 16, 2021 16:02
**To:** Steve Schlather; Weber, Brock S.; Smith, Rodger; Blumenfeld, Jack
**Cc:** Brian Farnan; Michael J. Farnan; John Edmonds; Madeline Lofton
**Subject:** RE: eBuddy v. LinkedIn

Steve,

You are an experienced practitioner and are well aware that the process for discovery takes time. I

do not understand why you persist in taking unreasonable positions when there are still seven months left in the fact discovery period. We have been working with you in a very cooperative manner and hope that you will continue to work in good faith to complete fact discovery in this case.

You first requested that we collect and produce e-mails and other ESI (which is generally irrelevant in patent infringement cases and very burdensome to produce, and therefore not permitted in the ordinary course in many jurisdictions, including in Judge Albright's court in the Western District of Texas) from LinkedIn in early November. Since then, we have diligently collected all of the e-mail and other electronic files for our custodians, which is literally composed of millions of files. We then generated proposed search terms to be applied to this ESI so that we can narrow the production to a responsive set that can be realistically reviewed. Brock sent those terms to you on Monday, so that you can propose additional terms for us to apply, as is your right under the ESI Order. Until we get those search terms from you—and you have not responded yet—we cannot run the terms to generate the smaller subset of the millions of files for us to review for responsiveness and privilege. As soon as you respond, we will begin that process. Given the upcoming holidays, I am sure you can understand why it is not feasible to complete this ESI production until the end of January at the earliest. I am not going to ask my team to spend the holidays reviewing thousands of emails to satisfy some false deadline that you are setting.

In the meantime, eBuddy's document production has been woefully deficient, and you have done nothing to cure that since we raised the issue with you by letter on September 23, 2021. eBuddy has not produced any more documents to us since then and has not shared with us the search terms that you propose to run with respect to the e-mails and other ESI that LinkedIn requested in early November. We also have the right under the ESI Order to suggest search terms for you to use and you have not even initiated this process yet with respect to eBuddy's production. When do you intend to produce eBuddy's responsive ESI that we have requested?

As I stated in my prior email, we will produce LinkedIn's witnesses for deposition once. If you stipulate that you are willing to depose them before LinkedIn completes its document production and that is your one opportunity to depose them, then please let me know and I will obtain dates from the witnesses. As it seems that you are refusing to agree to this condition, then we will not be producing the witnesses until after our production is complete—it is premature otherwise.

Happy holidays.

Chris

**From:** Steve Schlather <sschlather@ip-lit.com>
**Sent:** Monday, December 13, 2021 4:27 PM
**To:** Kao, Christopher <christopher.kao@pillsburylaw.com>; Weber, Brock S. <brock.weber@pillsburylaw.com>; Smith, Rodger <RSmith@morrisnichols.com>; Blumenfeld, Jack <JBlumenfeld@morrisnichols.com>
**Cc:** Brian Farnan <bfarnan@farnanlaw.com>; Michael J. Farnan <mfarnan@farnanlaw.com>; John Edmonds <jedmonds@ip-lit.com>; Madeline Lofton <mloftin@ip-lit.com>
**Subject:** RE: eBuddy v. LinkedIn

Chris,

Thanks for getting back on this. We initially requested deposition dates for these witnesses over a month ago, on November 14. Over two weeks later, on December 2, and after receiving no response, we again reached out for dates. On December 3, you indicated that you were in the process of collecting e-discovery from these witnesses, including pursuant to eBuddy's ESI requests

served on November 2. On December 7, we indicated that we were then amenable to pushing the depositions back to January in view of the December 17 deadline for substantial completion of document discovery.

Now, in your December 10 email, you have indicated that the ESI collection *may* be completed by the end of January. It is simply not reasonable that the ESI collection process will take at least three months to complete. LinkedIn needs to complete its document production as soon as possible.

Additionally, by 3pm ET this Friday, December 17, please provide deposition dates for these witnesses in the second half of January. We strongly prefer to notice these depositions on agreeable dates during the second half of January; however, we will need LinkedIn's cooperation – in the form of providing dates – for that to occur. eBuddy reserves all rights if documents are belatedly produced, especially if not produced sufficiently in advance of these upcoming depositions. EBuddy intends to issue notices on Friday afternoon.

Best Regards,

**Steve Schlather**
**EDMONDS & SCHLATHER**

EDMONDS & SCHLATHER PLLC
2501 Saltus St.
Houston, Texas 77003
355 South Grand Avenue, Suite 2450
Los Angeles, California 90071
713.364.2371 (direct)
832.715.1092 (cell)
713.224.6651 (fax)
sschlather@ip-lit.com
www.ip-lit.com

**Houston, TX    Los Angeles, CA**

---

**From:** Kao, Christopher [mailto:christopher.kao@pillsburylaw.com]
**Sent:** Friday, December 10, 2021 12:44
**To:** Steve Schlather; Weber, Brock S.; Smith, Rodger; Blumenfeld, Jack
**Cc:** Brian Farnan; Michael J. Farnan; John Edmonds; Madeline Lofton
**Subject:** RE: eBuddy v. LinkedIn

Steve,

We will be completing our non-ESI production by December 17. However, for the ESI that you have requested from LinkedIn's individual custodians, that process is substantially more time-consuming because it involves running search terms (which Brock will be providing you shortly for your review, given your right under the ESI Order to propose additional search terms) against the data collected, and then reviewing the narrowed subset for relevance, privilege, etc. That process will obviously not be completed by December 17. I would hope that this production—given the upcoming holidays—

will be completed by the end of January.

We are only going to produce our witnesses once for their deposition. If you would like to take these depositions in January, before our ESI production has been completed, please let me know and I will obtain available dates from the witnesses.

If you want to wait until after the ESI productions is complete, then I suggest we revisit deposition scheduling later. Given that fact discovery does not close until July 2022—seven months from now —there is more than enough time for both sides to complete document and deposition discovery before then.

Chris

**From:** Steve Schlather <sschlather@ip-lit.com>
**Sent:** Tuesday, December 7, 2021 7:11 PM
**To:** Kao, Christopher <christopher.kao@pillsburylaw.com>; Weber, Brock S.
<brock.weber@pillsburylaw.com>; Smith, Rodger <RSmith@morrisnichols.com>; Blumenfeld, Jack
<JBlumenfeld@morrisnichols.com>
**Cc:** Brian Farnan <bfarnan@farnanlaw.com>; Michael J. Farnan <mfarnan@farnanlaw.com>; John
Edmonds <jedmonds@ip-lit.com>; Madeline Lofton <mloftin@ip-lit.com>
**Subject:** RE: eBuddy v. LinkedIn


Chris,

Thanks for the update. In view of the 12/17 deadline for substantial completion of document discovery (by which time we should have the document production you describe below (please let me know now if that is not the case)), we need to get these depositions scheduled no later than January. Please provide the witnesses earliest availability for deposition in January.

Thanks,


**Steve Schlather**
**EDMONDS & SCHLATHER**

EDMONDS & SCHLATHER PLLC
2501 Saltus St.
Houston, Texas 77003
355 South Grand Avenue, Suite 2450
Los Angeles, California 90071
713.364.2371 (direct)
832.715.1092 (cell)
713.224.6651 (fax)
sschlather@ip-lit.com
www.ip-lit.com

**Houston, TX    Los Angeles, CA**

**Sent:** Friday, December 3, 2021 12:24
**To:** Steve Schlather <sschlather@ip-lit.com>; Weber, Brock S. <brock.weber@pillsburylaw.com>;
Smith, Rodger <RSmith@morrisnichols.com>; Blumenfeld, Jack <JBlumenfeld@morrisnichols.com>
**Cc:** Brian Farnan <bfarnan@farnanlaw.com>; Michael J. Farnan <mfarnan@farnanlaw.com>; John
Edmonds <jedmonds@ip-lit.com>; Madeline Lofton <mloftin@ip-lit.com>
**Subject:** RE: eBuddy v. LinkedIn

Steve,

We're in the process of collecting e-discovery from these witnesses pursuant to your recent e-
discovery requests, and hope to begin producing responsive documents this month. As you know,
the e-discovery process takes some time, as it involves the collection of voluminous e-mail and other
electronic files, which we need to apply search terms to, and then review for responsiveness and
privilege issues. It does not make sense to schedule the depositions of these witnesses until after
we have produced their relevant documents and you have had a chance to review them. Once we
have completed the document production, we'll provide you possible dates for their depositions.
It's premature to do so now.

Separately, LinkedIn will be objecting to Magistrate Judge Burke's Report and Recommendation.
Those objections are currently due December 13, 2021, and your responses would be due December
27, 2021. Given the upcoming holidays, I wanted to see if you would be amenable to mutual one-
week extensions of these deadlines. I propose pushing back our objections to December 20, 2021,
and your responses to January 10, 2022. Let me know if that is agreeable, and we can put together a
draft stipulation.

Chris

**Christopher Kao** | Partner
Pillsbury Winthrop Shaw Pittman LLP
Four Embarcadero Center, 22nd Floor | San Francisco, CA 94111-5998
t +1.415.983.1159 | m +1.415.608.8252
christopher.kao@pillsburylaw.com | website bio

**From:** Steve Schlather <sschlather@ip-lit.com>
**Sent:** Thursday, December 2, 2021 7:08 PM
**To:** Weber, Brock S. <brock.weber@pillsburylaw.com>; Kao, Christopher
<christopher.kao@pillsburylaw.com>; Smith, Rodger<RSmith@morrisnichols.com>; Blumenfeld,
Jack <JBlumenfeld@morrisnichols.com>
**Cc:** Brian Farnan <bfarnan@farnanlaw.com>; Michael J. Farnan <mfarnan@farnanlaw.com>; John
Edmonds <jedmonds@ip-lit.com>; Madeline Lofton <mloftin@ip-lit.com>
**Subject:** RE: eBuddy v. LinkedIn

Chris & Brock:

Where do we stand on getting deposition dates for the LinkedIn employees listed below?

Thanks,

**Steve Schlather**
**EDMONDS & SCHLATHER**
EDMONDS & SCHLATHER PLLC
2501 Saltus St.
Houston, Texas 77003
355 South Grand Avenue, Suite 2450
Los Angeles, California 90071
713.364.2371 (direct)
832.715.1092 (cell)
713.224.6651 (fax)
sschlather@ip-lit.com
www.ip-lit.com

**Houston, TX    Los Angeles, CA**

**From:** Steve Schlather
**Sent:** Sunday, November 14, 2021 21:27
**To:** brock.weber@pillsburylaw.com; christopher.kao@pillsburylaw.com; Smith, Rodger
<RSmith@morrisnichols.com>; Blumenfeld, Jack <JBlumenfeld@morrisnichols.com>
**Cc:** Brian Farnan <bfarnan@farnanlaw.com>; Michael J. Farnan <mfarnan@farnanlaw.com>; John
Edmonds <jedmonds@ip-lit.com>; Madeline Lofton <mloftin@ip-lit.com>
**Subject:** eBuddy v. LinkedIn

Counsel:

We are writing to request the earliest available deposition dates for the following LinkedIn employees:

1. Brad Ciraulo;
2. Albert Cui;
3. Mary Yang; and
4. Julia Cabral.

Given the current environment, eBuddy is presently amenable to conducting depositions in this case by video conference (*e.g.*, Zoom) if the witness or counsel prefers to do so. However, if any deposition is conducted by video conference, we propose the following to apply: while providing testimony, the witness will be in a room with a closed door, and without any other person(s), including counsel.

Thanks,

**Steve Schlather**
**EDMONDS & SCHLATHER**

EDMONDS & SCHLATHER PLLC
2501 Saltus St.
Houston, Texas 77003
355 South Grand Avenue, Suite 2450
Los Angeles, California 90071
713.364.2371 (direct)
832.715.1092 (cell)
713.224.6651 (fax)
sschlather@ip-lit.com
www.ip-lit.com

**Houston, TX    Los Angeles, CA**

The contents of this message, together with any attachments, are intended only for the use of the individual or entity to which they are addressed and may contain information that is legally privileged, confidential and exempt from disclosure. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please notify the original sender or the Pillsbury Winthrop Shaw Pittman Service Desk at Tel: 800-477-0770, Option 1, immediately by telephone and delete this message, along with any attachments, from your computer. Nothing in this message may be construed as a digital or electronic signature of any employee of Pillsbury Winthrop Shaw Pittman. Thank you.

The contents of this message, together with any attachments, are intended only for the use of the individual or entity to which they are addressed and may contain information that is legally privileged, confidential and exempt from disclosure. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please notify the original sender or the Pillsbury Winthrop Shaw Pittman Service Desk at Tel: 800-477-0770, Option 1, immediately by telephone and delete this message, along with any attachments, from your computer. Nothing in this message may be construed as a digital or electronic signature of any employee of Pillsbury Winthrop Shaw Pittman. Thank you.

The contents of this message, together with any attachments, are intended only for the use of the individual or entity to which they are addressed and may contain information that is legally privileged, confidential and exempt from disclosure. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please notify the original sender or the Pillsbury Winthrop Shaw Pittman Service Desk at Tel: 800-477-0770, Option 1, immediately by telephone and delete this message, along with any attachments, from your computer. Nothing in this message may be construed as a digital or electronic signature of any employee of Pillsbury Winthrop Shaw Pittman. Thank you.

# EXHIBIT C

The Wayback Machine - https://web.archive.org/web/20070322183651/http://www.linkedin.com:80/in/jjrueb

# Jan-Joost Rueb

**Business Development, Internet & Telecom, Owner eBuddy Holding BV**
Netherlands

| | |
|---|---|
| **Current** | • **CEO, Co-Founder / Owner at eBuddy Holding BV (www.ebuddy.com)** |
| **Past** | • Founder, Owner at Gramercy Telecom Ventures LLC |
| | • Director of Business Development at Arbinet, New York |
| | • Business Intelligence Manager at EnerTel NV / WorldPort Inc, Atlanta |
| | <div align="right">see less...</div> |
| **Education** | • State University of Groningen |
| **Recommended** | **3** people have recommended Jan-Joost |
| **Connections** | **500+** connections |
| **Industry** | Internet |
| **Websites** | • <u>My Company</u> |

---

## Jan-Joost Rueb's Summary

Business Development professional with experience on three continents within multinationals as well as several start-up environments.

**Jan-Joost Rueb's Specialties:**

Marketing and Business Development Internet and Telecom companies. Venture Capital, Private equity. Technical Assessment. System architecture. Patent research

---

## Jan-Joost Rueb's Experience

### CEO, Co-Founder / Owner

#### eBuddy Holding BV (www.ebuddy.com)

(Privately Held; 11-50 employees; Internet industry)

<u>April 2004</u> — <u>Present</u> <u>(3 years)</u>

Venture focussed on software solutions for IM and other messaging / telecom applications and platforms.

### Founder, Owner

#### Gramercy Telecom Ventures LLC

(Privately Held; 1-10 employees; Telecommunications industry)

<u>August 2003</u> — <u>August 2005</u> <u>(2 years 1 month)</u>

- Venture focussed on changing telecom industry
- Majority shareholder in NumberPortability.com LLC
- Consulting for wholesale telecom market; routing software solutions
- Consulting for venture capital and private equity deals in internet, telecom and technology industry

### Director of Business Development

#### Arbinet, New York

(Public Company; 51-200 employees; ARBX; Telecommunications industry)

September 1999 — November 2003 (4 years 3 months)

Arbinet created and operates the world's online spot market for voice minutes. More than 340 telecommunications companies use thexchange to trade, route and settle over 12 billion minutes annually. While working at Arbinet the company raised over $130M and revenues grew from $0 to over $400M annually, leading to a succesful NASDAQ IPO December 2004.

**Business Intelligence Manager**

**EnerTel NV / WorldPort Inc, Atlanta**

(Privately Held; 201-500 employees; Telecommunications industry)

July 1997 — September 1999 (2 years 3 months)

---

# Jan-Joost Rueb's Education

**State University of Groningen**

MBA, August 1990 — July 1996

---

# Additional Information

**Jan-Joost Rueb's Websites:**

My Company

**Jan-Joost Rueb's Groups:**

**Forbes**  Forbes.com Entrepreneurs member

---

EXHIBIT D

ANNEX 3: BUSINESS PLAN

The Company has the objective to exploit intellectual property rights of the Company for the benefit of its shareholders. The IPR comprises in particular the eBuddy patent families and KPN patent families transferred to the Company (Annex 1 resp. Annex 2).

The strategy of the Company is to initiate in 2017 a first notification and license negotiation phase, addressing several large providers of social media services, such as certain e-mail applications and messaging apps.

A second phase will commence in 2018 to start infringement procedures in case infringement procedures are needed.

**Intended sale of 10% of eBuddy Technologies B.V. 2017**

As mentioned in the shareholders agreement the Company has the intention to sell 10% of the shares held by eBuddy to a third party. The Company will work together with KPN M&A department, potential external consultants and attorneys to create a information memorandum, to be presented to selected parties.

**Licensing targets 2017**

In 2017 the first phase will start, in particular putting major parties that infringe the Company's patents on notice.

In 2017, the Company shall send registered letters at least to:

- Facebook (and WhatsApp)
- Google
- Yahoo
- Microsoft (and LinkedIn)
- Apple

In 2017, the licensing activities will focus on friendly licensing, putting parties on notice and inviting them to take a license.

**Preparation for 2018**

The Company will prepare claim charts in 2017 of relevant patents on relevant products/services of the mentioned licensing targets. These will (later) be provided to a contingency firm for legal advice.

Given the emphasis on US patents in the Company portfolio, the Company will prepare and, subject to approval by its shareholders, enter an agreement with a US contingency firm by end of 2017. This will enable the Company to get legal advice on how to respond to prospective licensees and/or prepare litigation by the contingency firm in 2018 in case parties are not willing to take a license.

23

# EXHIBIT E



Portfolio Media. Inc. | 111 West 19th Street, 5th floor | New York, NY 10011 | www.law360.com
Phone: +1 646 783 7100 | Fax: +1 646 783 7161 | customerservice@law360.com

# Fintiv Fails: PTAB Uses 'Remarkably Inaccurate' Trial Dates

By Dani Kass

Law360 (November 2, 2021, 9:09 PM EDT) -- The Patent Trial and Appeal Board has controversially been relying on district court trial dates to figure out whether it would be duplicative to hear a patent challenge, but Perkins Coie LLP attorneys have found that the board relies on trial dates that almost always get pushed back.

Between May and October 2020, the PTAB rejected 55 petitions based on the speed of co-pending patent litigation. However, four of those were in instances where the trial already took place, and only three others had trials that took place on time, Andrew Dufresne, Nathan Kelley and Lori Gordon wrote in a blog post Friday.

"The trial date factor is pretty central to the Fintiv analysis, and we had seen anecdotal reports from others suggesting the trial dates the board was using tended to shift, so we were interested in tracking that in a more systematic way to see what the data really showed us," Dufresne told Law360 on Tuesday.

Fintiv ® is the precedential and **oft-challenged** PTAB ruling that lays out some of the discretionary factors administrative patent judges can weigh when deciding whether to reject an otherwise meritorious patent challenge. Under Fintiv, judges consider whether the district court trial is likely to be completed before the final written decision is legally due, and how far the parallel litigation has proceeded, among other factors.

While Fintiv denials have been **decreasing** in recent months, they've remained one of the hottest topics in patent law, and the research published Friday seems to lend support to those who think Fintiv denials should be reined in.

In their post on the firm's 1600 PTAB & Beyond blog, the attorneys said they purposely picked a six-month period that would allow them to see where trials stood a year out, which is when the board's final written decisions would have been due.

## How Often Does The PTAB Get It Right?

Perkins Coie attorneys found that the vast majority of cases where Patent Trial and Appeal Board petitions were turned away based on related trial dates had the trials extended by several months.



5.9% (3 cases)

Correct    Incorrect



Source: Perkins Coie

## How Far Off Is The PTAB On Trial Dates?

The PTAB relies on trial dates to decide whether to hear patent challenges, but those dates are almost always pushed back.



Terminated
Still Unresolved — 7
6-12 months — 3
3-6 months
1-3 months — 5
≤1 month — 1
On Time — 3

0    2    4    6    8    10

Source: Perkins Coie



In all, the attorneys found that three trials were conducted on the expected timeline, one was delayed by less than a month and five were delayed between one and three months. Another 17 were delayed by three to six months, while three were delayed from six months to a year, and seven more are still pending a year later. The remaining 15 were terminated with a decision from the district court about whether the patents were valid.

"The board's reliance on scheduled trial dates has proven remarkably inaccurate, and our results contradict the board's stated practice under Fintiv of simply accepting nominal trial dates at face value," the post states. "Trial dates in patent litigation are not stable and make a very poor barometer for evaluating the potential efficiency of denying institution based on a parallel proceeding."

--Graphics by Ben Jay. Editing by Marygrace Murphy.

All Content © 2003-2022, Portfolio Media, Inc.

# EXHIBIT F

# ROPES&GRAY

# Patents Post-Grant

### Inside Views & News Pertaining to the Nation's Busiest Patent Court

# District Court Trial Dates Tend to Slip After PTAB Discretionary Denials

By Scott McKeown on July 24, 2020



## Delaware Cases Slipping 4-6 Months

The practice of denying AIA trial petitions in view of competing district court trial dates has brought **some negative attention to the Patent Trial & Appeal Board (PTAB) over the past few months**. At the same time, patent litigation has increased over the first two quarters of the year by 20%. This surge has been greatly aided by the **exploding popularity of the Western District of Texas (WDTX) with non-practicing entities** — a district that the PTAB is increasingly deferring to in its discretionary denials based upon competing trial dates.

While Patent Owners are quick to point to a looming district court trial date as being set in stone, in reality, these dates are often reset once the PTAB hurdle is cleared.

While still a small data set, cases that are denied by the PTAB based upon a looming trial date have seen significant delays in some districts.

For example, in the patent suit heavy District of Delaware, 100% of the cases denied by the PTAB for an earlier trial date have been rescheduled — anywhere from 4-6 months. This is a significant delay that may militate in favor of institution given the relative speed of an 8-month PTAB trial schedule:



**D. Del.: Average and Maximum Days Trial "Slid"**

In the WDTX, 70% of trial dates initially relied upon by the PTAB to deny petitions have slid. While WDTX shows a lower average delay, this is likely a due to that court's preference to push out dates on a recurring basis rather than more significant schedule remodels.



Taking all districts into account the average trial delay is 3 months, with a maximum of 7 months. That said, with COVID-19 delaying trials scheduled for the last 4-5 months, delays will certainly increase further as the courts work through their growing backlog.

In the meantime, as one PTAB panel explained it, **the PTAB has been firing on all cylinders**.

## Patents Post-Grant

Copyright © 2022, Ropes & Gray LLP. All Rights Reserved.